UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAREFREE PARK CORPORATION, AMIN NABHAN and JAMILE NABHAN,<br><br>    Plaintiffs,<br><br>v.<br><br>ADIB NABHAN,<br><br>    Defendant. | Civil Action No. 2003-CV-12426 RCL |

## FIRST AMENDED COMPLAINT

### PARTIES

1. Plaintiff Carefree Park Corporation ("Carefree) is a Massachusetts corporation with its principal place of business at 20 Ocean Front South, Salisbury Beach, Massachusetts.

2. Plaintiff Amin Nabhan ("Amin") is an individual who resides at 6 Lancaster Place, Andover, Massachusetts.

3. Plaintiff Jamile Nabhan ("Jamile') is an individual who resides at 19 Central Avenue, Salisbury Beach, Massachusetts.

4. Defendant Adib Nabhan is an individual who resides at 205 Turnberry Court N, Atlantis, Florida 33462.

### JURISDICTION

5. This Court has jurisdiction over the claims asserted in this action pursuant to M.G.L. c. 212, § 4 and over the defendant pursuant to M.G.L. c. 223A, § 3.

## FACTS

6. Carefree was incorporated in 1991. Carefree operates a family arcade/amusement business in Salisbury, Massachusetts.

7. Carefree is a family-owned business and has always been operated by and for the benefit of the Nabhan family. The shares of Carefree are owned one-third each by Amin, Jamile and Adib. Amin and Jamile are the brother and sister respectively of Adib.

8. Amin, Adib and Jamile are all directors of Carefree. Amin is the President and Adib is the Vice-President. Another sister, Faye, is the Treasurer/Secretary of Carefree, but is neither a shareholder nor a director.

9. In 1984, Carefree acquired real estate in Lake Worth, Florida (the "Florida Property") for the purpose of operating an arcade/amusement business there similar to the one it was already operating in Massachusetts. Carefree registered to do business in Florida as a foreign corporation at that time.

10. In 1989, the family arranged for Adib to move to Florida to operate the business there for the benefit of Carefree. Carefree moved some of its assets, including machinery and equipment, to Florida. At all relevant times, Adib has run the Carefree business in Florida under the name Fun Depot.

11. The real estate (including the buildings thereon) in Lake Worth, Florida on which the Fun Depot business is operated is owned by Carefree. Carefree's property in Lake Worth is also occupied by eight or nine commercial tenants who generate rental income in excess of $200,000 annually.

12. In 1988, 1997, and 2001, additions and improvements were made to the Florida Property by Carefree to further its business interest. The debt on the Florida Property is in the name of Carefree, with Amin, Adib and Jamile as personal guarantors.

13. All improvements made to the Florida property by Carefree facilitated the growth and success of the Fun Depot business operation, all for the benefit of Carefree and its shareholders.

14. In 1996, Fun Depot ceased to be a d/b/a/ of Carefree and was incorporated as a Florida corporation for liability reasons. Adib is the sole director and officer of Fun Depot Inc. Amin and Jamile were aware of the incorporation but believed, and were led to believe by Adib, that the new corporation, like Carefree, was owned one-third each by Amin, Adib and Jamile, as was the intent of the parties.

15. Fun Depot is one of several tenants in the commercial building owned in Florida by Carefree. Adib collects the rents from the other tenants in the building and deposits the rent proceeds into an account maintained by Carefree. Carefree then pays the mortgage, taxes and insurance on the property out of that account.

16. In 2002, Adib disclosed to Amin, contrary to what Amin and Jamile had previously been led to believe by Adib, that Adib was the sole owner/shareholder of Fun Depot, the Florida corporation, and that Amin, Jamile and Carefree had no ownership interest in that business.

17. Adib has operated and continues to operate Fun Depot for his personal benefit.

## COUNT I
### (Breach of Fiduciary Duty)

18. Plaintiffs reallege the allegations set forth in paragraphs 1 through 17 above as if fully set forth herein.

19. As a director, officer and shareholder of Carefree, Adib owed Carefree and the other shareholders of Carefree a fiduciary duty of utmost good faith and loyalty.

20. As the owner and operator of a family arcade/amusement business in Lake Worth, Florida, Carefree had the opportunity to generate revenue and profits from the property that it controlled, utilizing the experience and expertise it had developed by running the business in Massachusetts.

21. As a director and officer of Carefree, Adib used the resources of Carefree to develop the corporate opportunity associated with the business in Florida.

22. By forming his own corporation to own and run the Florida business for his own benefit, Adib diverted a corporate opportunity that belonged to Carefree to himself.

23. By operating an arcade/amusement business on property owned by Carefree and using machinery and other equipment owned by Carefree, and by diverting the revenues and profits from that business to a corporation of which he is the sole owner, Adib misappropriated assets belonging to Carefree for his own use.

24. By running the Fun Depot business solely for his own benefit to the detriment of the interests of Carefree, without informing Carefree that he was the sole owner of Fun Depot, Adib engaged in self-dealing.

25. By his diversion of a corporate opportunity that rightfully belonged to Carefree, his misappropriation of Carefree's assets, and his self-dealing to Carefree's detriment at a time

when he was a Carefree director, officer and shareholder, Adib violated his fiduciary duty of utmost good faith and loyalty.

26. Adib is liable to Carefree and its shareholders in damages for his violations of his fiduciary duty.

## COUNT II
## (Conversion)

27. Plaintiffs reallege the allegations set forth in paragraphs 1 through 26 above as if fully set forth herein.

28. By his acts and conduct as described above, Adib has asserted dominion and control over corporate opportunities and corporate assets rightfully belonging to Carefree, with the intention of permanently depriving Carefree of those corporate opportunities and assets.

29. Adib's acts and conduct described above constitute conversion of the property of Carefree, for which Adib is liable in damages to Carefree and its shareholders.

## COUNT III
## (Accounting)

30. Plaintiffs reallege the allegations set forth in paragraphs 1 through 29 above as if fully set forth herein.

31. As a result of his numerous breaches of fiduciary duty and his conversion of opportunities and assets belonging to Carefree, Adib is obligated to provide Carefree with a full and complete accounting with regard to Fun Depot's financial affairs.

WHEREFORE, Carefree, Amin Nabhan and Jamile Nabhan ask that the Court enter judgment in their favor on all counts and order the following:

1.  That judgment enter in Carefree's, Amin's and Jamile's favor on Counts I and II of their complaint in an amount sufficient to compensate them for their damages, as well as for their attorneys' fees and the costs of this action;

2.  That judgment enter in Carefree's, Amin's and Jamile's favor on Count III of their complaint and that Adib be ordered to make a full and complete accounting with regard to Fun Depot's financial affairs;

3.  That a constructive trust in favor of Carefree be placed on all of the assets and revenues of Fun Depot; and

4.  That the Court enter such other and further relief as it deems just and proper.

> CAREFREE PARK CORPORATION,
> AMIN NABHAN and JAMILE NABHAN,
>
> By their attorneys,
>
> /s/Gordon M. Jones, III
> Robert L. Kirby, Jr. (BBO #550538)
> Gordon M. Jones, III (BBO # 549016)
> NIXON PEABODY LLP
> 100 Summer Street
> Boston, MA 02110
> (617) 345-1000

Dated: March 15, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by hand on March 15, 2005.

> /s/ Gordon M. Jones, III
> Gordon M. Jones, III