UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAREFREE PARK CORPORATION, AMIN NABHAN and JAMILE NABHAN,<br><br>        Plaintiffs,<br><br>    v.<br><br>ADIB NABHAN,<br><br>        Defendant. | Civil Action No. 2003-CV-12426 RCL |

**JOINT PRETRIAL MEMORANDUM**

In accordance with the Court's Order dated August 23, 2005, plaintiffs Carefree Park Corporation ("Carefree Park"), Amin Nabhan ("Amin") and Jamile Nabhan ("Jamile") (collectively "Plaintiffs"), and defendant Adib Nabhan ("Adib") submit this Pretrial Memorandum in advance of the Pretrial Conference in this matter to be held November 17, 2005.

**I.    Names, Addresses and Telephone Numbers of Trial Counsel.**

Plaintiffs:

Robert L. Kirby, Jr. (BBO #550538)
Gordon M. Jones, III (BBO #549016)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

Defendant:

Doyle C. Valley, BBO #638578
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

Ian Crawford, BBO#544475
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

## II.    Concise Statement of Position.

Plaintiffs:

This is a family dispute among the owners of Carefree Park Corporation. Carefree Park is owned one-third each by brothers Amin and Adib Nabhan ("Adib") and their sister Jamile Nabhan.[1] Carefree Park is in the real estate and arcade/game room business in Salisbury, Massachusetts and Lake Worth, Florida.

Carefree Park, Amin and Jamile allege that Adib diverted and took for himself a corporate opportunity, Fun Depot, Inc. ("Fun Depot"), that rightly belonged to Carefree Park. The central dispute is this: Adib maintains that his brother and sister agreed that he (Adib) could take Fun Depot for himself; Amin and Jamile say that there was no such agreement.

Plaintiffs have asserted claims for breach of fiduciary duty and conversion and seek to recover for the damages that they have suffered as a result of Adib's actions. Plaintiffs have also asked the Court to order that Adib provide an accounting with regard to Fun Depot's financial affairs.

---

[1]    For convenience sake, we refer to the family members by their first names.

2

Defendant:

Adib denies that he usurped an opportunity of Carefree or diverted corporate funds. Amin and Jamile were aware that Fun Depot, Inc. ("FDI") had been created and that Adib was the sole shareholder. The parties always understood that Fun Depot would be the business vehicle for Adib to support his family and that the Massachusetts assets and businesses would be available to support the other family members who wanted or required such support. Adib operated the Florida assets autonomously, as Amin did with the Massachusetts assets.

Adib has asserted counterclaims against Carefree, Amin and Jamile for breach of fiduciary duty, conversion, accounting, quantum meruit and unjust enrichment. Adib alleges that Amin and Jamile misappropriated and mismanaged assets of Carefree. Adib also alleges that Amin misappropriated and mismanaged assets owned by the Adele Realty Trust, in which Amin and Adib are the sole trustees and beneficiaries. Plaintiffs, primarily through Amin, have operated the Massachusetts properties for their sole benefit, excluding Adib. Adib is seeking an accounting and a court-ordered buyout of Adib's interest in Carefree and the Adele Realty Trust.

### III. Claims Or Defenses That Will Be Waived or Otherwise Not Pursued At Trial.

None.

### IV. Statement of Uncontested Facts.

1. Carefree Park was formed in 1971 as a C corporation. Initially, the shares of Carefree Park were owned one-fifth each by the four Nabhan brothers, Amin, Adib, Louis and George and Jamile. Since 1995, Carefree Park has been owned one-third each by Amin, Adib and Jamile.[2] Until November 18, 2003, each of the shareholders were directors. On that date, Amin and Jamile voted to remove Adib as a director.

---

[2] A sixth sibling, Faye, has never had an ownership stake in the company.

2. Carefree Park owns real estate and operates an arcade business in Salisbury, Massachusetts. Amin has, at all relevant times, been the chief executive of the company.

