UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAREFREE PARK CORPORATION,<br>AMIN NABHAN and JAMILE<br>NABHAN,<br>    Plaintiffs,<br><br>v.<br><br>ADIB NABHAN,<br>    Defendant. | CIVIL ACTION NO: 2003-CV-12426 RCL |

**DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
EVIDENCE OF DAVID J. WUDYKA'S OPINION REGARDING THE
MARKETPLACE AVERAGE PAY RATE OF THE DEFENDANT**

Defendant, Adib Nabhan, ("Defendant" or "Adib Nabhan") hereby moves the Court *in limine* for an order precluding Plaintiffs Carefree Park Corporation, Amin Nabhan and Jamile Nabhan ("Plaintiffs" or "Carefree") from presenting any evidence concerning David J. Wudyka's opinion regarding the marketplace average pay rate of the defendant. Wudyka's opinion on marketplace average pay rate of the defendant must be precluded under <u>Daubert</u> analysis as unspecialized, unreliable and irrelevant.

    I.    **BACKGROUND**

This case involves allegations of breach of fiduciary duty and conversion coupled with a request for an accounting in the context of a close corporation and family run-business. Carefree is owned in equal one-third parts by three siblings –

983234v1

Plaintiffs Amin Nabhan and Jamile Nabhan and Defendant Adib Nabhan. Amin and Jamile Nabhan allege that their brother misappropriated assets and took for himself a business opportunity that belonged to Carefree when he incorporated Fun Depot as a Subchapter S Corporation ("S Corp.") and became the sole director and officer thereof.

Plaintiffs' expert, David J. Wudyka (hereinafter "Wudyka"), prepared an expert report (hereinafter "Wudyka Report", attached hereto as Exhibit A), dated March 17, 2005, in which he utilized a process described as "market pricing" to render an opinion regarding "the marketplace average pay rate" for the defendant, Adib Nabhan. Wudyka describes the process of "market pricing" as his research based upon two sources: (1) "a 1999 Compensation and Benefits Survey prepared by Industry Insights, Inc., on behalf of the International Association of Family Entertainment Centers (IAFEC) of Hillsboro, NH" (hereinafter "IAFEC survey"); and (2) www.salary.com. (Wudyka Report at 2). Wudyka concedes that while, at deposition, the defendant described his job responsibilities as "taking care of the operations of Fun Depot, Inc. and maintaining it", Wudyka was unable to find an exact match on www.salary.com and, instead, relied upon the closest "job classifications" which were listed, "Retail Store Manager" and "Coin Room Manager - Casino." (Id. at 3).

983234v1

In addition, the salary relied upon by Wudyka in the IAFEC survey and those relied upon from www.salary.com differed by $8,400 and $9,300, respectively.[1] In order to reconcile this difference, Wudyka increased the IAFEC survey salary amount due to "data aging at 4% per year" and increased that amount an additional 2% "[d]ue to the six month lag in the compilation of the data.

## II. ARGUMENT

### A. Wudyka's Opinion On Marketplace Average Pay Rate of the Defendant Must Be Precluded under <u>Daubert</u> Analysis as Unspecialized, Unreliable and Irrelevant

#### 1. Requirements For Expert Testimony

Under Federal Rule of Evidence 702, if **"specialized knowledge** will assist the trier of fact", then a qualified expert witness may testify "in the form of an opinion, or otherwise, [only] if (1) the testimony is based upon sufficient facts or data, (2) **the testimony is the product of reliable principles and methods,** and (3) the witness has applied the principles and methods reliably to the facts of the case. [emphasis added]" The Supreme Court has held that this rule imposes a gate-keeping function on the trial judge to ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." <u>Daubert v. Merrell Dow</u>

---

[1] Wudyka's report states that the IAFEC survey listed, in 1999, an "average base pay rate for the General Manger's position was $33.7K." (Wudyka Report at 3). In contrast, the two salaries cited by Wudyka from www.salary.com are $42.1K and $43.0K, respectively. (Wudyka Report at 4).

3

983234v1

Pharm., Inc., 509 U.S. 579, 597, 113 S. Ct. 2786 (1993). The Daubert inquiry applies not only to scientific testimony but also to technical and other specialized expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49, 119 S. Ct. 1167 (1999).

In Daubert, the Court identified four factors that may assist a trial court in determining the admissibility of an expert's testimony:

(1) whether the theory or technique can be and has been tested;

(2) whether the technique has been subject to peer review and publication;

(3) the technique's known or potential rate of error; and

(4) the level of the theory or technique's acceptance within the relevant discipline.

United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002), citing Daubert, 509 U.S. at 593-94.

Importantly, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Electric v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997) (citations omitted). "Thus, while methodology remains the central focus of a Daubert inquiry, this focus need not completely pretermit judicial consideration of an

4

983234v1

expert's conclusions. Rather, trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998), citing General Electric, 522 U.S. 136, 118 S. Ct. at 519.

