# EXHIBIT A



**WESTMINSTER**
A S S O C I A T E S

3/17/05

Mr. Robert L. Kirby, Jr.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110-2131

Dear Mr. Kirby:

I have reviewed the legal materials that you sent to my firm, Westminster Associates, and am pleased to report my views regarding appropriate compensation levels in the marketplace for certain positions associated with the case of Carefree Park Corporation v. Adib Nabhan. This report includes my view of Mr. Adib Nabhan's job classification at Fun Depot, Inc. Pay data from several pay surveys in included for this position.

Please let me know if you have any questions about this report. I will be happy to clarify its content or to provide additional information.

Sincerely,

David J. Wudyka, MBA, SPHR
Managing Principal

## Introduction

I have been asked by Mr. Robert L. Kirby, Jr. of Nixon Peabody LLP, Attorneys At Law, in connection with the case of Carefree Park Corporation v. Adib Nabhan ("Mr. Nabhan" or the "Defendant"), to provide an opinion of the position that Mr. Nabhan holds at Fun Depot, Inc., in N. Lake Worth, FL, and to provide an opinion about the appropriate level of compensation for that position, as suggested by marketplace pay surveys.

Carefree Park Corporation is the Plaintiff in the case above. I understand that I may be called to testify as an expert witness in connection with this case. In preparation, I have reviewed the depositions of the respective parties. Also, I have researched and analyzed pay survey data that would be appropriate for identifying current labor market rates for positions such as Mr. Nabhan's. This process is also known as "market pricing."

The surveys that I utilized include Survey Source #1) a 1999 Compensation and Benefits Survey prepared by Industry Insights, Inc., on behalf of the International Association of Family Entertainment Centers (IAFEC) of Hillsboro, NH., And Survey Source #2) an Internet pay data source (www.salary.com), a digest of pay surveys merged into a large database for research purposes. In my view, these independent sources lead to a clear conclusion about the predicted level of pay for the job classification that I have identified as being held by Mr. Nabhan.

I have reviewed the following documents in connection with this case:

- Deposition testimony of Mr. Amin Nabhan
- Deposition testimony of Mr. Adib Nabhan
- Deposition testimony of Mr. Edward Nabhan
- An abstract of Fun Depot, Inc.'s Financial Statements from 1996 to 2003
- Fun Depot, Inc.'s web site
- (2) marketplace pay surveys (described above)

In addition, I talked on the telephone with Mr. Amin Nabhan of Carefree Park Corporation, to gain insight into the business operations of Fun Depot, Inc.

## Personal Background

My educational and experiential background is shown in the enclosed resume. I am also providing a brief summary of my qualifications to address the requested issue. For the last seventeen years I have been employed as an independent Human Resource (HR) Consultant, with a specialization in Compensation. My business largely serves companies that are small to mid-sized, and with no Human Resource Department, or with limited HR resources. I also serve large organizations that need specialized assistance or additional experienced people in support of larger projects. I serve all industries, but have a "niche" in the home health care and assisted living industry. I provide services primarily in New England, but travel nationally as needed.

**(Personal Background, Continued)**

Although it is not shown in my resume, I satisfactorily completed all course requirements in pursuit of a Ph.D. in Management at the University of Rhode Island between 1990 and 1994. I left the program then to devote more time to my consulting business. My education includes an MBA from Syracuse University in Organization and Management in 1973, and a Bachelor's Degree in Industrial Engineering in 1972. I am certified by the Society for Human Resource Management (SHRM) in the field of Human Resource Management, designated as a Senior Professional in Human Resources (SPHR).

## JOB MATCHING AND RELATED PAY DATA

Mr. Adib Nabhan, in his Deposition testimony, described his role as "taking care of the operations of Fun Depot, Inc. and maintaining it." Based upon his testimony and my research, I concluded that the position held by Mr. Nabhan was that of a "Manager" or "General Manager" of Fun Depot, Inc. In Source #1 above, this position title is a "General Manager of Entertainment Center" who is responsible for the daily operations of an (e.g.) arcade/attraction/game room, with "all aspects included," referring to the General Manager's total responsibility for the operation.

In 1999 the average base pay rate for the General Manager's position was $33.7K. The data from Survey Source #1 was compiled in the latter part of 1998 and the early part of 1999. With data aging at 4% per year, approximating the typical merit budget across all companies during that time frame, the predicted adjusted base pay rate would be $42.6K. Due to the six month lag in the compilation of the data, I added 2%, bringing the predicted base pay rate to $43.5K.

Additionally, using Source #2, I identified two job classifications which, while not matches by job title, are comparable in terms of level of responsibility. These are "Retail Store Manager" and "Coin Room Manager – Casino." Mr. Nabhan clearly manages a retail business operation. This makes the match of Retail Store Manager reasonable. In a similar vein, his role is comparable in certain ways to that of a Coin Room Manager in a Casino. Fun Depot advertises over 175 Arcade games in its operation. Also, the entertainment equipment (such as batting cages) in this business is often coin (or token) operated.

