UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
2003-CV-12426 RCL

```
_____
                                    )
CAREFREE PARK CORPORATION,          )
AMIN NABHAN AND JAMILE NABHAN       )
                                    )
         Plaintiffs,                )
                                    )
v.                                  )
                                    )
ADIB NABHAN                         )
                                    )
         Defendant.                 )
_____)
```

DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE CONCERNING PLAINTIFFS' CLAIMS
OF BREACH OF FIDUCIARY DUTY AND CONVERSION

Defendant, Adib Nabhan, ("Defendant" or "Adib Nabhan") hereby moves the Court *in limine* for an order precluding Plaintiffs Carefree Park Corporation, Amin Nabhan and Jamile Nabhan ("Plaintiffs" or "Carefree") from presenting any evidence concerning Carefree's allegations of breach of fiduciary duty or conversion because these claims are time-barred. In 1996, seven years before filing the Complaint in this action, Carefree was put on notice that Defendant had formed and incorporated Fun Depot, Inc. ("Fun Depot") and that Adib Nabhan was the sole owner thereof. Despite that notice, Carefree took no action prior to the filing of its Complaint on October 8, 2003, long after the applicable three-year statute of limitations governing

claims for breach fiduciary duty and conversion had elapsed. Because Carefree's claims for breach of fiduciary duty and conversion are time-barred, Defendant asks this Court to exclude all evidence concerning these allegations and to dismiss these claims all together.

I. **BACKGROUND**

This case involves allegations of breach of fiduciary duty and conversion coupled with a request for an accounting in the context of a close corporation and family run-business. Carefree is owned in equal one-third parts by three siblings – Plaintiffs Amin Nabhan and Jamile Nabhan, and Defendant Adib Nabhan.  Amin and Jamile Nabhan allege that their brother misappropriated assets and took for himself a business opportunity that belonged to Carefree when he incorporated Fun Depot as a Subchapter S Corporation ("S Corp.") and became the sole director and officer thereof.  Plaintiffs also claim, despite clear evidence to the contrary, that they first became aware of the facts giving rise to the allegations in their Complaint in 2002.

Contrary to Plaintiffs assertion, as early as 1996 Amin Nabhan and Jamile Nabhan were on notice that Fun Depot had been created and that Adib Nabhan was its sole shareholder.  From the time of Fun Depot's original incorporation in 1996, Fun Depot's accountant, Craig K. Peterson, interacted on a regular basis with the accountants and tax preparers for Carefree and Amin and

2

Jamile Nabhan - Mr. Mike Leclerc of Bigelow & Co., CPA's. A true and correct copy of the Affidavit of Craig K. Peterson dated January 12, 2006 is attached hereto as Exh. A.[1]

In both 1996 and 1997, Mr. Peterson and Mr. Leclerc specifically discussed the formation of Fun Depot, including the fact that Fun Depot was being set up as an S Corp. and that all of the income (or loss) attributed to Fun Depot would be reflected on Adib Nabhan's personal tax return. *See* Exh. A at ¶¶4-5. Additionally, in 1997 Mr. Peterson provided Mr. Leclerc with Fun Depot's general ledger for April 1996 through March 1997, its financial statements, its depreciation schedule, and its commercial note agreement with Centura (referred to collectively as "financial records"). A true and correct copy of the financial records that were provided to Mr. Leclerc from Mr. Peterson on August 4, 1997 is attached hereto as Exh. B. The financial records provided to Mr. Leclerc clearly show that Fun Depot was set up as an S Corp. and that Plaintiffs had no ownership interest in the company. Tellingly, the "Statement of Revenue & Expenses Income Tax Basis" (which is included with the financial records) states specifically that "[T]here is no liability for federal income taxes as corporation is currently classified as a small business corporation for federal income tax purposes." *See* Exh. B at 0005.[2] This document alone

---

[1] The Affidavit of Craig K. Peterson is hereby incorporated by reference.
[2] Notably, since Fun Depot was set up as an S Corp. any shareholder would have had to receive a Form K-1 from the company to report any gains or losses. Mr.

3

confirms that Mr. Leclerc knew that Fun Depot was set up as an S Corp. and that Adib Nabhan was its owner and sole shareholder. *See* Exh. A at ¶6.

Similarly, the financial records of Carefree that were prepared by Mr. Leclerc also disclose that "[D]uring 1996, <u>one</u> of [Carefree's] shareholders created a new corporation (Fun Depot, Inc.) that's purpose was to operate the Florida public recreation/amusement park, formerly operated by [Carefree] (emphasis added)". *See* Exh. B at 0026. Given this unambiguous disclosure, Mr. Leclerc and the Plaintiffs themselves were clearly on notice that Adib Nabhan was the sole owner of Fun Depot.

