**A**



# NIXON PEABODY LLP
### ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
Fax: (617) 345-1300

**Robert L. Kirby, Jr.**
Direct Dial: (617) 345-6134
Direct Fax: (866) 382-6125
E-Mail: rkirby@nixonpeabody.com



March 22, 2005

**HAND DELIVERY**

Doyle C. Valley, Esq.
Morrison, Mahoney & Miller, LLP
250 Summer Street
Boston, MA 02210-1181

   Re: Carefree Park Corporation v. Adib Nabhan
     U.S. District Court Civil Action No. 03-CV-12426 RCL

Dear Doyle:

  Enclosed are plaintiff's expert witness reports for Richard Maloney and David Wudyka. Thanks again for your generous extensions of time. We will, of course, reciprocate.

  In my view, the time is ripe for us to consider mediation. Perhaps a date in April? Please let me know.

       Sincerely,

       Robert L. Kirby, Jr.

RLK:dms
Enclosures

cc: Mr. Amin Nabhan

BOS1476443 1

031748/300002

ALBANY, NY · BOSTON, MA · BUFFALO, NY · GARDEN CITY, NY · HARTFORD, CT · MANCHESTER, NH · McLEAN, VA
NEW YORK, NY · ORANGE COUNTY, CA · PHILADELPHIA, PA · PROVIDENCE, RI · ROCHESTER, NY · SAN FRANCISCO, CA · WASHINGTON, DC

# B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CAREFREE PARK CORPORATION,          )
AMIN NABHAN and JAMILE NABHAN,      )
            Plaintiffs,             )
                                    )          CIVIL ACTION NO: 2003-CV-12426 RCL
v                                   )
                                    )
                                    )
ADIB NABHAN,                        )
            Defendant               )

### JOINT MOTION TO CONTINUE PRETRIAL CONFERENCE

The parties in the above-referenced matter respectfully move this Court for an order continuing the Pretrial Conference, currently scheduled for November 17, 2005, and in support thereof, state as follows:

This action involves a dispute among family members regarding several business entities located in Florida (where defendant Adib Nabhan resides) and in Massachusetts (where defendants Amin Nabhan and Jamile Nabhan reside) in which the individual defendants have ownership interests

Plaintiffs, Carefree Park Corporation, Amin Nabhan and Jamile Nabhan, allege that defendant Adib Nabhan (Amin's and Jamile's brother) usurped a corporate opportunity and misappropriated assets of Carefree Park Corporation by incorporating Fun Depot, Inc, which is incorporated and located in Florida   Plaintiffs claim that, without their knowledge, defendant organized Fun Depot, Inc. with himself as the sole shareholder   Plaintiffs seek to force defendant to return to them the income they claim should have been shared with them

Defendant denies that he usurped an opportunity of Carefree Park Corporation and asserts that the parties always understood that Fun Depot, Inc. would be the business vehicle for defendant to support his family and that the Massachusetts assets and businesses would be

972471

available to support the other family members who wanted or required such support. Defendant has asserted counterclaims against plaintiffs related primarily to the operation of property and businesses in Massachusetts in which defendant has a beneficial interest. Defendant alleges that plaintiffs, primarily through defendant Amin Nabhan, have operated the Massachusetts properties for their sole benefit, excluding defendant. Plaintiffs deny the allegations of the counterclaim.

The parties have exchanged documents regarding the various business entities in which the parties have varying ownership interests, including:

1.      Carefree Park Corp.;

2.      Fun Depot, Inc.;

3.      Adele Realty Trust;

4.      Habib Nabhan Nominee Trust;

5.      Adele Nabhan Nominee Trust; and

6.      Carousel Lounge, Inc.

The parties have also engaged in third-party discovery, obtaining by subpoena records from the accountants of some of the entities set forth above. The documents heretofore exchanged include financial statements, tax returns, check registers and bank statements which were generated before fiscal year end 2003.

The parties seek additional time to obtain and complete the exchange of documents relevant to the current financial status and value of the entities noted above, as well as documents regarding the financial status of the individual defendants. Such documents include financial statements, tax returns, check registers and bank statements which have been generated since fiscal year end 2003.

2

The parties believe that continuing the pretrial conference with permit them to complete the exchange of documents, allow them to provide a more practical and complete pretrial memorandum, facilitate the determination of which exhibits will be introduced with or without objection and put them in a better position to determine whether continuing settlement discussions will be productive and, if not, narrow the issues to be tried

Wherefore, the parties jointly request that the pretrial conference be rescheduled from November 17, 2005 to a time which is convenient to the Court and the parties.

