3/4406

COPY

*Exhibit E*

## HABIB NABHAN NOMINEE TRUST OF 1995

We, Amin Nabhan and Adib Nabhan of 33 Central Avenue, Salisbury, Essex County, Massachusetts, hereby DECLARE that we and our successors in trust (the "Trustees") will hold the real property situated at See Schedule ''A'' attached hereto and incorporated herein by this reference (the "Premises") and any and all other property that may be transferred to us as Trustees hereunder for the sole benefit of the beneficiaries hereunder upon the terms herein set forth:

ARTICLE I.   Name and Purpose.

This Trust shall be known as the "HABIB NABHAN NOMINEE TRUST OF 1995" and the terms "Trustee" and "Trustees" and all pronouns referring to the Trustee or Trustees wherever used herein shall refer to the person or persons acting as Trustee or Trustees from time to time hereunder, whether or not there shall be more than one Trustee named herein initially.   This Trust is intended to qualify as a nominee trust so-called, for federal and state income tax purposes.   It is established to hold the record legal title to the trust estate and to perform such functions as are necessarily incidental thereto.

ARTICLE II.   Beneficiaries.

The beneficiaries of this Trust are the persons listed as beneficiaries in the Schedule of Beneficial Interests this day executed by them and the Trustees and delivered to the Trustees, or as the same may be amended as hereinafter provided, and the interests of the beneficiaries are as stated therein.   Any Trustee may without impropriety be a beneficiary hereunder and exercise all rights of a beneficiary with the same effect as though he were not a Trustee.   In the event of the death of any individual beneficiary, the interest of such beneficiary, and the

rights, privileges and powers appurtenant thereto, shall pass to and devolve upon the executor of the will of such beneficiary.

ARTICLE III.    Powers of Trustees.

The Trustees shall act at all times prior to termination of the Trust only as directed in writing by all of the beneficiaries and shall have full power and authority in accordance with such directions: to pay over the principal and income of the Trust to the beneficiaries; to acquire, hold, manage, invest, reinvest, improve, sell, mortgage, exchange, transfer, convey, pledge, lend and otherwise deal with or dispose of all or any part or parts of the Premises or any part or parts of any other real or personal property or interests therein; to erect, construct, alter, repair, demolish or otherwise physically affect any buildings or structures of any type or description on the Premises or on any other Trust property; to grant or acquire rights and easements and any other interests in real estates; to execute and deliver leases, agreements and other instruments with respect to all or any part or parts of the Premises or any other Trust property, any or all of which may extend beyond the date of any possible termination of the Trust; to give releases, discharges, options and extensions with respect to the Premises or any other Trust property; and to borrow money (with or without security), and execute and deliver notes, checks, drafts, undertakings and other instruments or orders for the payment, transfer or withdrawal of money. Notwithstanding the foregoing provisions of this Article, the Trustees, until directed to the contrary by the beneficiaries, shall have only the following powers and duties:

(a)    To hold the Premises and any other Trust property and to receive any money due the Trust; and

(b)    To pay any net income of the Trust in their hands at least annually to the beneficiaries in proportion to their respective interests.

The Trustees shall not maintain bank accounts in the name of the Trust or Trustees unless specifically authorized to do so by the beneficiaries; however, the Trustees may maintain bank accounts in the name of the beneficiaries for any purpose authorized by the beneficiaries.    In the event any successor to the original Trustees    named    in    this    declaration,    without    specific authorization, does maintain bank accounts in the name of the Trust or Trustees or otherwise incurs financial obligations or accepts deposits of money in the name of the Trust or Trustees, the Trustees shall indemnify the beneficiaries against, and hold the    beneficiaries    harmless    from,    any    liability    resulting therefrom, including taxes and accounting expenses, unless this term is specifically waived by the beneficiaries.

Any and all instruments executed pursuant to the direction of the beneficiaries may include obligations extending over any periods of time, including periods extending beyond the date of any possible termination of the Trust.

Any    action    (other    than    the    following    actions    requiring participation of the beneficiaries : (i) amendments of this instrument pursuant to Article VI; (ii) removals or appointments of Trustees pursuant to Article VII; and (iii) termination under Article VIII), may be taken, and all instruments (other than those    in    connection    with    the    foregoing    actions    requiring participation of the beneficiaries), whether or not under seal, may be executed on behalf of the Trust by the sole Trustee, by any one Trustee in the event the Trust has more than one Trustee, or by such agent as shall be authorized by a written certificate signed by all of the Trustees.

The    Trustee    shall    have    no    power    to    bind    the    beneficiaries personally, and in every contract the Trustees shall enter into, reference shall be made to this Declaration of Trust, and the person, firm or corporation so contracting with the Trustees

shall look only to the funds and property of the Trust for payment under such contract or for payment of any debt, damage, judgment or decree or of any money which may otherwise become due and payable by reason of a failure on the part of said Trustees to perform such contract in whole or in part, and neither the Trustees nor the beneficiaries, present or future, shall be personally liable therefor.

ARTICLE IV.  Third Party Reliance.

Notwithstanding the provisions of Article III concerning authorization of Trustees actions by the beneficiaries, every agreement, deed, mortgage, pledge, note, assignment, transfer, check, extension, release, discharge and other writing or document executed by a person appearing from the records in the said Registry to be a Trustee hereunder shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the execution or delivery thereof this Trust was in full force and effect and that the Trustee executing and delivering such instrument was duly authorized, empowered and directed by the beneficiaries to execute and deliver the same and that, subject to Article III hereof concerning the requirements for the execution of instruments, such instrument is valid, binding, effective and legally enforceable.  Notwithstanding anything in this instrument to the contrary, any person dealing with the Trust property or the Trustees may always rely on a certificate signed by any person appearing from the records of said Registry to be a Trustee hereunder as to who are the Trustees or who are the beneficiaries hereunder, or as to the authority of the Trustees to act, or as to the existence or non-existence of any other fact or facts which are in any other name germane to the affairs of the Trust.