3. In the late 1970s, the family determined to expand operations. Starting in 1978, the family commenced operating an amusement park business in New London, Connecticut. A new corporation, Nabhan Enterprises, was formed, and Adib moved to Connecticut to head up the operations there. Nabhan Enterprises was owned by the four Nabhan brothers.

4. In 1984, Carefree Park acquired a parcel of real estate in Lake Worth, Florida.[3] At that time the only improvement on the real estate was a vacant warehouse.

5. In 1988, when the property faced foreclosure, Adib moved to Florida to manage the Lake Worth property. Since that time, Adib has managed Carefree's Lake Worth property.

6. Adib began operating a small arcade game room, called Fun Depot, in a portion of the building. The remainder of the building was leased to other tenants.

7. On February 14, 1996, Fun Depot was incorporated, becoming Fund Depot, Inc. ("FDI"), with Adib as its sole shareholder.

8. FDI was incorporated as a Sub-Chapter S corporation.

9. In 1996, construction on a 14,000 sq. ft. building for FDI's operations on the Lake Worth property was completed. In 2000, construction of a 16,000 sq. ft. addition to the building was completed.

10. Since Adib moved to Florida in 1988, he has managed the Lake Worth property, collecting rent and operating income, negotiating with tenants and prospective tenants, overseeing payment of operating expenses, physically maintaining the property and overseeing repairs and build-outs.

---

[3] Lake Worth is between Boca Raton and Palm Beach, on Florida's east coast.

4

11. The Adele Realty Trust was created on February 12, 1991. The sole trustees and beneficiaries of the Adele Realty Trust are Adib and Amin.

12. The Adele Realty Trust owns property at 6 Ocean Front S. in Salisbury (where Carefree's arcade operates, property at 20 Ocean Front S. in Salisbury (where Carousel Lounge operates a restaurant/lounge) and a portion of a parking lot in Salisbury.

13. The Habib Nabhan Nominee Trust and the Mary Nabhan Nominee Trust were created October 3, 1995. The trustees of these trusts are Adib and Amin. The beneficiaries of the trust are Adib, Amin, Jamile and their sister Faye Robertson.

14. The Habib Nabhan Nominee Trust and the Mary Nabhan Nominee Trust own a portion of the parking Lot in Salisbury, together with the Adele Realty Trust.

V. **Contested Issues of Fact.**

Plaintiffs:

1. The principal issue in dispute is whether Carefree Park, Amin and Jamile agreed that Adib could be the sole owner of Fun Depot. According to Adib, his siblings agreed (i) that Adib would own 100% of the new corporation (Fun Depot), (ii) that he could take ownership of all of Carefree Park's equipment in Florida, free of charge, and (iii) that he could pay nominal rent to Carefree Park, basically in an amount sufficient only to enable Carefree Park to make up any shortfall it experienced in covering its carrying costs for the property, after accounting for the rents paid by other tenants on the site. Amin and Jamile maintain that there was never any such agreement and that, instead, it was agreed that a new corporation would be formed for the benefit of the entire family.

2. Another contested issue of fact concerns the extent to which Adib and Fun Depot used assets belonging to Carefree Park, including Carefree Park's capacity to borrow money, to

develop and operate Fun Depot prior to and after its incorporation as a separate corporation in 1996, and whether Amin and Jamile were aware of how much money was being used for the sole benefit of Adib and his family.

3. The parties dispute the extent of Fun Depot's profitability prior to and after its incorporation as a separate corporation and whether the money that Adib has taken out of Fun Depot in salary and other benefits has been excessive in comparison to the standards for businesses that are similar in size and nature.

Defendant:

1. Whether Amin and Jamile were aware that Adib had incorporated Fun Depot as an S corporation with himself as the sole shareholder and assented to that arrangement.

2. Whether Amin and Jamile misappropriated and/or mismanaged funds belonging to Carefree and the amount of funds so misappropriated. Rental income reported by Carefree from 1995 – 2003 for the apartment building it owns does not account for even partial occupancy over those years.