    2.   Wudyka's Methodology is Unspecialized and Unreliable

In the instant matter, Wudyka cites no means by which his "market pricing" analysis can be tested. Wudyka cites no authority under which his "market pricing" analysis has been subject to peer review and publication. Wudyka does not offer a known or potential rate of error, nor does he describe his technique's acceptance within the relevant discipline. In other words, Wudyka appears to have taken data from one survey and one website and offered his unexplained self-adjusted analysis of those figures as his opinion on the marketplace average pay rate of the defendant. Under the Daubert analysis, there is no indication that Wudyka has utilized any specialized knowledge that will assist the trier of fact. Moreover, there is absolutely no indication that Wudyka's opinion is the product of reliable principles and methods. As Wudyka's opinion is both unspecialized and unreliable, plaintiffs must be precluded from offering it into evidence. Fed. R. Evid. 702; Daubert, 509 U.S. at 597.

983234v1

### 3. The Data Upon Which Wudyka Bases His Opinion is Unreliable and Irrelevant

Wudyka makes no reference to the methodology utilized in the IAFEC survey, such as the sample size, sample demographic or survey questionnaire. Absent the express consideration of the methodology of the survey upon which Wudyka's opinion is based, such opinion is properly excluded as unreliable. See Albert v. Warner-Lambert Co., 234 F. Supp. 2d 101, 106-07 (D. Mass. 2002) (holding expert testimony is properly precluded when such opinion is based upon "survey methodology so flawed as to be an archetypical example of the kind of "junky" science that Daubert commands be excluded from the jury's realm").

Neither does Wudyka make reference to the methodology utilized by www.salary.com to arrive at its listed salaries. Furthermore, Wudyka's arbitrary reliance upon salary figures for "Retail Store Manager" and "Coin Room Manager – Casino" are unrelated to the defendant's self-described position of "taking care of the operations of Fun Depot, Inc. and maintaining it." The absence on www.salary.com of a job description similar to the defendant's does not permit Wudyka to arbitrarily select other job descriptions as a substitute in his analysis. As such, Wudyka's opinion is properly excluded as irrelevant. See Cipollone v. Yale Indus. Prods., 202 F.3d 376, 380 (1st Cir. 2000) (stating, where proferred expert testimony is unrelated to

6

983234v1

facts at issue, it is properly excluded as irrelevant under Daubert analysis).

In sum, the only connection between Wudyka's opinion on the marketplace average pay rate of the defendant and the data he relies upon is the *ipse dixit* of the purported expert. This Court must conclude that "there is simply too great an analytical gap between the data and the opinion proffered." See General Electric v. Joiner, 522 U.S. at 146.

### B. To the Extent Wudyka's Opinion is Precluded, All Opinions of Richard J. Maloney Which Rely Upon Wudyka's Opinion Must Necessarily Be Precluded

Plaintiffs' expert, Richard J. Maloney (hereinafter "Maloney"), prepared an expert report, dated March 17, 2005, in which Maloney relies upon Wudyka's opinion of marketplace average pay rate of the defendant to reach his own assessment of reasonable compensation. (See Expert Report of Maloney, attached hereto as Exhibit B, at 16). To the extent this court precludes Wudyka's opinion on marketplace average pay rate of the defendant, those portions of Maloney's expert report on reasonable compensation, which rely upon Wudyka's opinion, should be stricken.

### III. CONCLUSION

Wherefore, the defendant, Adib Nabhan's, motion to preclude the plaintiffs from offering evidence of David J. Wudyka's opinion regarding the marketplace average pay rate of the

defendant, should be allowed. Furthermore, to the extent this Honorable court precludes Wudyka's opinion on reasonable compensation, those portions of Maloney's expert report which rely upon Wudyka's opinion should be stricken.

                              Respectfully submitted,

                              The Defendant,
                              ADIB NABHAN
                              By his attorneys,

                              /s/ Doyle C. Valley
                              Doyle C. Valley
                              BBO No. 638578
                              Morrison Mahoney LLP
                              250 Summer Street
                              Boston, MA 02210
                              (617) 439-7500
                              dvalley@morrisonmahoney.com

                              /s/ Ian Crawford
                              Ian Crawford (BBO#544475)
                              Todd & Weld LLP
                              28 State Street
                              Boston, MA  02109
                              (617) 720-2626
                              icrawford@toddweld.com

DATED:  January 13, 2006

## CERTIFICATE OF SERVICE

I, Doyle C. Valley, hereby certify that Defendant's Motion *In Limine* to Defendant's Motion In Limine To Preclude Evidence Of David J. Wudyka's Opinion Regarding The Marketplace Average Pay Rate Of The Defendant, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 13, 2006.

                              /s/ Doyle C. Valley
                              Doyle C. Valley

983234v1