**Data Convergence**

The pay data for these three job matches is shown below. Survey Source #1 data is assumed to be national in nature (not specified in the Survey document). Survey Source #2 is for Lake Worth, FL.

Despite some differences in the nature and scope of responsibility of these roles, the average or median pay data converges, suggesting that the level of responsibility has been accurately matched. The median and the average base pay rate are both statistical measures of central tendency that are used as the basis for the development of pay range midpoints. They also represent the rate of pay that someone could earn who "fully understands and performs a (given) job."

## MARKETPLACE PAY RATES

| JOB TITLE | AVERAGE BASE PAY RATE ($K) | SOURCE |
|---|---|---|
| General Manager – Entertainment Center | $43.5 | #1 |
| Retail Store Manager | $42.1 | #2 |
| Coin Room Manager - Casino | $43.0 | #2 |

**Sources:**

(1) IAFEC Survey

(2) Internet: www.salary.com. Pay data is assumed to be current. Median pay data is reported in lieu of average pay data.

**Conclusions**

Based upon the information that I reviewed about this case, and the pay data that I researched, I believe that the marketplace average pay rate for Mr. Adib Nabhan's position is approximately $43K per year.

Please let me know if I can be of further assistance.

Signed under the penalties of perjury this 17th day of March, 2005.

David J. Wudyka, MBA, SPHR
Managing Principal
Westminster Associates

**Curriculum Vitae**
David J. Wudyka, SPHR, MBA, BSIE
Managing Principal, Westminster Associates
(508) 883-9770
dwudyka@westminsterassociates.com

## EDUCATION

| | |
|---|---|
| 1993 | Completed all course work toward Ph.D., Business Admin., University of Rhode Island |
| 1973 | MBA, Organization and Management, Syracuse University |
| 1968 | Bachelor of Science, Industrial Engineering, University of Rhode Island |

### Certifications

| | |
|---|---|
| 1999 | Professional in Human Resource Management (PHR) (Society for Human Resource Management) |
| 1994 | Senior Professional in Human Resources (SPHR) (Society for Human Resource Management) |
| 1979 | Certified Compensation Professional (CCP) (American Compensation Association) |

### Teaching Experience

**Instructor**

| | |
|---|---|
| Bryant College (2000 to present) | Leadership, Human Resource Mgt. Organizational Behavior |
| US Coast Guard Academy (1992-2001) | Human Resource Management Strategic Management Leadership & Organizational Development Organizational Behavior |
| Center for Executive Development Bryant College  (1982 to present) | Wage and Salary Administration Fundamentals of Employee Benefits Advanced Compensation Management Contemporary Human Resource Issues SHRM Certification Program |
| Suffolk University (Fall, 2000) | Leadership |
| Salve Regina University (1997) | Contemporary Compensation Theory (MBA) |
| University of Rhode Island (1992-1993) | Human Resource Management; Management and Organizational Theory. Courses taught in satisfaction of Ph.D. program requirements. |

## PROFESSIONAL EXPERIENCE

1973 – 1976:      Compensation Analyst
**Pratt & Whitney Aircraft**
East Hartford, Connecticut

1976 – 1979:      Compensation Administrator
**Newport Hospital**
Newport, Rhode Island

1979 – 1988:      Sr. Compensation Analyst; Compensation Manager; Training &
Development Manager; and Internal Compensation Consultant
**Raytheon Company**
Submarine Signal Division; Corporate Headquarters
Portsmouth, Rhode Island and Lexington, Massachusetts

1988 – Present:      Founder/Managing Principal
**Westminster Associates** (Human Resource Consulting)
Wrentham, Massachusetts

### Honors

- Lifetime Achievement Award from the "World at Work" (formerly the American Compensation Association)

- Continuous Teaching Award (1982 - present) from the Center for Executive Development at Bryant College, Smithfield, RI (2003)

### Professional Affiliations

- Home and Health Care Association of Massachusetts
- Society for Human Resource Management (SHRM)
- Web Industries, Inc. - Compensation Committee of Board of Directors

### Television Appearances

WJAR, Cranston, RI; December, 2000; Topic: Job De-Enrichment

# EXHIBIT B

Carefree Park Corporation

v.