In addition to the numerous written disclosures provided to Plaintiffs and their accountant, in late 1996 or early 1997, Mr. Peterson had a conversation with Mr. Leclerc about back rent owed by Fun Depot to Carefree for the use of a building rented by Fun Depot from Carefree in Florida. *See* Exh. A at ¶8. As reflected in Carefree's Financial Statement for 1997, the rent receivable line under the heading "Assets" is an amount owed by Fun Depot to Carefree for back rent of the building in Lake Worth, Florida. *See* Exh. B at 0022. If Carefree and Fun Depot were commonly owned, as Plaintiffs claim they believed them to

---

Peterson <u>never</u> issued K-1s to anyone other than Adib Nabhan, and Mr. Leclerc never asked for copies of K-1s that would be attributable to any of the Plaintiffs in this litigation. *See* Exh. A at ¶¶5-6. It should also be noted that Mr. Leclerc prepared Amin Nabhan's taxes and, therefore, would know that he did not receive a K-1 or other distribution for Fun Depot.

be, there would be no reason for Fun Depot to negotiate the amount of past rent owed and no reason for Carefree to list back rent as an asset on its books. It is also telling that Carousel Lounge, Inc., another closely held corporation owned by the Nabhan family, does not pay Carefree rent. *See* Exh. B at 0022. Presumably, if Fun Depot were really considered by Plaintiffs to be a corporate affiliate, Fun Depot would have been afforded the same advantages that were afforded to Carousel Lounge, Inc., including a release from paying rent.

Moreover, Plaintiffs' erroneous claim that they believed that there was common ownership of Fun Depot is further belied by the fact that Carefree and Fun Depot's financial statements and tax returns were not consolidated and, indeed, legally could not have been. *See* Exh. A at ¶9. Carefree is set up as a C Corporation. *See id.* A C Corporation is ineligible to hold stock in a Subchapter S Corporation. *See id.* Moreover, the law absolutely prohibits a Subchapter S Corporation from filing a consolidated tax return with a C Corporation. *See id.* Given that, it is simply impossible for Carefree to have partly owned Fun Depot. *See id.* Moreover, and it goes without saying, Mr. Leclerc, Carefree and Amin Nabhan's accountant, knew that a C Corporation could not own stock in an Subchapter S Corporation and that the two corporations could not file consolidated tax returns. *See id.* As such, Plaintiffs could not have reasonably

5

believed that Carefree had an ownership interest in Fun Depot. *See id.*

Accordingly, as early as 1997, Plaintiffs were on inquiry notice of the facts giving rise to allegations contained in their Complaint. Plaintiffs knew or should have known in 1997 that they had no ownership interest in Fun Depot. Plaintiffs were aware of and signed tax returns reflecting that they had no ownership interest in Fun Depot and they approved Carefree's financial statements which clearly disclosed Fun Depot's corporate structure on which they rely to form the basis of this litigation which was not filed until 2003. Moreover, Plaintiffs were put on constructive notice as early as 1996, when Mr. Leclerc, Plaintiffs' accountant and agent, first became aware of Fun Depot's incorporation and its corporate structure.

## II. ARGUMENT

Plaintiffs' allegations of breach of fiduciary duty and conversion are wholly barred by the three-year statute of limitations applicable to these causes of action. *See, e.g., Corliss v. City of Fall River*, 397 F.Supp.2d 260, 262 (D. Mass. 2005) (the applicable statute of limitation for conversion claims is three years); *Kravetz v. United States Trust Co., UST*, 941 F.Supp. 1295, 1302 (D. Mass. 1996) (claims for breach of fiduciary duty are governed by a three-year statue of limitations); *Rousseau v. Diemer*, 24 F.Supp.2d 137, 142 (D.

6

Mass. 1998) (the statute of limitations for breach of fiduciary duty is three years). Despite the fact that in 1996 Plaintiffs were put on notice of the claims alleged in their Complaint, Plaintiffs did not actually file their Complaint for <u>seven years</u>, more than four years after the statute of limitations had run.[3]

Plaintiffs were first put on inquiry notice in 1997 when they signed tax returns and approved financial statements which spelled out that Adib Nabhan was the sole owner of Fun Depot. The financial records provided to Carefree's accountant plainly state that Fun Depot was incorporated by only "one" of Carefree's shareholders. *See* Exh. B at 0026. Similarly, if Amin and Jamile Nabhan had had an ownership interest in Fun Depot, they each would have received a Form K-1 to report any of that company's gains or losses. When no form was received, Plaintiffs were obligated to investigate and ask their accountant and tax preparers for the necessary Form K-1. Plaintiffs failed to do so.

The law is unequivocal that statutes of limitations begin to run when Plaintiffs "in the exercise of reasonable diligence discovered or <u>should have discovered</u> (emphasis added)" the allegations contained in their complaint. *See, e.g., Kravetz v. U.S. Trust Co.*, 941 F.Supp. 1295, 1309 (D. Mass. *1996*)

---

[3] Notably, although this action is not contractual in nature, even if it were, the six year statute of limitations applicable to contract claims would not save Plaintiffs here because their Complaint was filed seven years after they received notice. *See Barber v. Fox*, 36 Mass. App. Ct. 525, 529 (1994).