Respectfully submitted,

| | |
|---|---|
| The Plaintiffs, | The Defendant, |
| CAREFREE PARK CORPORATION | ADIB NABHAN |
| AMIN NABHAN and JAMILE NABHAN, | By his attorneys, |
| By their attorneys, | |

| | |
|---|---|
| /s/ Gordon M. Jones, III | /s/ Doyle C. Valley |
| Gordon M. Jones, III | Doyle C. Valley |
| BBO No. 549016 | BBO No. 638578 |
| Nixon Peabody LLP | Morrison Mahoney LLP |
| 101 Federal Street | 250 Summer Street |
| Boston, MA 02110 | Boston, MA 02210 |
| (617) 345-1000 | (617) 439-7500 |

# C

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAREFREE PARK CORPORATION, AMIN NABHAN and JAMILE NABHAN,<br><br>    Plaintiffs,<br><br>        v.<br><br>ADIB NABHAN,<br><br>        Defendant. | Civil Action No.  2003-CV-12426 RCL |

**JOINT PRETRIAL MEMORANDUM**

In accordance with the Court's Order dated August 23, 2005, plaintiffs Carefree Park

Corporation ("Carefree Park"), Amin Nabhan ("Amin") and Jamile Nabhan ("Jamile")

(collectively "Plaintiffs"), and defendant Adib Nabhan ("Adib") submit this Pretrial

Memorandum in advance of the Pretrial Conference in this matter to be held November 17,

2005.

**I.    Names, Addresses and Telephone Numbers of Trial Counsel.**

Plaintiffs:

Robert L. Kirby, Jr. (BBO #550538)
Gordon M. Jones, III (BBO #549016)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

Defendant:

Doyle C. Valley, BBO #638578
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

Ian Crawford, BBO#544475
Todd & Weld LLP
28 State Street
Boston, MA  02109
(617) 720-2626

## II.     Concise Statement of Position.

Plaintiffs:

This is a family dispute among the owners of Carefree Park Corporation.  Carefree Park

is owned one-third each by brothers Amin and Adib Nabhan ("Adib") and their sister Jamile

Nabhan.[1]  Carefree Park is in the real estate and arcade/game room business in Salisbury,

Massachusetts and Lake Worth, Florida.

Carefree Park, Amin and Jamile allege that Adib diverted and took for himself a

corporate opportunity, Fun Depot, Inc. ("Fun Depot"), that rightly belonged to Carefree Park.

The central dispute is this: Adib maintains that his brother and sister agreed that he (Adib) could

take Fun Depot for himself; Amin and Jamile say that there was no such agreement.

Plaintiffs have asserted claims for breach of fiduciary duty and conversion and seek to

recover for the damages that they have suffered as a result of Adib's actions.  Plaintiffs have also

asked the Court to order that Adib provide an accounting with regard to Fun Depot's financial

affairs.

---

[1]     For convenience sake, we refer to the family members by their first names.

Defendant:

Adib denies that he usurped an opportunity of Carefree or diverted corporate funds. Amin and Jamile were aware that Fun Depot, Inc. ("FDI") had been created and that Adib was the sole shareholder. The parties always understood that Fun Depot would be the business vehicle for Adib to support his family and that the Massachusetts assets and businesses would be available to support the other family members who wanted or required such support. Adib operated the Florida assets autonomously, as Amin did with the Massachusetts assets.

Adib has asserted counterclaims against Carefree, Amin and Jamile for breach of fiduciary duty, conversion, accounting, quantum meruit and unjust enrichment. Adib alleges that Amin and Jamile misappropriated and mismanaged assets of Carefree. Adib also alleges that Amin misappropriated and mismanaged assets owned by the Adele Realty Trust, in which Amin and Adib are the sole trustees and beneficiaries. Plaintiffs, primarily through Amin, have operated the Massachusetts properties for their sole benefit, excluding Adib. Adib is seeking an accounting and a court-ordered buyout of Adib's interest in Carefree and the Adele Realty Trust.

**III.    Claims Or Defenses That Will Be Waived or Otherwise Not Pursued At Trial.**

None.

**IV.    Statement of Uncontested Facts.**

1.    Carefree Park was formed in 1971 as a C corporation. Initially, the shares of Carefree Park were owned one-fifth each by the four Nabhan brothers, Amin, Adib, Louis and George and Jamile. Since 1995, Carefree Park has been owned one-third each by Amin, Adib and Jamile.[2] Until November 18, 2003, each of the shareholders were directors. On that date, Amin and Jamile voted to remove Adib as a director.

---

[2]    A sixth sibling, Faye, has never had an ownership stake in the company.

2.     Carefree Park owns real estate and operates an arcade business in Salisbury, Massachusetts. Amin has, at all relevant times, been the chief executive of the company.

3.     In the late 1970s, the family determined to expand operations. Starting in 1978, the family commenced operating an amusement park business in New London, Connecticut. A new corporation, Nabhan Enterprises, was formed, and Adib moved to Connecticut to head up the operations there. Nabhan Enterprises was owned by the four Nabhan brothers.