No purchaser, transferee, pledgee, mortgagee or other lender shall be under any responsibility to see to the application of any purchase money, or of any money loaned, or property lent or

delivered to the Trustees, or to see that the terms and conditions of this Trust have been complied with or performed.

ARTICLE V.   Limitation of Trustee Liability.

The Trustees shall not be held to any personal liability whatsoever, whether in tort, in contract, for error of judgment, or for loss arising out of any act or omission in the execution of the Trust, so long as they act in good faith, but each Trustee hereunder shall be responsible for his own willful breach of trust, knowingly and intentionally committed.   No Trustee shall be liable for any act or omission by any other Trustee.   If any Trustee shall at any time for any reason (other than for willful breach of trust) be held to be under any personal liability as such Trustee with respect to property held hereunder, then such Trustee shall be held harmless and indemnified by the beneficiaries, jointly and severally, from and against all loss, costs, damage, or expense by reason of such liability.   The Trustees may withhold from any distribution, transfer or conveyance such amounts as they from time to time reasonably deem necessary to protect themselves from such liability.   No Trustee shall be required to take any action directed by the beneficiaries which will, in the opinion of the Trustee, involve the Trustee in any personal liability, unless first indemnified to the satisfaction of the Trustee.   No court approval or license shall be requisite to the validity of any transaction entered into by the Trustees, and no Trustee shall be required to give any bond.

ARTICLE VI.   Amendments and Assignments.

This instrument may be amended at any time by a written instrument signed by all the beneficiaries and Trustees and acknowledged by one or more Trustees.   No amendment of this instrument shall become effective, except with respect to persons having actual knowledge thereof, until a certificate by a

Trustee, setting forth the amendment and certifying that such amendment was duly made in accordance with the terms of this instrument or any amendment hereof, has been recorded as provided in this instrument. A beneficiary may assign his or her beneficial interest provided that no such assignment shall be effective (except as provided in Article III) until: (i) the original assignment is delivered to the Trustees; (ii) the assignee executes an Amendment to the Schedule of Beneficial Interest; and (iii) at least one Trustee signs and acknowledges the Amendment to the Schedule of Beneficial Interests.

ARTICLE VII.  Resignation; Appointment of Successor Trustee.

Any Trustee hereunder may resign by a written instrument signed and acknowledged by such Trustee and delivered or mailed to each beneficiary, and to each remaining Trustee, if any. Succeeding or additional Trustees may be appointed or any Trustee removed by a written instrument signed by all of the beneficiaries and acknowledged by one or more of them.

In the event that there is no Trustee, either through death, resignation or for any other cause, a person purporting to be a successor Trustee hereunder may record in said Registry an affidavit, under pains and penalties of perjury, stating he has been appointed by all of the beneficiaries as successor Trustee. Such affidavit, when so recorded together with an attorney's certificate under G.L.c 183, 5B, stating that such attorney has knowledge of the affairs of the Trust and that the person signing the affidavit has been appointed a Trustee by all of the beneficiaries, shall have the same force and effect as if the certificate of a Trustee or Trustees required or permitted hereunder had been so recorded, and persons dealing in good faith with the Trust or Trust estate may always rely without further inquiry upon such an affidavit as so executed and recorded as to the matters stated herein.

Upon the appointment of any succeeding or additional Trustee or Trustees, the title to the Trust estate shall thereupon and without the necessity of any conveyance be vested in said succeeding or additional Trustee or Trustees jointly with the remaining Trustee or Trustees, if any. Each succeeding and additional Trustee shall have all the rights, powers, authority, privileges and duties as if named as an original Trustee hereunder.

ARTICLE VIII.    Termination.

The Trust may be terminated at any time by all of the beneficiaries by a written notice to the Trustees, and the Trust shall terminate upon the disposition by the Trust of its entire interest in the Premises and all other real property held by the Trust, or eighty-nine (89) years after the date hereof, whichever shall first occur. In case of any such termination, the Trustees shall continue to have and may exercise all the rights, powers, authority and privileges conferred by this instrument upon the Trustees, for the full duration of such period (not exceeding one year from the date of termination, however) as the Trustees in their sole discretion determine to be necessary for winding up the affairs of the Trust. Upon the conclusion of any winding up of the affairs of the Trust which the Trustees may deem necessary, the Trustees shall transfer and convey the entire Trust estate then remaining in their hands, subject to any leases, mortgages, contracts or other encumbrances thereon, to the beneficiaries in proportion to their respective interests; provided that the Trustees shall not be required to transfer and convey the Trust estate unless first indemnified to their satisfaction against any personal liability.

ARTICLE IX. Notice.

Notwithstanding any other provision of this instrument no amendment or termination of the Trust or change in the Trustees

shall become effective except with respect to persons having actual knowledge thereof until such instrument of amendment, termination, resignation, removal, appointment or acceptance, or a certificate thereof by a Trustee certifying that such amendment, termination, resignation, removal, appointment or acceptance was duly made in accordance with the terms of this instrument or any amendment hereof, has been duly recorded in said Registry and, in the event this Trust shall hereafter own real property in a district or county other than the district or county in which said Registry is located, then with respect to such other real property, until such amendment, termination, resignation, removal, appointment, acceptance, or a certificate thereof has been recorded in the appropriate registry of deeds for such district or county.

ARTICLE X.  Definitions.