Carefree made payments on loans for properties it does not own, for the benefit of Amin and Jamile. These properties include property owned by Amin and the Habib Realty Trust (which is the home of Jamile and George) and Amin's primary residence in Massachusetts. Amin used a portion of a loan to Carefree to pay off a prior loan and deposited approximately $200,000 into his personal savings account.

3. Whether Amin misappropriated and/or mismanaged funds belonging to the Adele Realty Trust. In 1998, the Adele Realty Trust received $168,000 from Harvey's Casino and Resorts as payment for Harvey's option to purchase land owned by the Trust. Amin paid $107,190 in property taxes, opened an investment account with $35,382 of the funds and used

6

the remainder ($25,428) to pay his son's college tuition. Amin reported on his 2001 individual tax return $41,610.00 of the funds as "miscellaneous income Harvey's Casino." The investment account consisted of investments in three technology stocks and a Nasdaq index fund, the share values of which, as of December 31, 2003, had decreased to $11,317.35.

Amin misappropriated other assets of the Adele Realty Trust. Amin shares the proceeds from the parking lot owned by the Trust with Jamile and deposits his portion into his personal bank account. Adib has never been provided with funds or an accounting of the proceeds from the parking lot.

Amin has mismanaged the assets of the Adele Realty Trust, as he has failed to seek rent from tenants of property owned by the Trust.

**VI.    Jurisdictional Questions.**

None

**VII.   Questions Raised By Pending Motions.**

None.

**VIII.  Issues of Law.**

Plaintiffs:

In support of their legal position, Plaintiffs rely on the lengthy line of Massachusetts cases that hold that a stockholder and director of a closely held corporation such as Carefree Park owes a fiduciary duty of utmost good faith and loyalty both to the corporation and to his or her fellow stockholders and that among the fiduciary obligations is the requirement that a stockholder/director such as Adib cannot take for his own benefit opportunities that the corporation could exploit for itself. Donohue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578 (1975); Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501 (1997).

Defendant:

In support of his legal position with respect to Amin's and Jamile's actions as to Carefree Park Corp., Adib relies on Massachusetts cases holding that stockholders in a close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another, a duty of utmost good faith and loyalty. Stockholders in close corporations must discharge their management and stockholder responsibilities in conformity with this strict good faith standard. Courts will deny efforts by majority stockholders to oppress, disadvantage or freeze out minority stockholders, such as efforts to deprive minority stockholders of corporate offices and of employment with the corporation. Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 848-849 (1976); Donohue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578 (1975).

In support of his legal position with respect to Amin's actions as to the Adele Realty Trust, Adib relies on Massachusetts cases holding that a trustee must exercise good faith and act solely in the interests of the beneficiaries in administering the trust. There can be no divided loyalty. This principle has always been rigorously enforced. Personal gains accruing to a trustee from the transfer of trust property to himself must be accounted for by him even though he was acting in good faith, unless the beneficiaries knew the nature and effect of the transfer and consented to its being made. Boston Safe Deposit & Trust Co. v. Lewis, 317 Mass. 137, 140-141 (1944).

In support of its legal position regarding a buy-out of Adib's interest in Carefree and the Adele Realty Trust, Adib relies on Massachusetts law establishing that an appropriate measure of damages for improperly freezing out a minority shareholder is the minority shareholder's proportionate share of the total fair value of the business. Keating v. Keating, 17 Mass. Law.

Rptr. 241, 251, *available in* 2003 Mass. Super. LEXIS 472 (Oct. 3, 2003 Chernoff, J.); see also Demoulas v. Demoulas, 428 Mass. 555, 580 (1998). Thus, the only fair and practical remedy for Adib in this breach of fiduciary duty case by a majority shareholder is a court-ordered buy-out of his minority interest shares in Carefree by the majority shareholders and a court-ordered buy-out of his interest in the Adele Realty Trust at the fair market value.

IX.   **Requested Amendments To Pleadings.**

None.

X.   **Additional Matters To Aid In The Disposition Of The Action.**

Plaintiffs are not aware of any such matters at this time.