Adib Nabhan

Case No: 03-CB-12426RCL
United States District Court for the
District of Massachusetts

Expert Witness Report of

Richard J. Maloney, CPA

March 17, 2005

# Carefree Park Corporation v. Adib Nabhan

## INDEX

**OPINION LETTER**                                                          Page

| | | |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | ASSIGNMENT | 3 |
| III. | EXPERT OPINION | 3 |
| IV. | WORK PERFORMED | 3 |
| V. | BASES FOR OPINIONS | 3 |
| VI. | CONCLUSION | 3 |
| VII. | EXPERT QUALIFICATIONS | 4 |
| | | 4 |

**APPENDICES**

| | | |
|---|---|---|
| A | DOCUMENTS REVIEWED | 6 |
| B | CURRICULUM VITAE | 7 |
| C | EXPERT WITNESS TESTIMONY | 9 |

**INDEX OF SCHEDULES**

| | | |
|---|---|---|
| Schedule I | Historic Income Statements Per Corporate Financial Statements | 11 |
| Schedule II | Detail of Operating Expenses | 12 |
| Schedule III | Graph of Revenue | 13 |
| Schedule IV | Historic Balance Sheets | 14 |
| Schedule V | Graph of Officer Compensation | 15 |
| Schedule VI | Officers Compensation Paid to Adib Nabhan | 16 |
| Schedule VII | Depreciation | 17 |
| Schedule VIII | Normalized Net Income | 18 |

## I.  Introduction

The Plaintiff in this case, Carefree Park Corporation ("Carefree Park"), maintains that it is the rightful owner of a Florida corporation, Fun Depot, Inc. ("Fun Depot"). Fun Depot was founded in 1996 as a continuation of a business operated on behalf of, and as part of, Carefree Park. The manager of the business was Adib Nabhan, a shareholder of Carefree Park. The business was (and still is) located at certain real estate owned by Carefree Park in Lake Worth, Florida. Although Fun Depot has been profitable, no dividends have been paid to Carefree Park.

## II.  Assignment

The law firm of Nixon Peabody, LLP, of Boston, Massachusetts, engaged our firm to provide an expert opinion as to the amount of money that Carefree Park Corporation, assuming that Carefree Park Corporation is the rightful owner of Fun Depot, Inc., would have earned in its capacity as owner of Fun Depot, Inc. from 1996 to the present, if there had been no misappropriation of the corporate opportunity and assets.

Neither I nor any employee of R.J. Maloney & Company, PLLC has any financial interest in the parties in this case. The fees for my services are not contingent upon the outcome of this case.

## III.  Expert Opinion

In my expert opinion the cumulative net income of Fun Depot available for distribution to Carefree Park as of December 31, 2003 is $1,225,000.

## IV.  Work Performed

We examined the tax returns and financial statements of Fun Depot from 1996 through 2003 as well as certain other financial information. We have relied on this information in the preparation of this report. We developed a financial model to analyze the past operations of Fun Depot and adjusted for reasonable compensation for a store manager and for the appropriate level of depreciation. See Appendix C, Information Reviewed.

## V.  Bases for Opinions

A.  The Income Statement of Fun Depot for the years 1996 through 2003 are set forth in the attached Schedule I. The Operating Expense detail is set forth on Schedule II. The revenue is illustrated in graph form in Schedule III.

The Balance Sheet, presenting the assets and liabilities of Fun Depot, are set forth in Schedule IV.

3

B.     The Schedules illustrate that Fun Depot's revenue grew dramatically up to 2003, when there was a slight decline. The Schedules also show the growth of assets within the corporation.

C.     The Company did not pay any dividends until the year 2000 and 2001 when there were relatively modest distributions. There were no dividends in the year 2002. However, there were dividends of approximately $305,000 paid in the year 2003. All of these dividends were paid to Adib Nabhan.

D.     We have also reviewed the compensation paid to Adib Nabhan and his wife, Adel, which was reported as officers' compensation. Schedule V represents this compensation in graph form. We were not provided with payroll records prior to 1998 and could not separate the compensation for Adib and Adel for 1996 and 1997.

E.     We reviewed the report of David J. Wudyka dated March 14, 2005 regarding the appropriate level of compensation for Adib Naban's position. In Schedule VI, we have adjusted Adib Nabhan's compensation to reflect the reasonable compensation that would be paid for such position.

F.     For financial statement purposes, Fun Depot depreciates its equipment using the income tax rules. However, because of a variety of special tax provisions, the depreciation has been accelerated in most recent years. In Schedule IV, we have set forth the depreciation under Section 179 and the so-called special depreciation for the years in question. We have then calculated what would have been the normal depreciation using a seven year life and the accelerated form under MACRS (the normal tax depreciation convention). We have added back in the difference each year to present a accurate view of the equipment depreciation.

## VI.     Conclusion

From 1996-2003, Fun Depot operated a profitable business. None of the earnings were distributed to Carefree Park. After adjustments for excess compensation and excess depreciation, the cumulative earnings available for distribution as of December 31, 2003 are $1,226,606 (rounded to $1,225,000).

We have not been provided with financial information for the year ended December 31, 2004 and reserve the right to supplement and update our report when such information is available. We will also update our report as other additional information becomes available.