7

(plaintiffs' claims were untimely because having been on inquiry notice they failed to exercise reasonable diligence in investigating their claims); *Rousseau*, 24 F.Supp.2d at 142 (plaintiffs were on inquiry notice and therefore obligated to investigate a possible breach of fiduciary duty); *DeBruyne v. Equitable Life Assurance Society of the United States*, 920 F.2d 457, 466 n. 18 (7th Cir. 1990) ("[P]laintiffs cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put them on inquiry notice."); *Marlow v. Gold*, 1991 WL 107268, *9 (S.D.N.Y.1991) (plaintiff cannot avoid statute of limitations by alluding to "an assurance from his accountant that the accountant would read the relevant materials"). Similarly, under the Massachusetts "discovery rule," the statute of limitations begins to run when a plaintiff has "(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was." *See, e.g.*, *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 208 (1990); *Hendrickson v. Sears*, 365 Mass. 83, 83-84 (1974) (discovery rule first adopted in Massachusetts). In this instance, Plaintiffs either knew, or should have discovered, as early as 1997 that Fun Depot was incorporated as an S Corp. and that Adib Nabhan was the sole owner thereof. Because Plaintiffs failed to adequately review the relevant documents, and/or failed to reasonably investigate what was plainly spelled out in

8

the financial records, their Complaint was untimely filed and, as a result, Plaintiffs should now be precluded from entering any evidence or testimony concerning Defendants' alleged breach of fiduciary duty and conversion.

Moreover, Plaintiffs were put on constructive notice of the facts underlying the claims alleged in their complaint in 1996 when Fun Depot's accountant, Mr. Peterson, communicated all of the company's relevant financial information to Carefree's agent and accountant, Mr. Leclerc.  It is a well accepted doctrine of agency law that a principal is bound by the knowledge of his/her agent.  *See* Restatement (Second) of Agency, § 272 (1957); *In re Agent Orange Product Liability Litigation*, 597 F.Supp. 740, 796 (E.D.N.Y. 1984) ("Under principles of agency law, knowledge in the possession of an agent…who has a duty to transmit or receive the information is knowledge in the possession of the principal); *In re Porter*, 16 B.R. 229, 233 (Bankr. D. Mass. 1981) (knowledge of a creditor's agent of the filing of a bankruptcy petition will be imputed to that creditor); *Demoulas v. Demoulas*, 1995 WL 476763 (Mass.Super. 1995) (*citing First Nat. Bank of Cicero v. United States*, 653 F. Supp. 1312 (N.D. Ill. 1987) (whatever knowledge the agent acquires within the scope of his authority is imputed to the principal).  As Carefree's agent, Mr. Leclerc's knowledge is imputed to Plaintiffs.  *See Newhall v. Posner*, 2004 WL 413275 (D. Mass

2004) (plaintiff's claim was time-barred because he was bound by the knowledge of his accountant/agent). As such, in 1996, when Mr. Leclerc was notified that Fun Depot was set up as an S Corp. with an individual owner, that same knowledge was automatically imputed to Plaintiffs.[4] Because Plaintiffs were on constructive notice as early as 1996 and, yet, opted to do absolutely nothing for seven years, they should now be precluded from entering any evidence or testimony concerning Defendants' alleged breach of fiduciary duty and conversion since those claims are time-barred.

### III. CONCLUSION

For the foregoing reasons, this Court should enter an order excluding any evidence or argument concerning Carefree's

---

[4] Notably, the doctrine of fraudulent concealment is inapplicable in this case. The doctrine of fraudulent concealment, when applicable, can toll the statute of limitations in an action "where the party injured remains in ignorance of it without any fault or want of diligence or care on his part ...". See, e.g., Greenfield v. Shuck, 856 F.Supp. 705, 710 (D. Mass. 1994) (citing Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 127 (1987). In this case, there is no evidence whatsoever that Defendant attempted to purposefully conceal Fun Depot's financial records or corporate structure. In fact the opposite is true. Instead of concealing information, Defendant's accountant provided comprehensive financial records to Plaintiffs' accountant and spoke regularly about Fun Depot's corporate structure. See Exh. A at ¶3.

10

allegations of breach of fiduciary duty and conversion and dismiss these claims in their entirety.

>ADIB NABHAN
>
>By his attorney,
>
>/s/ Ian Crawford
>Ian Crawford (BBO#544475)
>Todd & Weld LLP
>28 State Street
>Boston, MA  02109
>(617) 720-2626
>icrawford@toddweld.com
>
>Doyle C. Valley, Esquire
>Morrison Mahoney LLP
>250 Summer Street
>Boston, MA  02210
>(617) 737-8846
>dvalley@morrisonmahoney.com

DATED:  January 13, 2006


### LOCAL RULE 7.1(A)(2) CERTIFICATE

Undersigned counsel hereby certifies that he has conferred with opposing counsel in an effort to resolve or narrow the issues raised by this motion and was unable to resolve them.

>/s/ Ian Crawford
>Ian Crawford

### CERTIFICATE OF SERVICE

I, Ian Crawford, hereby certify that Defendant's Motion *In Limine* to Exclude Evidence Concerning Plaintiffs' Claims of Breach of Fiduciary Duty and Conversion filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 13, 2006.

>/s/ Ian Crawford
>Ian Crawford