4.     In 1984, Carefree Park acquired a parcel of real estate in Lake Worth, Florida. [3] At that time the only improvement on the real estate was a vacant warehouse.

5.     In 1988, when the property faced foreclosure, Adib moved to Florida to manage the Lake Worth property. Since that time, Adib has managed Carefree's Lake Worth property.

6.     Adib began operating a small arcade game room, called Fun Depot, in a portion of the building. The remainder of the building was leased to other tenants.

7.     On February 14, 1996, Fun Depot was incorporated, becoming Fund Depot, Inc. ("FDI"), with Adib as its sole shareholder.

8.     FDI was incorporated as a Sub-Chapter S corporation.

9.     In 1996, construction on a 14,000 sq. ft. building for FDI's operations on the Lake Worth property was completed. In 2000, construction of a 16,000 sq. ft. addition to the building was completed.

10.     Since Adib moved to Florida in 1988, he has managed the Lake Worth property, collecting rent and operating income, negotiating with tenants and prospective tenants, overseeing payment of operating expenses, physically maintaining the property and overseeing repairs and build-outs.

---

[3]     Lake Worth is between Boca Raton and Palm Beach, on Florida's east coast.

11.    The Adele Realty Trust was created on February 12, 1991. The sole trustees and beneficiaries of the Adele Realty Trust are Adib and Amin.

12.    The Adele Realty Trust owns property at 6 Ocean Front S. in Salisbury (where Carefree's arcade operates, property at 20 Ocean Front S. in Salisbury (where Carousel Lounge operates a restaurant/lounge) and a portion of a parking lot in Salisbury.

13.    The Habib Nabhan Nominee Trust and the Mary Nabhan Nominee Trust were created October 3, 1995. The trustees of these trusts are Adib and Amin. The beneficiaries of the trust are Adib, Amin, Jamile and their sister Faye Robertson.

14.    The Habib Nabhan Nominee Trust and the Mary Nabhan Nominee Trust own a portion of the parking Lot in Salisbury, together with the Adele Realty Trust.

## V.    Contested Issues of Fact.

Plaintiffs:

1.    The principal issue in dispute is whether Carefree Park, Amin and Jamile agreed that Adib could be the sole owner of Fun Depot. According to Adib, his siblings agreed (i) that Adib would own 100% of the new corporation (Fun Depot), (ii) that he could take ownership of all of Carefree Park's equipment in Florida, free of charge, and (iii) that he could pay nominal rent to Carefree Park, basically in an amount sufficient only to enable Carefree Park to make up any shortfall it experienced in covering its carrying costs for the property, after accounting for the rents paid by other tenants on the site. Amin and Jamile maintain that there was never any such agreement and that, instead, it was agreed that a new corporation would be formed for the benefit of the entire family.

2.    Another contested issue of fact concerns the extent to which Adib and Fun Depot used assets belonging to Carefree Park, including Carefree Park's capacity to borrow money, to

develop and operate Fun Depot prior to and after its incorporation as a separate corporation in 1996, and whether Amin and Jamile were aware of how much money was being used for the sole benefit of Adib and his family.

3.     The parties dispute the extent of Fun Depot's profitability prior to and after its incorporation as a separate corporation and whether the money that Adib has taken out of Fun Depot in salary and other benefits has been excessive in comparison to the standards for businesses that are similar in size and nature.

Defendant:

1.     Whether Amin and Jamile were aware that Adib had incorporated Fun Depot as an S corporation with himself as the sole shareholder and assented to that arrangement.

2.     Whether Amin and Jamile misappropriated and/or mismanaged funds belonging to Carefree and the amount of funds so misappropriated. Rental income reported by Carefree from 1995 – 2003 for the apartment building it owns does not account for even partial occupancy over those years.

Carefree made payments on loans for properties it does not own, for the benefit of Amin and Jamile. These properties include property owned by Amin and the Habib Realty Trust (which is the home of Jamile and George) and Amin's primary residence in Massachusetts. Amin used a portion of a loan to Carefree to pay off a prior loan and deposited approximately $200,000 into his personal savings account.

3.     Whether Amin misappropriated and/or mismanaged funds belonging to the Adele Realty Trust. In 1998, the Adele Realty Trust received $168,000 from Harvey's Casino and Resorts as payment for Harvey's option to purchase land owned by the Trust. Amin paid $107,190 in property taxes, opened an investment account with $35,382 of the funds and used

the remainder ($25,428) to pay his son's college tuition. Amin reported on his 2001 individual

tax return $41,610.00 of the funds as "miscellaneous income Harvey's Casino." The investment

account consisted of investments in three technology stocks and a Nasdaq index fund, the share

values of which, as of December 31, 2003, had decreased to $11,317.35.