Whenever the context permits, the term "Trustees" shall include the Trustee or Trustees then serving hereunder, the term "executor" shall include "administrator", the use of a particular gender shall include any other gender, and references to the singular or the plural shall be interchangeable.

ARTICLE XI.  Governing Law.

This instrument shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

(end of page)

WITNESS the execution hereof as a sealed instrument this 3rd day of October, 1995.

_____
Amin Nabhan, Trustee as aforesaid


_____
Adib Nabhan, Trustee as aforesaid


COMMONWEALTH OF MASSACHUSETTS

Essex ,ss.                                    October 3, 1995

    Then personally appeared the above-named Amin Nabhan, Trustee, and acknowledged the foregoing to be his free act and deed, before me,

_____
Notary Public
My Commission Expires:
5-29-98


State of Florida

County of: Palm Beach                         October 11 , 1995

    Then personally appeared the above-named Adib Nabhan, Trustee, and acknowledged the foregoing to be his free act and deed, before me,

_____
Notary Public
My Commission Expires:


nabhan/hisnomtr.doc



DONNA PARRAMORE
MY COMMISSION # CC 420068
EXPIRES: November 9, 1998
Bonded Thru Notary Public Underwriters

## HABIB NABHAN NOMINEE TRUST OF 1995

### Schedule of Beneficial Interests

Dated: October 3, 1995

| Beneficiaries | Interest |
|---|---|
| Amin Nabhan and Adib Nabhan, Trustees of The Habib Nabhan Revocable Trust of 1995 dated October 3, 1995 | 100% |

   We, Amin Nabhan and Adib Nabhan being the Trustees of the Habib Nabhan Nominee Trust of 1995, hereby certify that the above is a true and accurate schedule of beneficial interest of said trust as of the date first written above.

EXECUTED under seal this 3rd day of October, 1995

_____
Amin Nabhan, Trustee

_____
Adib Nabhan, Trustee

nabhan/benefic.doc

# THE HABIB NABHAN REVOCABLE TRUST OF 1995

This 3 day of October 1995, Amin Nabhan of Salisbury, Massachusetts and Adib Nabhan of West Palm Beach, Florida TRUSTEES, acknowledge receipt of the property set forth in the annexed Schedule A from the Grantor, Habib Nabhan of Salisbury, Massachusetts, and declare that they will hold the same together with any other property which may be transferred to them by the Grantor or by any other person, IN TRUST. This trust may be known and referred to as the "Habib Nabhan Revocable Trust Of 1995" and the Trustees shall hold the trust property for the following purposes and in accordance with the provisions hereinafter set forth:

ARTICLE 1   PROVISIONS FOR THE GRANTOR

1.1   During the lifetime of the Grantor, the Trustees shall hold, manage, invest and reinvest the trust property and shall dispose of the net income and principal, including the whole thereof, as the Grantor may from time to time request. In the absence of any such request, the Trustees may pay to or apply for the benefit of the Grantor any part or all of the net income and principal as they shall in their discretion deem advisable, with full power to accumulate any income not so paid or applied and to hold the same for future use or to add the same in whole or in part to principal. In the event of the incompetency of the Grantor, the Trustees are authorized to use any part or all of the net income and principal for the benefit of the Grantor, his wife, Mary Nabhan, and his children Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan and their issue of any degree by making payments to or by applying the same for any one or more of them at such time or times and in such amounts, proportions and manner as the Trustees shall in their discretion deem advisable, with full power to accumulate any income not so paid or applied

1

and to hold the same for future use or to add the same in whole or in part to principal.

1.2    Upon the Grantor's death, the Trustees shall distribute all the property then remaining in this trust in accordance with the exercise of a special power of appointment by the Grantor.    The property over which the Grantor fails to exercise effectively said special power of appointment shall be distributed according to the provisions of Section 1.3.

1.3    Upon the Grantor's death, any discretionary payments which the Trustees determine to make under Section 7.1 shall be made by the Trustees from the property held in trust hereunder and any property then payable to the Trustees or to which they may be entitled.    The balance of such property shall be held under Article 2 if the Grantor's said wife is living at the Grantor's death and if she is not then living, such property shall be held under Article 3.

ARTICLE 2    PROVISIONS FOR THE GRANTOR'S WIFE, AND ISSUE

2.1    QTIP Trust.    The QTIP trust shall consist of trust property equal in value to the amount hereinafter determined under Section 2.3 and the Trustees shall hold, manage, invest and reinvest the same as a separate trust.    During the lifetime of the Grantor's wife, the Trustees shall pay to her or apply for her benefit, at least as often as quarterly, all of the net income of this separate trust, and they shall pay to her estate all such income unpaid or accrued at her death.    The Trustees are authorized to pay to or apply for the benefit of the Grantor's wife, from time to time, such amounts of principal, including the whole thereof, as they shall in their discretion deem advisable. Upon the death of the Grantor's wife, the property then remaining in this trust shall be held under Article 3.

2

2.2  Credit-Shelter Trust.  The Credit-Shelter trust shall consist of the balance of the trust property and the Trustees shall hold, manage, invest and reinvest the same as a separate trust.  During the lifetime of the Grantor's wife, the Trustees shall use any part or all of the net income and principal of this separate trust for the benefit of the Grantor's wife, children Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan and their issue of any degree by making payments to or by applying the same for any one or more of them at such time or times and in such amounts, proportions and manner as the Trustees shall in their discretion deem advisable, with full power to accumulate any income not so paid or applied and to hold the same for future use or to add the same in whole or in part to principal.  Upon the death of the Grantor's wife, the property then remaining in this trust shall be held under Article 3.