XI.   **Estimated Length Of Trial.**

The parties estimate that it will take six to eight days to complete the trial of this case.

XII.   **Witnesses Who Will Testify At Trial.**

Plaintiffs:

Amin Nabhan - fact witness.

Jamile Nabhan - fact witness.

Adib Nabhan - fact witness.

Faye Robertson - fact witness.

Edward Nabhan - fact witness

Adel Nabhan - fact witness

Richard J. Maloney, CPA-expert witness as to the amount of money that Carefree park would have earned as the rightful owner of Fun Depot from 1996 to the present, if there had been no misappropriation of Carefree Park's corporate opportunity and assets. Mr. Maloney has an M.S. in Accounting from the School of Business of the State University of New York at Albany

(1978) and a J.D. from Albany Law School of Union University (1975) and has testified in numerous cases involving business valuation, lost profits and lost income. Mr. Maloney prepared an expert report that has been provided to the defendant.

David Wudyka-expert witness as to the appropriate level of compensation for the position that Adib holds at Fun Depot, as suggested by marketplace surveys. Mr. Wudyka has an MBA in Organization and Management from Syracuse University (1973) and a B.S. in Industrial Engineering from the University of Rhode Island (1968) and is certified as a Professional in Human Resource Management (1999). For the past 17 years, Mr. Wudyka has been employed as an independent Human Resources Consultant specializing in compensation, serving primarily small to mid-size companies with no in-house human resources department. Mr. Wudyka prepared an expert report that has been provided to the defendant.

Defendant:

Amin Nabhan - fact witness.

Jamile Nabhan - fact witness.

Adib Nabhan - fact witness.

Faye Robertson - fact witness.

Edward Nabhan - fact witness.

Adel Nabhan - fact witness.

Craig Peterson – fact witness.

John G. Petersen – expert witness. Mr. Petersen is a partner of Petersen/LaChance Realty Advisors, a real estate appraisal and consulting firm in Danvers, Massachusetts. Mr. Petersen's real estate appraisal and consulting experience exceeds 20 years and he has been awarded both the MAI and SRA designations. Mr. Petersen is expected to testify regarding the

fair market value of the Massachusetts properties owned by Carefree Park, the Adele Realty Trust, the Habib Nabhan Nominee Trust and the Mary Nabhan Nominee Trust.

Richard E. Mastrocola – expert witness. Mr. Mastrocola is a CPA and a partner and president of Tonneson & Company CPA's P.C. in Wakefield, Massachusetts. Mr. Mastrocola is expected to testify regarding Carefree's accounting practices, the books and records of Carefree, Carousel Lounge and the Adele Realty Trust and the amounts attributable to Amin's and Jamile's misappropriation and mismanagement of those entities.

The parties reserve their rights to supplement their lists of witnesses.

## XIII. Exhibits That The Parties Will Offer As Part Of Their Affirmative Case.

Plaintiffs:

1. Series of invoices from Brady Distributing Company to Carefree Park bearing Bates stamp numbers CPC 00507-00538, marked as Exhibit 2 to the deposition of Adib Nabhan taken January 25, 2005 ("Adib's Deposition").

2. Application for Employer Identification Number for Fun Depot, Inc. bearing Bates stamp numbers P&P 000004-000011, marked as Exhibit 3 to Adib's Deposition.

3. Handwritten series of numbers, marked as Exhibit 4 to Adib's Deposition.

4. Copies of checks bearing Bates stamp numbers CPC 04407-04413, marked as Exhibit 5 to Adib's Deposition.

5. Check Register dated 2/21/98 bearing Bates stamp numbers CPC 02535-02539 (out of order), marked as Exhibit 6 to Adib's Deposition.

6. Document headed "Carefree Park Corp., Florida Operations, Year End 1997," bearing Bates stamp number CPC 02534, marked as Exhibit 7 to Adib's Deposition.