## VII.     Expert Qualifications

Richard J. Maloney, CPA, is the President of R.J. Maloney & Company, PLLC, a public accounting firm with a specialization in tax services, litigation support and business and

financial planning.  Mr. Maloney's curriculum vita is contained as Appendix B. The curriculum vitae include current and past employment, education and a listing of publications.  Appendix C sets forth the cases in which Mr. Maloney offered trial or deposition testimony.  Materials reviewed and published sources are listed in Appendix A.

The firm is compensated at our hourly billing rates of $235 an hour for Richard J. Maloney, CPA, and $70 to $95 an hour for staff accountants.

Richard J. Maloney
March 17, 2005

# APPENDIX A

## Carefree Park Corporation v. Adib Nabhan

## <u>DOCUMENTS REVIEWED</u>:

Documents disclosed by the following:
Carefree Park, Inc.
Fun Depot, Inc.
Peterson & Peterson, PC
Wachovia Bank

Including the following:

- Fun Depot, Inc. Corporate Tax Returns:　　1996 – 2003

- Fun Depot, Inc. Financial Statements:　　1996 – 2003

- Fun Depot, Inc. Payroll Journal　　1998 – 2003

- General Ledger Activity Reports　　1999 - 2003

- Deposition of Adib Nabhan

- Deposition of Amin Nabhan

- Workpapers files of Peterson & Peterson, PC

- Fun Depot, Inc. Checking Account Activity at First Union Bank

Report of David J. Wudyka dated March 17, 2005

6

APPENDIX B

CURRICULUM VITAE
## RICHARD J. MALONEY

EDUCATION:

B.A., St. Michaels College (1972)
M.S. (Accounting), School of Business, State University of New York at Albany (1978)
J.D., Albany Law School of Union University (1975)
Attended Sienna College, 30 Credit Hours Accounting (1976-1977)

PROFESSIONAL QUALIFICATIONS:

Certified Public Accountant:  New Hampshire
Member, New Hampshire Board of Accountancy
Admitted to the Bar:  New York and New Hampshire
Former Chairman, Tax Section, New Hampshire Bar Association
Former President, Taxation Committee, New Hampshire Society of Certified Public Accountants
Member, Section of Taxation, American Bar Association
Member, Tax Division, American Institute of CPAs
Member, American Association of Attorney-Certified Public Accountants
Candidate for Membership, American Society of Appraisers

BUSINESS ORGANIZATIONS:

Director & Treasurer, Business and Industry Association

PUBLICATIONS:
"S Corporations: Corporate Tax Planning", New Hampshire Bar CLE, 1987 Tax Forum
"Corporate Transition Rules of the 1986 Tax Act", New Hampshire Bar CLE, 1988 Tax Forum
"Tax Issues Involving the Employer/Employee Relationship", New Hampshire Bar Journal,
      Vol. 30:4, Summer 1989
"Current Developments in New Hampshire Taxation", New Hampshire Bar CLE,
      1989 Tax Forum
"Issues for CPAs as Expert Witnesses", New Hampshire Bar CLE, CPA As An Expert
      Witness, May, 1991 (also served as program chair)
"Business Valuations", New Hampshire Bar CLE, CPA As An Expert Witness, May, 1992
"Valuation and Divorce", New Hampshire Bar CLE, Complexities of Divorce, February 1991
"S Corporations and Debt Relief", New Hampshire Bar CLE, 1990 Tax Forum
"Taxation and Divorce", New Hampshire Family Law by Charles G. Douglas, III
      and Caroline G. Douglas, Co-Author of Chapter 21
"S Corporations-Technical Issues", New Hampshire Bar CLE, 1991 Tax Forum

7

"Qualified Domestic Relations Orders", <u>New Hampshire Bar Journal</u>, Vol. 33, No. 4, December, 1992

"Business Plans For Lawyers", <u>New Hampshire Bar Journal</u>, Vol. 33, No. 2, June, 1992

"S Corporations: Technical Update", New Hampshire Bar CLE, 1992 Tax Forum

"Business Enterprise Tax", New Hampshire Society of CPAs, September, 1993

"Law Firm Partnerships", New Hampshire Bar CLE, November 1993

"How to Manage the Business of Law Practice in New Hampshire", National Business Institute, October 1993

"Liquidation of a Corporation", New Hampshire Bar CLE, 1993 Tax Forum

"Property Transfers and Corporate Formations", New Hampshire Bar CLE, 1994 Tax Forum

"Starting and Operating a Law Practice", New Hampshire Bar CLE, <u>Professionalism and Management: Keys to a Successful Practice</u>, September, 1994 and February, 1995

"Internal Revenue Service Audits and Procedures", New Hampshire Bar CLE, 1995 Tax Forum

"Federal Tax Update-Individuals", New Hampshire Bar CLE, 1996 Tax Forum

"Gathering and Analyzing Financial Information", National Business Institute, April 1997

"The Alternative Minimum Tax: Why Life is not Linear", New Hampshire Bar CLE, 1997 Tax Forum