Amin misappropriated other assets of the Adele Realty Trust. Amin shares the proceeds

from the parking lot owned by the Trust with Jamile and deposits his portion into his personal

bank account. Adib has never been provided with funds or an accounting of the proceeds from

the parking lot.

Amin has mismanaged the assets of the Adele Realty Trust, as he has failed to seek rent

from tenants of property owned by the Trust.

## VI.    Jurisdictional Questions.

None

## VII.    Questions Raised By Pending Motions.

None.

## VIII.    Issues of Law.

Plaintiffs:

In support of their legal position, Plaintiffs rely on the lengthy line of Massachusetts

cases that hold that a stockholder and director of a closely held corporation such as Carefree Park

owes a fiduciary duty of utmost good faith and loyalty both to the corporation and to his or her

fellow stockholders and that among the fiduciary obligations is the requirement that a

stockholder/director such as Adib cannot take for his own benefit opportunities that the

corporation could exploit for itself. Donohue v. Rodd Electrotype Co. of New England, Inc.,

367 Mass. 578 (1975); Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501 (1997).

Defendant:

In support of his legal position with respect to Amin's and Jamile's actions as to Carefree

Park Corp., Adib relies on Massachusetts cases holding that stockholders in a close corporation

owe one another substantially the same fiduciary duty in the operation of the enterprise that

partners owe to one another, a duty of utmost good faith and loyalty. Stockholders in close

corporations must discharge their management and stockholder responsibilities in conformity

with this strict good faith standard. Courts will deny efforts by majority stockholders to oppress,

disadvantage or freeze out minority stockholders, such as efforts to deprive minority

stockholders of corporate offices and of employment with the corporation. Wilkes v. Springside

Nursing Home, Inc., 370 Mass. 842, 848-849 (1976); Donohue v. Rodd Electrotype Co. of New

England, Inc., 367 Mass. 578 (1975).

In support of his legal position with respect to Amin's actions as to the Adele Realty

Trust, Adib relies on Massachusetts cases holding that a trustee must exercise good faith and act

solely in the interests of the beneficiaries in administering the trust. There can be no divided

loyalty. This principle has always been rigorously enforced. Personal gains accruing to a trustee

from the transfer of trust property to himself must be accounted for by him even though he was

acting in good faith, unless the beneficiaries knew the nature and effect of the transfer and

consented to its being made. Boston Safe Deposit & Trust Co. v. Lewis, 317 Mass. 137, 140-

141 (1944).

In support of its legal position regarding a buy-out of Adib's interest in Carefree and the

Adele Realty Trust, Adib relies on Massachusetts law establishing that an appropriate measure of

damages for improperly freezing out a minority shareholder is the minority shareholder's

proportionate share of the total fair value of the business. Keating v. Keating, 17 Mass. Law.

Rptr. 241, 251, *available in* 2003 Mass. Super. LEXIS 472 (Oct. 3, 2003 Chernoff, J.); <u>see also</u>

<u>Demoulas v. Demoulas</u>, 428 Mass. 555, 580 (1998). Thus, the only fair and practical remedy for

Adib in this breach of fiduciary duty case by a majority shareholder is a court-ordered buy-out of

his minority interest shares in Carefree by the majority shareholders and a court-ordered buy-out

of his interest in the Adele Realty Trust at the fair market value.

### IX.    Requested Amendments To Pleadings.

None.

### X.    Additional Matters To Aid In The Disposition Of The Action.

Plaintiffs are not aware of any such matters at this time.

### XI.    Estimated Length Of Trial.

The parties estimate that it will take six to eight days to complete the trial of this case.

### XII.    Witnesses Who Will Testify At Trial.

Plaintiffs:

Amin Nabhan - fact witness.

Jamile Nabhan - fact witness.

Adib Nabhan - fact witness.

Faye Robertson - fact witness.

Edward Nabhan - fact witness

Adel Nabhan - fact witness

Richard J. Maloney, CPA-expert witness as to the amount of money that Carefree park

would have earned as the rightful owner of Fun Depot from 1996 to the present, if there had been

no misappropriation of Carefree Park's corporate opportunity and assets. Mr. Maloney has an

M.S. in Accounting from the School of Business of the State University of New York at Albany

(1978) and a J.D. from Albany Law School of Union University (1975) and has testified in numerous cases involving business valuation, lost profits and lost income. Mr. Maloney prepared an expert report that has been provided to the defendant.

David Wudyka-expert witness as to the appropriate level of compensation for the position that Adib holds at Fun Depot, as suggested by marketplace surveys. Mr. Wudyka has an MBA in Organization and Management from Syracuse University (1973) and a B.S. in Industrial Engineering from the University of Rhode Island (1968) and is certified as a Professional in Human Resource Management (1999). For the past 17 years, Mr. Wudyka has been employed as an independent Human Resources Consultant specializing in compensation, serving primarily small to mid-size companies with no in-house human resources department. Mr. Wudyka prepared an expert report that has been provided to the defendant.