2.3  Marital Deduction Computations and Funding.  The Trustees shall compute both:

2.3.1  The minimum marital deduction amount which, after the use of all credits and other deductions available to the Grantor's estate for federal estate tax purposes, will result in the least possible federal estate tax (including zero) upon his estate (provided, however, that the state death tax credit shall not be used so as to increase the estate tax payable in any state), and such amount shall be reduced by the value of all items which qualify for the federal estate tax marital deduction and which pass or have passed to the Grantor's wife other than pursuant to this Article, basing their computations upon values as finally determined for federal estate tax purposes (including the value of adjusted taxable gifts, if any); and

2.3.2  The minimum marital deduction amount which, after the use of all credits and other deductions available to the Grantor's estate for Massachusetts estate tax purposes, will result in the least possible Massachusetts estate tax (including

zero) upon his estate, and such amount shall be reduced by the value of all items which qualify for the Massachusetts estate tax marital deduction and which pass or have passed to the Grantor's wife other than pursuant to this Article.

2.3.3    The Trustees shall fund the QTIP trust with an amount of property equal to the greater of the amounts determined under Section 2.3.1 and Section 2.3.2.  The Trustees may use cash or property or a combination of each, but any property shall be distributed at market values current at the time of distribution. To the extent possible, only property which is eligible for both the federal and Massachusetts estate tax marital deductions shall be used to fund the QTIP trust.

2.4    Separate Shares.  The Grantor's executor may elect to qualify some or all of the property held in the QTIP trust as qualified terminable interest property for federal estate tax purposes, for Massachusetts estate tax purposes, or for both such purposes.  Therefore, the Trustees are authorized, but not required, to divide the QTIP trust into two or more shares to the extent the following categories are applicable:

2.4.1    A share consisting of that portion of the QTIP trust for which a marital deduction was allowed for both federal and Massachusetts estate tax purposes in the Grantor's estate.

2.4.2    A share consisting of that portion of the QTIP trust for which a marital deduction was allowed for federal but not Massachusetts estate tax purposes in the Grantor's estate.

2.4.3    A share consisting of that portion of the QTIP trust for which a marital deduction was allowed for Massachusetts but not federal estate tax purposes in the Grantor's estate.

2.4.4    A share consisting of that portion of the QTIP trust for which a marital deduction was not allowed for either federal or Massachusetts estate tax purposes in the Grantor's estate.

If the Trustees divide the QTIP trust into shares, they shall make such division using market values current at the time of such division.  If the Trustees exercise their discretion to pay principal to, or apply the same for the benefit of, the Grantor's wife or if the Trustees make payments pursuant to Article 7, such payments shall first be made from the share described in section 2.4.1 until such share is exhausted, then from the shares described in Sections 2.4.2 and 2.4.3 in such manner as the Trustees determine, and finally from the share described in Section 2.4.4.

The decisions of the Trustees as to the division of the QTIP trust into shares, the allocation of specific property to such shares and the payment of principal from any such shares shall be final and binding.

2.5    Disclaimer.  If the Grantor's wife disclaims all her interest in the property or any portion of the property in the QTIP trust, the property or portion thereof to which such disclaimer pertains shall become and be treated as though it had been an integral part of the Credit-Shelter trust from the date of the Grantor's death.  To be effective, a disclaimer under this Section 2.5 must comply with the requirements of a qualified disclaimer for federal tax purposes.

ARTICLE 3  PROVISIONS FOR THE GRANTOR'S ISSUE

3.1    Division of Trust. The Trustees shall divide all the property then remaining in the trust estate into as many equal shares as there are the following named children of the Grantor then living: Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan, and such named children of the Grantor then deceased

5

leaving issue then living. The Trustees may adjust the amount of any such share, if they in their discretion deem it equitable, to take into consideration payments of principal previously made to or applied for the benefit of such child or such child's issue from the Credit Shelter Trust. The Trustees shall hold and dispose of such shares as follows:

3.2    Child's Trust.    The Trustees shall hold, manage, invest and reinvest each share of a then living child of the Grantor or issue of a then deceased child as a separate trust and shall use any part or all of the net income for the benefit of such child and such child's issue by making payments to or by applying the same for any one or more of them at such time or times and in such amounts, proportions and manner as the Trustees shall in their discretion deem advisable for the support, maintenance, education, medical expenses and reasonable living expenses of such children and issue, and to meet emergencies, with full power to accumulate any income not so paid or applied and to hold the same for future use or to add the same in whole or in part to principal. In addition, if the Trustees in their discretion deem it in the interest of such child or such child's issue, the Trustees may in their sole and absolute discretion pay to any beneficiary of a trust or separate trust share or subshare such amounts of principal remaining in such persons trust or separate trust share or subshare as may be necessary to meet emergencies, very unusual financial circumstances, hospital or medical expenses or for educational purposes. The decision of the Trustees is final and binding on all concerned.

3.2    Termination of Trust by Agreement.    At such time as Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan, or the survivors of them, unanimously agree to terminate the trust, the accumulated income and the principal shall be distributed to the then living beneficiaries entitled to receive the accumulated income and principal in their respective shares and this trust shall terminate, except that any property to be distributed to a

6

person who is under the age of thirty (30) years and for whose benefit property is still held in trust hereunder, shall instead be added to and become an integral part of such separate trust. The Trustees shall continue to manage such separate Trust for the benefit of such person until such person attains the age of thirty (30) years at which time all property then remaining in such separate trust shall be distributed to such person free of all trusts and the trust shall terminate. Only Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan shall have the power to terminate the trust by agreement and this power is not transferable to any of their issue.

3.3    Termination of Trust Without Agreement.    In the event that Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan are unable by agreement to terminate this Trust pursuant to Section 3.2 above, then this Trust shall terminate as follows: Upon the death of the survivor of Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan as soon as is practical all property then remaining in Trust shall be distributed free of all Trusts to the then living issue of Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan by right of representation.