7. Financial Statements Of Fun Depot, Inc. For The Years Ended December 31, 1996 to 2003, bearing Bates stamp numbers P&P 000035-000113, marked collectively as Exhibit 8 to Adib's Deposition.

8. Check Register dated 2/21/99 bearing Bates stamp numbers CPC 02530-02533, marked as Exhibit 9 to Adib's Deposition.

9. Republic Security Bank Promissory Note dated November 22, 1996 bearing Bates stamp numbers WA 00281-00285, marked as Exhibit 10 to Adib's Deposition.

10. Letter to Adib from Daniel N. Benson of Republic Security Bank dated June 10, 1996 bearing Bates stamp numbers Fun Depot 000004-000005, marked as Exhibit 11 to Adib's Deposition.

11. Check Register dated 2/3/00 bearing Bates stamp numbers CPC 02450-02456, marked as Exhibit 12 to Adib's Deposition.

12. Profit & Loss Statement, 1/1/99 through 12/31/99, bearing Bates stamp numbers CPC 02457-02458, marked as Exhibit 13 at Adib's Deposition.

13. Document headed "FLA Checking Account" dated 2/4/1996 bearing Bates stamp numbers CPC 02691-02736, marked as Exhibit 14 to Adib's Deposition.

14. Document headed "Carefree Park Corp. Equipment Listing For 1995" bearing Bates stamp number CPC 02629, marked as Exhibit 15 to Adib's Deposition.

15. Document headed "General Ledger Activity, Period 01/01/02 to 12/31/02" with attached check payable to the order of George Nabhan bearing Bates stamp numbers Fun Depot 0033858 and Fun Depot 000410, marked as Exhibit 16 to Adib's Deposition.

16. Fun Depot, Inc. Statement of Income & Expenses for the years 2000 to 2003, bearing Bates stamp numbers P&P 000012-000015, marked as Exhibit 17 to Adib's Deposition.

17. Fun Depot, Inc. tax returns for the years 1996 to 2003 bearing Bates stamp numbers Fun Depot 000016-000093, marked collectively as Exhibit 19 to Adib's Deposition.

18. Fun Depot, Inc. Payroll Journal, 1998-2003.

19. Workpapers of Peterson & Peterson, PC.

20. Fun Depot, Inc. Checking Account Activity at First Union Bank

Defendant:

1. Declaration of Trust Re: Adele Realty Trust.

2. Trust Agreement entered into between Habib Nabhan and Amin Nabhan and Adib Nabhan

3. Individual Tax returns of Amin and Sarah Nabhan

4. Corporate documents of Carefree Park Corporation, including, but not limited to Articles of Organization, Bylaws, corporate resolutions and minutes of meetings

5. Bigelow and Company Financial Statements and work papers, received pursuant to subpoena.

6. Carefree Park Corporation tax returns

7. Carefree Park Corporation check registers

8. Carousel Lounge Corporation tax returns

9. Carousel Lounge Corporation check registers

10. Harvey's Casino Resorts check in the amount of $168,800.00 made payable to Adele Realty Trust, Amin and Adib Nabhan

11. Checking account, money market account and loan statements for Shawmut Bank, Fleet Bank, Sovereign Bank, Newburyport Five Cents Savings Bank and First & Ocean National Bank.

The parties reserve their rights to supplement their lists of exhibits.

| | |
|---|---|
| ADIB NABHAN, | CAREFREE PARK CORPORATION |
| By his attorney, | By its attorneys, |
| /s/ *Doyle C. Valley* | /s/ *Gordon M. Jones, III* |
| Doyle C. Valley (BBO #638578) | Robert L. Kirby, Jr. (BBO #550538) |
| Morrison, Mahoney & Miller, LLP | Gordon M. Jones, III (BBO # 549016) |
| 250 Summer Street | Nixon Peabody LLP |
| Boston, MA 02210 | 100 Summer Street |
| (617) 439-7500 | Boston, MA 02110-2131 |
| | (617) 345-1000 |

Dated: November 14, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by hand on November 14, 2005.

/s/ G. Jones
Gordon M. Jones, III