"Tax Aspects of Divorce in New Hampshire", National Business Institute, September 1998 and 2000

"Considerations in Buying or Selling a Business in New Hampshire", National Business Institute, 2000

"Selecting and Forming Business Entities in New Hampshire:  The Legal and Tax Implications", Lorman Education Services, August 2000 and November 2000

"Tax Issues of Bankruptcy and Debt Restructuring", New Hampshire Bar CLE, 2000 Tax Forum

"Corporate Distributions, Redemptions and Liquidations", New Hampshire Bar CLE, Business Taxation 2002

"Business Split Ups: Issues Arising From Corporate and Partnership Fractures", New Hampshire Bar Association CLE, 2003

"Selected Topics in Taxation of Real Estate", New Hampshire Bar Association CLE, 2004

# EXPERT WITNESS LIST

APPENDIX C

| PARTY | TESTIFY DATE | COURT | D = DEPOSITION T = TESTIMONY * = NO TESTIMONY | REPORT | TYPE OF CASE | SUBJECT OF TESTIMONY |
|---|---|---|---|---|---|---|
| Benton, Jean | 02/02/05 | Hillsborough | T | Yes | Divorce | Valuation of Health Club |
| Clarkeies Market | 01/12/05 | Federal Bankruptcy - Manchester | D | No | Contract | Lender Liability |
| Kim, Uno v. State | 7/20/2004 | Hillsborough | T | Yes | Criminal | Financial Activity |
| McCutcheon, Anita | 4/01/2004 | US District – Concord | T | Yes | Personal Injury | Lost Income |
| Husak, Peter | 3/17/2004 | Belknap | T | Yes | Litigation | General Financial Matters |
| Mageria, Linda | 3/11/2004 | Derry Family | D & T | Yes | Divorce | Valuation |
| Mageria, Linda | 12/08/2004 | Rockingham | T | No | Divorce | Present Value |
| Northern Laminate | 11/20/2003 | U.S. District - Concord | T | Yes | Commercial Litigation | Lost Profits |
| O'Leary, Robert | 9/16/2003 | Rockingham | T | Yes | Divorce | Valuation of Restaurant |
| Ibrahim, Patricia | 7/29/2003 | Hillsborough | T | Yes | Divorce | Valuation of Convenience Store |
| Clarkeies Market | 6/11/2003 | Federal Bankruptcy - Manchester | T | Yes | Contract | Lender Liability |
| Masiello, Theresa | 3/5/2003 | Cheshire | T | No | Divorce | Financial Consulting |
| Lorden, John | 3/4/2003 | U.S. District - Concord | D | | | Valuation of Interest in Business |
| Carver, Paul | 10/25/2002 | Hillsborough | D | No | Financial Consulting | |
| Helfrich, Joseph P. | 10/23/2002 | Rockingham | T | Yes | Divorce | Valuation of Manufacturer |
| Larochelle, Denise | 10/3/2002 | Merrimack | T | Yes | Divorce | Divorce; Cash flow of Business |
| Blaine, William | 9/30/2002 | Rockingham | T | Yes | Divorce | Valuation of Sound Company |
| Courtney, Maria | 5/7/2002 | Merrimack | T | Yes | Divorce | Valuation of Dental Practice |
| Hockmyer, Wayne (Banjo Buddies) | 5/6/2002 | Federal District Pittsburgh, PA | T | Yes | Contract | Lost Profits |
| Goodrich, Jeffrey | 4/30/2002 | Grafton | T | Yes | Corporate | Profit Sharing |
| Maxfield, George | 1/15/2002 | Derry Family | T | Yes | Divorce | Valuation of Dental Practice |
| Dionne, Paul | 12/13/2001 | Hillsborough N. | T | Yes | Divorce | Valuation of Restaurant |
| Cole, Sandra | 11/14/2001 | Carroll | T | Yes | Divorce | Valuation of Optical Practice |
| Steele, Timothy | 7/27/2001 | Cheshire | T | Yes | Divorce | Valuation of Manufacturing |
| Cannon Shelley | 6/19/2001 | Hillsborough N. | D | No | Divorce | Divorce |

9

## EXPERT WITNESS LIST

| PARTY | TESTIFY DATE | COURT | D = DEPOSITION<br>T = TESTIMONY<br>* = NO TESTIMONY | REPORT | TYPE OF CASE | SUBJECT OF TESTIMONY |
|---|---|---|---|---|---|---|
| Merriam, Richard vs. Dubois | 2/21/2001 | Hillsborough | D | No | Malpractice | Accounting Practices |
| Commercial Union/Wilcox | 1/31/2000 | Arbitration | T | Yes | Tort | Lost Wages |
| Martin, Larry | 1/1/2000 | Merrimack | D | No | | Lost Wages |