Defendant:

Amin Nabhan - fact witness.

Jamile Nabhan - fact witness.

Adib Nabhan - fact witness.

Faye Robertson - fact witness.

Edward Nabhan - fact witness.

Adel Nabhan - fact witness.

Craig Peterson – fact witness.

John G. Petersen – expert witness. Mr. Petersen is a partner of Petersen/LaChance Realty Advisors, a real estate appraisal and consulting firm in Danvers, Massachusetts. Mr. Petersen's real estate appraisal and consulting experience exceeds 20 years and he has been awarded both the MAI and SRA designations. Mr. Petersen is expected to testify regarding the

fair market value of the Massachusetts properties owned by Carefree Park, the Adele Realty Trust, the Habib Nabhan Nominee Trust and the Mary Nabhan Nominee Trust.

Richard E. Mastrocola – expert witness. Mr. Mastrocola is a CPA and a partner and president of Tonneson & Company CPA's P.C. in Wakefield, Massachusetts. Mr. Mastrocola is expected to testify regarding Carefree's accounting practices, the books and records of Carefree, Carousel Lounge and the Adele Realty Trust and the amounts attributable to Amin's and Jamile's misappropriation and mismanagement of those entities.

The parties reserve their rights to supplement their lists of witnesses.

**XIII. Exhibits That The Parties Will Offer As Part Of Their Affirmative Case.**

Plaintiffs:

1. Series of invoices from Brady Distributing Company to Carefree Park bearing Bates stamp numbers CPC 00507-00538, marked as Exhibit 2 to the deposition of Adib Nabhan taken January 25, 2005 ("Adib's Deposition").

2. Application for Employer Identification Number for Fun Depot, Inc. bearing Bates stamp numbers P&P 000004-000011, marked as Exhibit 3 to Adib's Deposition.

3. Handwritten series of numbers, marked as Exhibit 4 to Adib's Deposition.

4. Copies of checks bearing Bates stamp numbers CPC 04407-04413, marked as Exhibit 5 to Adib's Deposition.

5. Check Register dated 2/21/98 bearing Bates stamp numbers CPC 02535-02539 (out of order), marked as Exhibit 6 to Adib's Deposition.

6. Document headed "Carefree Park Corp., Florida Operations, Year End 1997," bearing Bates stamp number CPC 02534, marked as Exhibit 7 to Adib's Deposition.

7.    Financial Statements Of Fun Depot, Inc. For The Years Ended December 31, 1996 to 2003, bearing Bates stamp numbers P&P 000035-000113, marked collectively as Exhibit 8 to Adib's Deposition.

8.    Check Register dated 2/21/99 bearing Bates stamp numbers CPC 02530-02533, marked as Exhibit 9 to Adib's Deposition.

9.    Republic Security Bank Promissory Note dated November 22, 1996 bearing Bates stamp numbers WA 00281-00285, marked as Exhibit 10 to Adib's Deposition.

10.    Letter to Adib from Daniel N. Benson of Republic Security Bank dated June 10, 1996 bearing Bates stamp numbers Fun Depot 000004-000005, marked as Exhibit 11 to Adib's Deposition.

11.    Check Register dated 2/3/00 bearing Bates stamp numbers CPC 02450-02456, marked as Exhibit 12 to Adib's Deposition.

12.    Profit & Loss Statement, 1/1/99 through 12/31/99, bearing Bates stamp numbers CPC 02457-02458, marked as Exhibit 13 at Adib's Deposition.

13.    Document headed "FLA Checking Account" dated 2/4/1996 bearing Bates stamp numbers CPC 02691-02736, marked as Exhibit 14 to Adib's Deposition.

14.    Document headed "Carefree Park Corp. Equipment Listing For 1995" bearing Bates stamp number CPC 02629, marked as Exhibit 15 to Adib's Deposition.

15.    Document headed "General Ledger Activity, Period 01/01/02 to 12/31/02" with attached check payable to the order of George Nabhan bearing Bates stamp numbers Fun Depot 0033858 and Fun Depot 000410, marked as Exhibit 16 to Adib's Deposition.

16.    Fun Depot, Inc. Statement of Income & Expenses for the years 2000 to 2003, bearing Bates stamp numbers P&P 000012-000015, marked as Exhibit 17 to Adib's Deposition.

17.    Fun Depot, Inc. tax returns for the years 1996 to 2003 bearing Bates stamp

numbers Fun Depot 000016-000093, marked collectively as Exhibit 19 to Adib's Deposition.