3.4    Failure of Beneficiaries.    If at any time there shall be no person eligible to take in accordance with the provisions of the foregoing Sections of this Article, the Trustees shall distribute all the property then remaining in trust, free of all trusts, to those persons, other than creditors, who would be entitled to receive the same and in the proportions to which they would be so entitled had the Grantor died at such time, intestate, unmarried, domiciled in Massachusetts, and owning the property held hereunder.

3.5    Rule Against Perpetuities.    Each trust under this Article shall in all events terminate upon the expiration of twenty-one (21) years from the death of the survivor of the Grantor, his wife and those of the Grantor's above named children

and their issue who are living at his death. Thereupon, the Trustees shall distribute all the property then remaining in such trust, free of all trusts, to those persons then eligible to receive income from such trust, equally if all are in the same generation, and if not, to such persons by right of representation beginning with the oldest generation which has one or more eligible beneficiaries then living.

3.6   Merger of Trusts.   If at any time after the death of the Grantor and his wife there shall be in existence one or more trusts established by the Grantor or his wife and such trust or trusts shall contain provisions which are substantially the same as those contained in this Article 3, the Trustees are authorized, in their sole discretion, to merge and combine this trust with such other trust or trusts if they determine it likely that the overall administration of all trusts will thereby be facilitated and the total costs associated therewith reduced. The Trustees may fully rely on the representation of the trustees of such other trust or trusts as to the terms thereof.

ARTICLE 4  GENERAL PROVISIONS RELATING TO SEPARATE TRUSTS AND TO PAYMENTS OF PRINCIPAL AND INCOME

4.1   Spendthrift Provision.   Any payment of principal or income shall be free from the interference and control of creditors and from all marital control and shall not be anticipated by way of assignment, whether voluntary or by process of law, and each such payment shall be so protected until its actual receipt by the appropriate recipient as authorized hereunder.

4.2   Payments to Minors.   When any payment of principal or income is due or is to be paid in the discretion of the Trustees to any minor, the Trustees are authorized to make such payment, regardless of the amount, in their sole discretion directly to such minor, to a parent or guardian of such minor for the benefit

of such minor, or, if not prohibited by law, to a custodian for such minor under a Uniform Transfers to Minors Act or comparable act of any jurisdiction.

4.3    Discretionary Distributions to Minimize Taxes. With respect to the Credit Shelter trust and each trust established under Article 3, in addition to the provisions set forth governing distributions of income and principal, the Trustees may distribute income and principal for the sole purpose of avoiding or mitigating the consequences of taxes on accumulation distributions or taxes on generation-skipping transfers under applicable provisions of the Internal Revenue Code.

4.4    Termination of Small Trusts.    If at any time the Trustees are of the opinion that the expense of administering any trust has become excessive in relation to the amount of property held therein, they may terminate such trust and distribute all the property then remaining to those persons then entitled to receive income therefrom.

ARTICLE 5    TRUSTEES' POWERS

5.1    Powers Exercisable by All Trustees.    The Trustees shall be entitled to reasonable compensation to be paid from the trust property.    In addition to and not in limitation of their common law and statutory powers, the Trustees shall have and may exercise the following powers:

5.1.1    To retain any property for whatever period they deem advisable and to invest and reinvest in any property, both real and personal, including mutual funds of the "load" and "no load" variety, regardless of whether any particular investment would be proper for trustees and regardless of the extent of the diversification of the assets in the trust under which such property is held.

9

5.1.2    To sell and to grant options to purchase all or any part of the trust property, both real and personal, at any time at public or private sale, for such consideration, whether or not the highest possible consideration, and upon such terms, including credit, as they deem advisable, and to execute, acknowledge and deliver deeds or other instruments in connection therewith.

5.1.3    To lease any real estate for such term or terms, whether or not extending beyond the term of the trust under which such real estate is held, and upon such provisions and conditions as they deem advisable, including the granting of options to renew, options to extend the term or terms and options to purchase.

5.1.4    Upon the written request of the Grantor to assign, mortgage or pledge any part or all of the trust property as collateral to secure any obligations of the Grantor.

5.1.5    With respect to any corporation, association or other entity the securities of which are held by the Trustees, (a) to participate in person or by proxy (with or without power of substitution) or pursuant to a voting trust in any meeting of stockholders, directors, or securities holders of any kind; (b) to execute waivers of notice of the time, place, and purposes of any meeting; (c) to consent to any action by such entity without a meeting and to execute formal instruments of consent; (d) to participate in any type of reorganization, recapitalization, merger, consolidation, liquidation, dissolution, or other action; (e) to exercise subscription or conversion rights; (f) to serve or to designate an employee or representative to serve as an officer or director of any such entity and to vote any securities for the election of such person; (g) to deposit any securities with any protective committee or voting trust and to pay expenses in connection therewith; and (h) to take any other action as owners with respect to securities held hereunder.   If the

10

Trustees incur any liability or expense under any state or federal law, including without limitation the federal securities acts and the "Blue Sky" laws of the several states as a result of holding, disposing of, or otherwise dealing in or with any securities held hereunder or as a result of serving or designating another to serve as an officer or director of the issuer of any such securities, the Trustees shall be reimbursed for and indemnified against any such liability or expense from time the property held hereunder to the extent permitted by applicable law. The Trustees are authorized to hold, acquire or dispose of any securities restricted as to transfer under state or federal securities acts in the same manner and with all the rights and powers the Grantor would have if the Grantor owned such securities individually, including, without limitation, the power to retain such securities for investment, to retain counsel and take appropriate action for the purpose of removing any such restrictions, to sell such securities in a transaction exempt from the provisions of such securities acts or to initiate or join in a public offering of such securities, with full power and authority to execute and deliver all agreements, representations, indemnifications, registration statements and other documents necessary or appropriate to the exercise of any or all of the foregoing powers.