10

# SCHEDULE I

## FUN DEPOT, INC.

### Historic Income Statements Per Corporate Financial Statements
**For The Years Ended December 31,**

|  | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| REVENUE |  |  |  |  |  |  |  |  |
| Sales | $ 294,437 | $ 696,936 | $ 825,984 | $ 937,141 | $ 1,010,859 | $ 1,280,519 | $ 1,385,584 | $ 1,301,675 |
| NET SALES | 294,437 | 696,936 | 825,984 | 937,141 | 1,010,859 | 1,280,519 | 1,385,584 | 1,301,675 |
| COST OF GOODS SOLD |  |  |  |  |  |  |  |  |
| Purchases-Supplies | 29,494 | 84,348 | 101,722 | 85,243 | 78,303 | 117,099 | 119,805 | 146,033 |
| Purchases-Tickets | 1,697 | 16,095 | 8,152 | 9,428 | 9,972 | 12,847 | 10,094 | 9,911 |
| Purchases-Games | - | - | - | 2,320 | 489 | - | - | 678 |
| Purchases-Gas & Oil | 4,307 | 8,252 | 7,112 | 7,717 | 6,425 | 7,811 | 7,965 | 6,900 |
| Purchases-Parts | 18,910 | 27,820 | 44,365 | 32,733 | 36,039 | 23,142 | 82,355 | 38,287 |
| Payroll | 80,576 | 132,193 | 147,849 | 153,618 | 150,172 | 122,928 | 187,699 | 223,050 |
| Payroll Taxes | 11,596 | 14,388 | 16,914 | 19,344 | 20,607 | 22,554 | 25,596 | 27,884 |
| Equipment Maintenance | 1,285 | 178 | 832 | 2,015 | 2,377 | 6,004 | 13,237 | 8,066 |
| Sub-Contracts | - | - | - | 816 | 1,596 | 36,400 | 36,400 | 36,400 |
| TOTAL COST OF SALES | 147,865 | 283,274 | 327,763 | 312,417 | 305,980 | 408,784 | 482,871 | 497,209 |
| GROSS PROFIT | 146,572 | 413,662 | 498,222 | 624,724 | 704,879 | 871,735 | 902,713 | 804,466 |
| SELLING AND ADMINISTRATIVE EXPENSES | 105,194 | 312,357 | 321,956 | 316,602 | 317,589 | 387,896 | 374,799 | 404,039 |
| OPERATING INCOME BEFORE |  |  |  |  |  |  |  |  |
| OTHER EXPENSES & INCOME TAXES | 41,378 | 101,305 | 176,266 | 308,121 | 387,290 | 483,838 | 527,914 | 400,427 |
| OTHER REVENUES AND EXPENSES |  |  |  |  |  |  |  |  |
| Sales Tax Commissions | (226) | (82) | - | (120) | (134) | -167.63 | - | -90 |
| Gain/(Loss) on Sale of Fixed Assetes | - | - | 6,499 | 15,820 | - | - | - | - |
| Interest Income | - | - | - | (385) | - | (27) | (122) | (218) |
| Depreciation & Amortization Expense | 42 | 30,012 | 39,190 | 72,248 | 103,552 | 120,925 | 165,635 | 197,633 |
| SEP/IRA Expense | - | - | - | 14,445 | 20,040 | 23,400 | 39,000 | 39,000 |
| Officers Health Insurance | - | - | - | - | - | 9,486 | 7,066 | 7,884 |
| Officers Compensation | 30,400 | 41,600 | 58,500 | 85,900 | 133,600 | 135,200 | 156,000 | 156,000 |
| TOTAL OTHER EXPENSES | 30,217 | 71,530 | 104,189 | 187,907 | 257,058 | 288,817 | 367,579 | 400,209 |
| NET INCOME | 11,161 | 29,775 | 72,077 | 120,214 | 130,232 | 195,021 | 160,335 | 218 |

Page 11

The historic financial information presented above is included solely to assist in the development of the value conclusion presented in this report, and it should not be used to obtain credit or for any other purpose. Because of the limited purpose of this presentation, it may be incomplete and contain departures from generally accepted accounting principles. We have not audited, reviewed, or compiled this presentation and express no assurance on it.