18.    Fun Depot, Inc. Payroll Journal, 1998-2003.

19.    Workpapers of Peterson & Peterson, PC.

20.    Fun Depot, Inc. Checking Account Activity at First Union Bank

Defendant:

1.    Declaration of Trust Re: Adele Realty Trust.

2.    Trust Agreement entered into between Habib Nabhan and Amin Nabhan and Adib

Nabhan

3.    Individual Tax returns of Amin and Sarah Nabhan

4.    Corporate documents of Carefree Park Corporation, including, but not limited to

Articles of Organization, Bylaws, corporate resolutions and minutes of meetings

5.    Bigelow and Company Financial Statements and work papers, received pursuant

to subpoena.

6.    Carefree Park Corporation tax returns

7.    Carefree Park Corporation check registers

8.    Carousel Lounge Corporation tax returns

9.    Carousel Lounge Corporation check registers

10.    Harvey's Casino Resorts check in the amount of $168,800.00 made payable to

Adele Realty Trust, Amin and Adib Nabhan

11.    Checking account, money market account and loan statements for Shawmut Bank,

Fleet Bank, Sovereign Bank, Newburyport Five Cents Savings Bank and First & Ocean National

Bank.

The parties reserve their rights to supplement their lists of exhibits.


ADIB NABHAN,                                    CAREFREE PARK CORPORATION

By his attorney,                                By its attorneys,


/s/ *Doyle C. Valley*                           /s/ *Gordon M. Jones, III*
Doyle C. Valley (BBO #638578)                   Robert L. Kirby, Jr. (BBO #550538)
Morrison, Mahoney & Miller, LLP                 Gordon M. Jones, III (BBO # 549016)
250 Summer Street                               Nixon Peabody LLP
Boston, MA  02210                               100 Summer Street
(617) 439-7500                                  Boston, MA  02110-2131
                                                (617) 345-1000
Dated:  November 14, 2005


### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by hand on November 14, 2005.


/s/ G. Jones
Gordon M. Jones, III

14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CAREFREE PARK CORPORATION, AMIN
NABHAN and JAMILE NABHAN,
                    Plaintiffs,

            v.                                          Civil Action No.  2003-CV-12426 RCL

ADIB NABHAN,
                    Defendant.

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Plaintiffs Carefree Park Corporation ("Carefree Park"), Amin Nabhan ("Amin") and

Jamile Nabhan ("Jamile") (collectively "Plaintiffs") respectfully request that the Court provide

the following instructions to the jury.  Plaintiffs reserve the right to supplement or amend these

instructions based on the testimony adduced at trial.

**Fiduciary duties**

1.    In Count One of their First Amended Complaint, Plaintiffs allege that defendant

Adib Nabhan ("Adib") breached his fiduciary duties as a director and shareholder of Carefree

Park by diverting to himself a corporate opportunity that belonged to Carefree Park and by

engaging in self-dealing.  I instruct you that as a director and shareholder of Carefree Park, Adib

stood in a fiduciary relationship toward the corporation and owed Carefree Park and his fellow

shareholders both a duty of care and, more significantly for this case, a paramount duty of

loyalty. In accordance with his fiduciary duty, Adib was bound to act with absolute fidelity and

to place his duties to the corporation above every other financial or business obligation.  See

Durfee v. Durfee & Canning, Inc., 323 Mass. 187, 196 (1948); Demoulas v. Demoulas Super

Markets, 424 Mass. 501, 528 (1997); Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 410-

411 (1937).

**Burden of Proof**

2.    When, as in this case, the plaintiff alleges breaches of fiduciary duty based on a

misappropriation of corporate opportunity and self-dealing, the burden is on the fiduciary, in this

case Adib, who acquires a corporate opportunity or who engages in self-dealing, to prove that his

actions were intrinsically fair, and did not result in harm to the corporation or to his fellow

shareholders. See Demoulas, 424 Mass. at 529-530; Meehan v. Shaughnessy, 404 Mass. 419,

441 (1989); Starr v. Fordham, 420 Mass. 178, 183 (1995).

**Director's Duty of loyalty**

3.    This case involves the duty of loyalty because Plaintiffs have alleged that the

defendant was a director and shareholder of Carefree Park who placed his own self-interest

ahead of the interest of the corporation. I instruct you that, as a director standing in a fiduciary

relationship to Carefree Park, Adib's paramount duty was to the corporation, and his personal

pecuniary interests were subordinate to that duty. Corporate officers and directors are not

permitted to use their position of trust and confidence to further their private interests.  A director

is charged with knowledge of his fiduciary duties and must act in accordance with those duties.

See Durfee, 323 Mass. at 196- 198; Donahue v. Rodd Electrotype Co., Inc., 367 Mass. 578, 593

(1975).