    5.1.6   To hold any securities or other property, both real and personal, in their own names, in the name of such nominee as they shall select, or in the form of "street certificates," without in any of such cases disclosing the fact that such property is held in a fiduciary capacity, and to indemnify any such nominee against any loss resulting from holding such property as nominee.

    5.1.7   To keep any trust property at any place within or without the United States or with a depository or custodian at any such place.

5.1.8    To manage and invest any separate shares as a single fund consisting of undivided interests.

5.1.9    To employ others in connection with the administration of the trust including legal counsel, investment advisors, brokers, accountants and agents, notwithstanding the fact that a Trustee may receive a direct or indirect financial benefit as a result of such employment or may be affiliated with any one or more of them, and to pay reasonable compensation in addition to the Trustees' compensation.

5.1.10    To borrow and to pledge or mortgage any property as collateral, and to make secured or unsecured loans. The Trustees are specifically authorized to make loans without interest to any beneficiary or to the estate of any beneficiary hereunder.

5.1.11    To make any elections permitted under any pension, profit-sharing, employee stock ownership or other benefit plan.

5.1.12    To pay, compromise, settle or otherwise adjust any claims, including taxes, asserted in favor of or against either the trust property or the Trustees.

5.1.13    To determine: (a) whether any money or property coming into their possession shall be deemed principal or income and whether to apportion the same between principal and income; (b) the manner in which expenses incidental to the administration of the trust shall be borne or apportioned between principal and income; (c) whether any discounts shall be accumulated; (d) what portion, if any, of interest received on bonds purchased at a premium and dividends received on wasting investments shall be added to principal in order to prevent the diminution of principal; and (e) to what extent expenditures, including real estate taxes, insurance, repairs, improvements, and principal payments on mortgages and other loans, for the maintenance and protection of real estate and other trust property shall be

charged against income or principal, and whether to establish reserves from income or principal for such expenditures and for depreciation, depletion, amortization, and obsolescence in order to prevent the diminution of principal.

5.1.14   To make any distribution or separation into shares in whole or in part in kind, and to allocate different kinds and disproportionate amounts of property and undivided interests in property among the shares.

5.1.15   To make any distribution or separation into shares at values determined by them with or without regard to tax basis.

5.2    Limitations on exercise of Trustees' Powers.  It is intended that the property held in the QTIP trust shall qualify for the Massachusetts and federal estate tax marital deductions to the extent that the Grantor's executor has elected to treat the property held thereunder as qualified terminable interest property for Massachusetts and federal estate tax purposes respectively.  Accordingly, with respect to the QTIP trust, the powers under Section 5.1.10, 5.1.13 and 5.1.15 shall not apply; the Grantor's wife shall have the right at any time by written instrument to require the Trustees either to dispose of unproductive property or to make it productive within a reasonable time; and the powers and discretions of the Trustees shall not be exercised in any manner which would prevent the QTIP trust from so qualifying.

ARTICLE 6   <u>ACCOUNTING BY THE TRUSTEES</u>

The Trustees shall from time to time render an account of their trust to each income beneficiary or, if an income beneficiary is not then legally competent or is not then living and a guardian, conservator, executor, or any other fiduciary has been legally appointed for such income beneficiary, to such fiduciary.  "Income beneficiary" shall mean each person who is

13

eligible to receive income during the period covered by the account; provided, however, that while the Grantor is living and competent, he may waive, in writing the necessity of such an accounting. The assent to such account by a majority of such income beneficiaries and such fiduciaries shall be a complete discharge of the Trustees as to all matters included in such account or reflected thereby. The failure of any such income beneficiary or fiduciary to object to any account by written instrument filed with the Trustees within sixty (60) days after the rendering of such account shall be deemed to be an assent thereto.

ARTICLE 7    PROVISIONS RELATING TO PAYMENT OF TAXES AND OTHER
             ITEMS

Notwithstanding any other Article of this trust:

7.1    Discretionary Payments. The Trustees may pay to the Grantor's estate such amounts as they deem advisable from the principal of the trust under Article 1 for the payment of the Grantor's debts, funeral expenses, estate administration expenses and taxes payable by reason of his death (including generation-skipping transfer taxes on direct skips but excluding all other generation-skipping transfer taxes). The Trustees may also pay such taxes directly to the taxing authorities involved.

7.2    Mandatory Payments. If the payment of the Grantor's debts, funeral expenses, estate administration expenses and taxes payable by reason of his death (as defined in Section 7.1) would require resort to any property devised or bequeathed in the Grantor's will other than by the residuary clause thereof, the Trustees are directed to pay to the Grantor's estate or directly to the taxing authorities involved amounts from the principal of the trust under Article 1 sufficient to avoid resort to any of said property.

14

7.3.    Source of Payments.    The trustees shall use only property which is includable in the Grantor's gross estate for the purposes of both the federal estate tax and Massachusetts estate tax to make the discretionary payments described in Section 7.1 and the payments required by Section 7.2.    If said property is, however, insufficient to make such required payments, the Trustees shall then use property includable in the Grantor's gross estate only for federal estate tax purposes and finally property includable only for Massachusetts estate tax purposes.    In no event shall property be paid by reason of Section 7.1 and 7.2 to the Grantor's estate or to any taxing authorities if such property is not includable in the Grantor's gross estate for either federal or any state estate tax purposes.