## SCHEDULE II

## FUN DEPOT, INC.

### DETAIL OF OPERATING EXPENSES
For The Years Ended December 31,

| | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| **SELLING ADMINISTRATIVE EXPENSES** | | | | | | | | |
| Advertising Expense | $ 23,000 | $ 34,956 | $ 40,525 | $ 46,413 | $ 38,790 | $ 48,513 | $ 57,295 | $ 52,791 |
| Auto Expense | - | 600 | 2,731 | 5,533 | 5,480 | 2,492 | 3,257 | 2,881 |
| Charitable Contributions | - | - | 1,935 | - | - | - | - | - |
| Conventions & Seminars | - | 3,174 | - | - | - | - | - | - |
| Dues & Subscriptions | 811 | 1,015 | 1,255 | 1,441 | 704 | 1,095 | 1,682 | 1,810 |
| Equipment Rental | - | 1,550 | 2,656 | 4,796 | 2,943 | 3,780 | 5,406 | 1,042 |
| Insurance | 31,028 | 41,547 | 40,271 | 17,697 | 45,482 | 60,057 | 50,228 | 90,246 |
| Insurance-Health | - | - | - | - | 4,410 | - | - | - |
| Interest Expense | - | 226 | 3,287 | 1,504 | 68 | 5,473 | 5,441 | 6,936 |
| Legal & Accounting | - | 4,701 | 8,015 | 2,273 | 2,198 | 3,285 | 10,568 | 21,018 |
| Licenses & Taxes | 9,250 | 32,290 | 10,440 | 43,555 | 20,048 | 41,149 | 9,273 | 9,692 |
| Office Expense | 1,861 | 5,572 | 12,461 | 8,246 | 9,366 | 11,410 | 19,238 | 14,900 |
| Rent | - | 89,040 | 89,040 | 77,384 | 80,000 | 97,000 | 75,000 | 70,000 |
| Repairs & Maint - Bldg | 5,781 | 27,006 | 28,166 | 23,207 | 28,831 | 17,627 | 22,595 | 23,193 |
| Telephone | 3,451 | 9,907 | 10,275 | 13,181 | 14,363 | 19,954 | 13,174 | 11,829 |
| Utilities | 30,013 | 60,773 | 70,900 | 71,372 | 64,906 | 76,062 | 101,641 | 97,702 |
| TOTAL SELLING AND ADMINISTRATIVE EXPENSES | $ 105,194 | $ 312,357 | $ 321,956 | $ 316,602 | $ 317,589 | $ 387,896 | $ 374,799 | $ 404,039 |

The historic financial information presented above is included solely to assist in the development of the value conclusion
presented in this report, and it should not be used to obtain credit or for any other purpose. Because of the limited purpose
of this presentation, it may be incomplete and contain departures from generally accepted accounting principles. We have not
audited, reviewed, or compiled this presentation and express no assurance on it.



**SCHEDULE III**
FUN DEPOT, INC.

Page 13

## SCHEDULE IV

## FUN DEPOT, INC.

### HISTORIC BALANCE SHEETS
For The Years Ended December 31,

| | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | |
| CURRENT ASSETS | | | | | | | | |
| Cash | $ 1,768 | $ 9,771 | $ 7,096 | $ 27,457 | $ 2,696 | $ 2,880 | $ 60,467 | $ 188,661 |
| PROPERTY AND EQUIPMENT | | | | | | | | |
| Equipment | $ 19,812 | $ 66,994 | $ 167,503 | $ 328,109 | $ 481,610 | $ 659,524 | $ 775,740 | $ 882,581 |
| Leasehold Improvements | $ - | $ 145,379 | $ 145,379 | $ 145,379 | $ 148,690 | $ 537,742 | $ 561,074 | $ 589,555 |
| Less Accumulated Depreciation | $ (42) | $ (30,054) | $ (69,244) | $ (138,811) | $ (242,363) | $ (363,289) | $ (528,924) | $ (726,557) |
| Net Property, Plant & Equipment | $ 19,769 | $ 182,320 | $ 243,639 | $ 334,677 | $ 387,938 | $ 833,977 | $ 807,890 | $ 745,579 |
| TOTAL ASSETS | $ 21,537 | $ 192,091 | $ 250,734 | $ 362,133 | $ 390,634 | $ 836,857 | $ 868,357 | $ 934,240 |
| **LIABILITIES AND EQUITY** | | | | | | | | |
| CURRENT LIABILITIES | | | | | | | | |
| Credit Card Payable | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 3,219 |
| Payroll Taxes Payable | $ 691 | $ 134 | $ 7,651 | $ 783 | $ 9,597 | $ 3,610 | $ 4,171 | $ 217 |
| Sales Tax Payable | $ 1,895 | $ 2,777 | $ 3,037 | $ 2,346 | $ 3,183 | $ 3,671 | $ 3,842 | $ 4,094 |
| Credit Line | $ - | $ - | $ - | $ - | $ - | $ 190,810 | $ 90,810 | $ 490,810 |
| SEP/IRA Payable | $ - | $ - | $ - | $ 14,445 | $ 18,040 | $ 23,400 | $ 39,000 | $ 39,000 |
| TOTAL CURRENT LIABILITIES | $ 2,586 | $ 2,911 | $ 10,689 | $ 17,575 | $ 30,820 | $ 221,491 | $ 137,823 | $ 537,340 |
| LONG TERM LIABILITIES | | | | | | | | |
| Note Payable – Carefree Pk | $ - | $ 75,540 | $ 41,130 | $ - | $ - | $ - | $ - | $ - |
| Notes Payable – Stockholder | $ 7,690 | $ 72,603 | $ 85,803 | $ 111,231 | $ - | $ 74,046 | $ 28,880 | $ - |
| TOTAL LIABILITIES | $ 10,276 | $ 151,055 | $ 137,621 | $ 128,806 | $ 30,820 | $ 295,537 | $ 166,703 | $ 537,340 |
| STOCKHOLDERS' EQUITY | | | | | | | | |
| Capital Stock | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 | $ 100 |
| Dividends | $ - | $ - | $ - | $ - | $ (3,746) | $ (13,514) | $ - | $ (304,972) |
| Retained earnings | $ 11,161 | $ 40,936 | $ 113,014 | $ 233,227 | $ 363,460 | $ 554,734 | $ 701,554 | $ 701,772 |
| Total Equity | $ 11,261 | $ 41,036 | $ 113,114 | $ 233,327 | $ 359,814 | $ 541,320 | $ 701,654 | $ 396,900 |
| TOTAL LIABILITIES AND EQUITY | $ 21,537 | $ 192,091 | $ 250,734 | $ 362,133 | $ 390,634 | $ 836,857 | $ 868,357 | $ 934,240 |