**Shareholder's Duty of Loyalty**

4.    I instruct you that, in addition to owing a duty of loyalty as a director of Carefree

Park, Adib, in his capacity as a shareholder, also owed a duty of loyalty to both Carefree Park

and to Amin and Jamile, his fellow shareholders in a close corporation.  A close corporation is

one in which there is a small number of shareholder and the shareholders participate in the

running of the business. The shareholders in such a corporation owe each other a fiduciary duty to discharge their management and shareholder responsibilities in conformity with a strict good faith standard. They may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation. This strict duty of loyalty is extended to all shareholders in close corporations, including minority shareholders who exercise some form of control over the corporation to the detriment of the majority shareholders. See Donahue, 367 Mass. at 593; Blank v. Chelmsford 0b/Gyn, P.C., 420 Mass. 404, 408 (1995); Zimmerman v. Bogoff, 402 Mass. 650, 657 (1988); Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 848 (1976)

**Corporate Opportunity**

5.    Plaintiffs allege that Adib violated his fiduciary duty by taking the opportunity that Carefree Park had to develop the business it had established in Florida and misappropriating the profits and the assets of that business for his own exclusive use. I instruct you that a person such as Adib who owes a fiduciary duty to a corporation is prohibited from taking, for personal benefit, an opportunity or advantage that belongs to the corporation. The corporate opportunity doctrine requires a corporate fiduciary to refrain from placing himself or herself in circumstances which create a conflict between self-interest and integrity. Massachusetts courts have established a fundamental fairness test to determine whether a proposed transaction constitutes a corporate opportunity. See Demoulas, 424 Mass at 529; Durfee, 323 Mass. at 204-205.

6.    Applying this fundamental fairness standard to the so-called Fun Depot opportunity, you may consider whether the opportunity in Florida had a practical advantage to Carefree Park, whether the opportunity was related to or in the same general business area of the business activity of the corporation and whether Carefree Park had any interest in or would

receive any benefit from the opportunity. Other factors to be considered are whether the

exploitation of the Florida opportunity would have been in the best interest of Carefree Park the

corporation and whether Carefree Park had the financial resources to exploit it. If the Florida

opportunity meets those standards, the opportunity was a corporate asset and the diversion of the

opportunity by Adib for his own benefit was a violation of his fiduciary duty. See Wartski v.

Bedford, 926 F.2d 11, 18 (1st Cir. 1991); Borden v. Sinskey, 530 F.2d 478, 490 (3d. Cir. 1976);

Tracy v. Curtis, 10 Mass. App. Ct. 10, 17-18 (1980).

      7.      To meet a fiduciary's duty of loyalty, a director or officer who wishes to take

advantage of a corporate opportunity or engage in self-dealing must first disclose all material

details of the venture to the corporation, and then receive the assent of disinterested directors or

shareholders, or otherwise prove that the decision is fair to the corporation. Otherwise, the

officer or director acts in violation of his fiduciary duties, and whatever gain or advantage that he

acquires may be held for the benefit of the corporation, so as to deny him any benefit or profit.

To insure fairness to the corporation, opportunities must be presented to the corporation without

regard to possible impediments, and material facts must be fully disclosed, so that the

corporation may consider whether and how to address these obstacles." See Demoulas, 424

Mass. at 532-533.

**Self-dealing/Diversion of corporate assets**

      8.      Plaintiffs also allege that Adib engaged in self-dealing by transferring assets from

Carefree Park to his new business in Florida and by using Carefree Park's assets to maximize the

value of his investment in the new business. Plaintiffs further allege that Adib engaged in self-

dealing by taking excessive compensation for himself and his family from Fun Depot, Inc.,

which was a misappropriated corporate opportunity of Carefree Park and whose assets, including

the amount received as excessive compensation, properly belonged to Carefree Park. I instruct

you that improper self-dealing with a corporation, also known as diversion of corporate assets,

involves transactions in which a corporate fiduciary contracts with his corporation, placing

himself on both sides of the agreement and does not act in good faith and/or the transaction is not

fair to the corporation. See Dynan v. Fritz, 400 Mass. 230, 242-243 n. 18 (1987); Winchell v.

Plywood Corp., 324 Mass. 171, 177 (1949).

**Conversion**

9.      Plaintiffs allege that Adib improperly converted assets belonging to Carefree Park

by using those assets to create and develop a business that he claims is owned entirely by

members of his immediate family. I instruct you that one who intentionally or wrongfully

exercises acts of ownership, control or dominion over personal property to which he has no right

of possession at the time is liable for the tort of conversion. See Abington National Bank v.

Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507 (1985).

**Damages**

10.     If you find that Adib breached his fiduciary duty by diverting the corporate

opportunity in Florida and engaging in self-dealing, you must determine the damages that Adib

must pay to the Plaintiffs. In Massachusetts, the measure of damages in a case where a corporate

fiduciary obtains a gain or advantage through a violation of his duty of loyalty is the amount of

the gain. The object of the damages award is to deny any profit to the wrongdoer and to prevent

his unjust enrichment. See Berish v. Bornstein, 437 Mass. 252, 271 (2002); Demoulas, 424

Mass. at 556.