7.4    "Flower" Bonds.    If at the time of the Grantor's death United States Treasury bonds eligible for redemption at par value for the payment of federal estate taxes upon his estate are held in trust under Article 1, then, notwithstanding anything to the contrary hereunder, the trust shall terminate with respect to such bonds and the Trustees shall forthwith transfer all such bonds to his estate.    If at the time of the death of the Grantor's wife, United States Treasury bonds eligible for redemption at par value for the payment of federal estate taxes upon her estate are held in the QTIP trust and are includable in her estate for both federal and Massachusetts estate tax purposes, then, notwithstanding anything to the contrary hereunder, the QTIP trust shall terminate with respect to such bonds and the Trustees shall forthwith transfer all such bonds to her estate.

7.5    Payment of Estate Taxes from QTIP Trust.    If the Grantor's wife does not direct otherwise by will and her executor requests, in writing, amounts for the payment of any federal or state estate taxes attributable to the property held in the QTIP trust, the Trustees shall pay to the taxing authorities involved, an amount equal to (a) the amount of estate taxes payable by

15

reason of the death of the Grantor's wife less (b) the amount of such taxes computed without including the property held in the QTIP trust; provided, however, that the total amount of such payments shall be reduced by an amount equal to the par value of United States Treasury bonds, plus accrued interest thereon credited toward the payment of such taxes, transferred to her estate pursuant to Section 7.4.

7.6   Payments of Estate Taxes from Child's Trust.   If upon the death of a child of the Grantor, property is then held in trust for such child's benefit hereunder and if such child's executor requests, in writing, amounts for the payment of any federal or state estate taxes attributable to the property held in such child's trust, the Trustees shall pay to such child's estate, or directly to the taxing authorities involved, an amount equal to (a) the amount of estate taxes payable by reason of the death of such child less (b) the amount of such taxes computed without including the property held in such child's trust.

ARTICLE 8   <u>PROVISIONS RELATING TO TRUSTEESHIP</u>

8.1   No Trustee shall be required to give a bond for the performance of his duties or to furnish a surety on any bond required by a court of competent jurisdiction. Unless due to his own willful default or gross negligence, no Trustee shall be liable for his acts or omissions or those of any co-Trustee or prior Trustee. The Trustees shall be indemnified and held harmless to the extent of the property held hereunder for any liability incurred by them while acting hereunder except liabilities incurred by them through their own willful default or gross negligence.

8.2   Any Trustee may resign by notifying the Grantor or, in the event of the Grantor's incompetency or after his death, any other Trustee or, if there is no other Trustee, those persons

16

entitled to an accounting under Article 6, by written instrument signed and acknowledged by the resigning Trustee.

8.3    The Grantor shall have the right while living and competent to remove any Trustee by notifying such Trustee by written instrument signed and acknowledged by the Grantor.

8.4    The Grantor may appoint successor additional Trustees during his lifetime.  In the event of the Grantor's incompetency or after his death, the Trustees may make such appointments.  If, however, at any time during the incompetency of the Grantor or after his death, there is not a Trustee capable of performing his duties, a majority of those persons entitled to an accounting under Article 6 shall forthwith appoint one or more Trustees. Any appointment of a Trustee hereunder shall be by a written and acknowledged instrument and shall not take effect until the appointee shall endorse his acceptance thereon.  Notwithstanding, the Grantor's wife shall not be a Trustee hereunder.

8.5    Whoever shall act as Trustee shall have all the rights, powers, duties, discretions, and exemptions given to the named Trustees.

8.6    If, at any time when there is more than one Trustee, any Trustee shall be mentally or physically incapable of performing his duties, it shall not be necessary for such Trustee to resign or to be removed in order that the trust may continue to be administered.  The other Trustees may administer the trust during such incapacity without the concurrence of the incapacitated Trustee.

8.7    The Trustees may from time to time authorize any one or more of them to execute instruments including, without limitation, checks, notes and drafts, on behalf of the Trustees hereunder.  Any individual Trustee may delegate from time to time all his powers and duties to the other Trustees.  Any such

delegation shall be by a written and acknowledged instrument delivered to the other Trustees and shall not exceed a period of six (6) months.

8.8    A written instrument signed by any Trustee as to the identity of the Trustees or as to any other facts or matters relating to the trust or its management shall be conclusive as to all facts stated in such instrument in favor of any person relying thereon, and no one dealing with any Trustee shall be held to see to the application of any money or property transferred to or upon the order of such Trustee.

8.9    No Trustee shall be liable for the default of the executor of the will of either the Grantor or his wife.  No Trustee shall be liable for the failure to demand or contest an accounting of any fiduciary, to seek redress of any breach of any fiduciary duty, or to require delivery of any property from a fiduciary unless such failure is due to the Trustee's own willful default or gross negligence.

8.10    No provision of this trust shall be construed as requiring the Trustees to take any part in the preparation of any estate tax return or in the computation of any such tax, and the Trustees may rely on such computations made by the appropriate fiduciaries.

8.11    Any decision made by a Trustee involving a discretionary power under this trust, any computation made for purposes of funding separate trusts or shares, and any computation made for purposes of determining a payment pursuant to Article 7 shall be final and binding on all persons interested.

ARTICLE 9    GRANTOR'S POWER TO AMEND AND REVOKE

The Grantor shall have the right while living, and competent to amend or revoke this trust at any time by delivering to the Trustees a written instrument signed and acknowledged by the Grantor. Upon the Trustees' receipt of an instrument of revocation this trust shall terminate and the Trustees shall distribute to the Grantor or his designee the property remaining in trust less such charges, taxes, and assessments as may be properly charged to or assessed upon such property. The Grantor's receipt shall be a full discharge of the Trustees.