The historic financial information presented above is included solely to assist in the development of the value conclusion presented in this report, and it should not be used to obtain credit or for any other purpose. Because of the limited purpose of this presentation, it may be incomplete and contain departures from generally accepted accounting principles. We have not audited, reviewed, or compiled this presentation and express no assurance on it.

**SCHEDULE V**
FUN DEPOT, INC.



Officer Compensation

SCHEDULE VI

FUN DEPOT, INC.

OFFICERS COMPENSATION PAID TO ADIB NABHAN

For The Years Ended December 31,

| | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|
| Paid to Adib Nabhan | $ 37,600 | $ 75,900 | $ 112,800 | $ 135,200 | $ 135,200 | $ 135,200 |
| Reasonable Compensation | $ 43,000 | $ 43,000 | $ 43,000 | $ 43,000 | $ 43,000 | $ 43,000 |
| Adjustment for Excess Compensation | $ - | $ 32,900 | $ 69,800 | $ 92,200 | $ 92,200 | $ 92,200 |

Page 16

SCHEDULE VII

FUN DEPOT, INC.
DEPRECIATION
For The Years Ended December 31,

| | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| Depreciation Per Tax Returns | $ 42 | $ 30,012 | $ 39,190 | $ 72,248 | $ 103,552 | $ 120,925 | $ 165,635 | $ 197,633 |
| | | | | | | | | |
| Section 179 | $ - | $ 18,000 | $ 18,500 | $ 19,000 | $ 20,000 | $ 24,000 | $ 24,000 | $ 100,000 |
| Limitation | | | | | | | | (13,984) |
| Special Depreciation | $ - | $ - | $ - | $ - | $ - | $ - | $ 31,027 | $ 7,661 |
| **Total Excess Depreciaiton** | $ - | $ 18,000 | $ 18,500 | $ 19,000 | $ 20,000 | $ 24,000 | $ 55,027 | $ 93,677 |
| | | | | | | | | |
| MACRS | $ - | $ - | $ - | $ - | $ - | $ (1,575) | $ (1,573) | $ (1,575) |
| | | $ (4,500) | $ (3,857) | $ (2,756) | $ (1,967) | $ (2,022) | $ (1,619) | $ (1,617) |
| | | | $ (4,625) | $ (3,965) | $ (2,832) | $ (2,909) | $ (2,077) | $ (1,663) |
| | | | | $ (4,750) | $ (4,072) | $ (4,286) | $ (3,062) | $ (2,186) |
| | | | | | $ (5,000) | $ (6,000) | $ (5,143) | $ (3,674) |
| | | | | | | | $ (13,757) | $ (11,792) |
| | | | | | | | | $ (23,419) |
| | | | | | | | | |
| **MACRS Depreciaton** | $ - | $ 13,500 | $ 10,018 | $ 7,530 | $ 6,129 | $ 7,208 | $ 27,796 | $ 47,751 |

| | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|---|---|
| MACRS | 25.00% | 21.43% | 15.31% | 10.93% | 8.75% | 8.74% | 8.75% | 1.09% |
| first quarter table | | 25.00% | 21.43% | 15.31% | 10.93% | 8.75% | 8.74% | 8.75% |
| | | | 25.00% | 21.43% | 15.31% | 10.93% | 8.75% | 8.74% |
| | | | | 25.00% | 21.43% | 15.31% | 10.93% | 8.75% |
| | | | | | 25.00% | 21.43% | 15.31% | 10.93% |
| | | | | | | 25.00% | 21.43% | 15.31% |
| | | | | | | | 25.00% | 21.43% |
| | | | | | | | | 25.00% |