**Statute of Limitations**

11.     Adib claims as one of his defenses in this action that the events giving rise to the

Plaintiffs' claims took place more than three years prior to the date the complaint in this action was filed and that therefore the action is barred by the three-year Statute of Limitations applicable to tort claims. I instruct you that the statute of limitations defense in this case is governed by the repudiation of trust doctrine, which holds that in cases of alleged breaches of fiduciary duty by corporate officers and directors, a cause of action does not accrue until the trustee repudiates the trust and the beneficiary has actual knowledge of that repudiation.

12.    Even in a non-fiduciary relationship, when a defendant fraudulently conceals a cause of action from the knowledge of a plaintiff, the statute of limitations period does not begin to run until the plaintiff's discovery of the cause of action. Where a fiduciary relationship exists, as it does here, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent concealment sufficient to delay the running of the statute of limitations. Adib must show that the Plaintiffs had actual knowledge of the facts that give rise to their cause of action; the Plaintiffs were not required to conduct an independent investigation. Under the repudiation of trust doctrine, even if you find the facts on which the cause of action are based were not concealed from, or undisclosed to, the Plaintiffs, the statute of limitations period did not begin to run unless and until you find (i) that Adib repudiated his fiduciary duty to Carefree Park and to Amin and Jamile, and (ii) that Adib communicated this repudiation to the Plaintiffs. See Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 518-520 (1997).

CAREFREE PARK CORPORATION,
AMIN NABHAN and JAMILE NABHAN,

By their attorneys,


/s/Gordon M. Jones, III
Robert L. Kirby, Jr. (BBO #550538)
Gordon M. Jones, III (BBO # 549016)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
Dated:  November 14, 2005          (617) 345-1000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by hand on November 14, 2005.


/s/ Gordon M. Jones, III
Gordon M. Jones, III

# D

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

IAN CRAWFORD
Email: icrawford@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

January 12, 2006

BY HAND
Robert L. Kirby, Jr., Esquire
Nixon Peabody, LLP
100 Summer Street
Boston, MA  02110

Re:  Carefree Park Corporation v. Adib Nabhan
     U.S.D.C. Civil Action No. 03-12426-RCL (D. Mass.)

Dear Bob:

In lieu of supplementing the defendant's answers to interrogatories, enclosed are copies of four appraisal reports relating to properties in Salisbury, Massachusetts. As I indicated to you in my earlier letters, the author of these reports, John Petersen, is available for a deposition at any time before the scheduled start of the trial of this matter. Please let me know if you are interested in conducting a deposition of Mr. Petersen and what dates would be convenient.

While I received your letter yesterday concerning your anticipated motions in limine, there can be absolutely no prejudice to your clients by the production of these expert reports. We have over one month before the trial is scheduled to start, and I have always offered to make Mr. Petersen available to you for a deposition. Moreover, we disclosed to you over a month ago that we intended to proffer testimony from an expert concerning the value of the Salisbury properties, and you have had also had ample time to engage your own expert to opine on the value of those properties should you disagree with Mr. Petersen's evaluation.

I also take issue with the statements in yesterday's letter concerning Mr. Mastrocola's expert report. Until you confirmed yesterday that there were no additional records that you were going to be produced concerning Carefree Park's financial

Robert L. Kirby, Jr., Esquire
January 12, 2006
Page 2


statements, bank statements and other financial information, Mr.
Mastrocola has been holding his report in abeyance pending your
clients' full compliance with their discovery obligations.    I
will now instruct Mr. Mastrocola to complete his report based on
the limited information that the plaintiffs' have produced, and
I will forward you a copy of his report early next week.  Once
again, I offer to make Mr. Mastrocola available for a deposition
at a mutually convenient date and time that can take place well
before the start of the trial of this matter.

Please let me know if you want to take the depositions of
either expert and proposed dates for such testimony.

Very truly yours,

Ian Crawford

IC:klp
Cc:  Doyle C. Valley, Esquire (w/o encls.)

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

IAN CRAWFORD
Email: icrawford@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

January 16, 2006

Robert L. Kirby, Jr., Esquire
Nixon Peabody, LLP
100 Summer Street
Boston, MA  02110

Re:  Carefree Park Corporation v. Adib Nabhan
     U.S.D.C. Civil Action No. 03-12426-RCL (D. Mass.)

Dear Bob:

Enclosed is one additional appraisal report from our expert involving 19 Central Avenue in Salisbury, Massachusetts.  While I have read your motion in limine and the memorandum in support thereof, I continue to make Mr. Petersen available to you should you wish to depose him.

Very truly yours,

Ian Crawford

IC:klp
Enclosure
Cc:  Doyle C. Valley, Esquire (w/encl.)