## ARTICLE 10   EFFECTIVE DATE OF CHANGES

If at any time the Trustees shall hold title to real estate or any interest therein, other than through a nominee, this instrument and any instrument evidencing any resignation, removal, appointment, acceptance, amendment or revocation shall be recorded, if possible, in the registry of deeds for the county or district where such real estate is situated. As long as the Trustees shall hold such title, any such change shall take effect when the instrument evidencing such change is so recorded. If such recording is not possible, the change shall take effect upon compliance with the applicable provisions of Article 8 or Article 9. Nothing contained herein shall prohibit the Trustees from holding title to real property in nominee form.

## ARTICLE 11   PROVISIONS RELATING TO POLICIES OF LIFE INSURANCE

11.1   The Grantor may sell, assign, or hypothecate any or all policies of insurance transferred to or payable to the Trustees and may exercise any option or privilege granted by said policies, including the right to change the beneficiaries of any policy; to borrow any sum from the insurer or from any individual, partnership, corporation or association, pledging any or all of said policies as security therefor; and to receive all payments, dividends, surrender values, benefits or privileges of any kind which may accrue on account of said policies. The

19

Grantor may inspect and withdraw any or all of said policies upon written request to the Trustees, and the Grantor's receipt shall be a full discharge of the Trustees for the delivery of any such policy. The Trustees shall assent to or join in the execution of any instrument presented to them by the Grantor necessary to exercise the rights herein reserved.

11.2    No insurance company shall be responsible for the application of any money or property transferred to the Trustees hereunder.

11.3    The Trustees shall use their best efforts to collect all sums payable to them under or by virtue of the provisions of any insurance policy whenever any such policy shall to the knowledge of the Trustees have matured, but they shall not be required to initiate any legal proceedings or to incur any expense until indemnified to their satisfaction. Except as herein specified, the Trustees shall have no responsibility for such policies, for the payment of premiums thereunder, or for any action required to keep such policies in force.

ARTICLE 12   <u>GOVERNING LAW, PRESUMPTIONS, DEFINITIONS AND TITLES</u>

12.1    This trust shall at all times be governed, construed and administered in accordance with the laws of the Commonwealth of Massachusetts.

12.2    In the event the Grantor and his wife shall die under such circumstances that the order of their deaths cannot be determined, then for purposes of this trust it shall be presumed that the Grantor's wife survived the Grantor.

12.3    The terms "child" and "children", for purposes hereunder shall be deemed to be the following individuals only: Amin Nabhan, Adib Nabhan, Jamile Nabhan and Faye Nabhan. The term ''issue'' for purposes hereunder shall be deemed to mean the

aforementioned individuals and their issue of any degree whether by blood or adoption.

12.4    Whenever the Trustees are directed to distribute property to an individual's issue by right of representation without further definition, the property shall be divided into shares beginning with the first generation below such individual, whether or not there are members of such generation living at the time of distribution.    Subdivision of shares for successive generations shall be made in the same manner.

12.5    The incompetency of the Grantor shall be determined by the Trustees.    The mental or physical incapacity of a Trustee shall be determined by the other Trustees.    Any such determination when supported by the certificate of a disinterested physician shall be final and binding on all persons interested or relying thereon.

12.6    The donee of a special power of appointment may exercise such power only in favor of any one or more of the Grantor's issue in such amounts, proportions and manner, in trust or otherwise, as the donee designates.    Notwithstanding anything to the contrary in the preceding sentence, the donee of a special power of appointment may not exercise the same in favor of himself, his creditors, his estate or the creditors of his estate.    The exercise of a special power of appointment shall be effective only if the donee thereof exercises the same by his will and makes specific reference to the special power of appointment being exercised.

12.7    All references to the Massachusetts marital deduction and to the Massachusetts estate tax marital deduction shall mean the estate tax marital deduction available for Massachusetts purposes at the time of the Grantor's death.    All references to the Internal Revenue Code shall mean the Internal Revenue Code of 1986 or any successor Code as the same may from time to time be

21

amended.     All  references   to  estate  taxes  shall  include inheritance and other death taxes.

12.9     Whenever the context permits, the term "Trustees" shall include the Trustee or Trustees then serving hereunder, the term "executor" shall include "administrator," the use of a particular gender shall include any other gender, and references to the singular or the plural shall be interchangeable.

12.10     The titles of all Articles hereunder are inserted for reference only and do not affect the interpretation of this trust.

(end of page)

22

IN WITNESS WHEREOF, Adib Nabhan and Amin Nabhan have hereunto set their hands and seals, the day and year first above written, executing two identical copies of this instrument, each of which shall constitute an original.

_____
Adib, Nabhan, Trustee

_____
Amin Nabhan, Trustee

The forgoing instrument fully and correctly states the trust upon which the trust property is to be held.

_____
Habib Nabhan, Grantor

### COMMONWEALTH OF MASSACHUSETTS

Essex, ss                                      October 3, 1995

The personally appeared the above-named Habib Nabhan Grantor and acknowledged the foregoing to be his free act and deed,

Before me,

_____
Henry X. Hyder, III
Notary Public
My commission expires: May 29, 1998

(end of page)

23

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss                                              _October 3_ ,1995

    The personally appeared the above-named Amin Nabhan Trustee,
and acknowledged the foregoing to be his free act and deed,
    Before me,

                        Henry K. Hyder, III
                        Notary Public
                        My commission expires: May 29, 1998

## STATE OF FLORIDA

County of: Palm Beach                          _Oct_ 11 ,1995

    The personally appeared the above-named Adib Nabhan Trustee,
and acknowledged the foregoing to be his free act and deed,
    Before me,

                        Notary Public
                        My commission expires:

nabhan/revtrust.doc



DONNA PARRAMORE
MY COMMISSION # CC 420066
EXPIRES: November 9, 1998
Bonded Thru Notary Public Underwriters

24

SCHEDULE A

Cash                                    Ten Dollars ($10.00)