UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

                                    CIVIL ACTION NO.
                                    2003-CV-12426 RCL

_____
                                   )
CAREFREE PARK CORPORATION,         )
AMIN NABHAN AND JAMILE NABHAN      )
                                   )
        Plaintiffs,                )
                                   )
v.                                 )
                                   )
ADIB NABHAN                        )
                                   )
        Defendant.        )
_____)

                       **DEFENDANT'S TRIAL BRIEF**

    Defendant, Adib Nabhan, (``Defendant'' or ``Adib'') submits this trial brief in order to (1) provide the Court with a summary of the evidence that will be presented at trial; (2) explain the equitable remedies available to Adib for his claims of breach of fiduciary duty against Adib and Jamile; and (3) explain the scope of the Court's authority to order the equitable and legal relief sought by Adib.

    **I. INTRODUCTION**

    As the Court is aware, this case involves a dispute over two closely held corporations and three family trusts which own property and operate businesses in Salisbury, Massachusetts and Lake Worth, Florida.  Plaintiff Carefree Park Corporation (``Carefree'') is owned in equal one-third parts by three siblings - Plaintiffs Amin Nabhan (``Amin'') and Jamile Nabhan (``Jamile''), and Adib.  In addition to owning Carefree, Amin and Adib are co-beneficiaries and co-trustees of Adele Realty Trust.

Plaintiffs, Adib, and other members of the Nabhan family, also own or have a beneficial interest in several additional commercial and residential properties located in Salisbury, Massachusetts (``Massachusetts properties''). The Massachusetts properties are owned by various family trusts (``Nabhan family trusts''), however, Amin exerts dictatorial control over each of them. The beneficiaries of the trusts are all members of the Nabhan family.

Plaintiffs claim that Adib breached his fiduciary duty to Carefree, Amin and Jamile, when he incorporated Fun Depot, Inc. in Lake Worth, Florida and became its sole shareholder. Adib has asserted counterclaims against Carefree, Amin and Jamile for breach of fiduciary duty, conversion, accounting, quantum meriut, and unjust enrichment related to the Massachusetts properties and businesses. Adib has also alleged that Amin has breached his fiduciary duty as director of Carefree <u>and</u> as a trustee of the Adele Realty Trust and the Nabhan family trusts. Adib is seeking an accounting, compensation for Adib's monetary loss, quantum meriut, and a Court ordered buy-out of his interest in Carefree, Adele Realty Trust and the other Massachusetts properties in which Adib has a beneficial interest.

## II.  THE COURT HAS AUTHORITY TO ORDER RELIEF AGAINST AMIN NABHAN

Under Massachusetts law, the individual trustees of a trust are the ``real property in interest'' to any action concerning trust property. The trust itself is not a legal entity which can be sued directly. *See, e.g.*, *Morrison v. Lennett*, 415 Mass. 857, 859-60 (1993) (*citing* M.G.L.A. c. 182 § § 1,6); *Swenson v.*

2

*Horgan*, 341 Mass. 153, 154 (1960). Because no claims against any of the Nabhan family trusts could have been maintained, the trusts were, rightly, not named as parties. *Id*.[1]

In his Answer and Counterclaims to Plaintiffs' First Amended Complaint (``the Answer and Counterclaims''), Adib specifically alleged that Amin breached his fiduciary duties as a <u>trustee</u>. For example, Count IV of the Answer and Counterclaims spells out that Amin breached his fiduciary duty to Adib ``<u>as trustee</u>'' of the Adele Realty Trust. *See* Adib's Answer and Counterclaims, p. 7, ¶27. Similarly, Amin is alleged to have converted the assets of Adele Realty Trust (*see* the Answer and Counterclaims, p. 8, ¶36-37). Moreover, the relief sought by Adib was aimed specifically at obtaining an accounting from the Adele Realty Trust as well as from Amin personally (*see* the Answer and Counterclaims, p. 8, ¶39). Therefore, the plain language of Adib's counterclaims makes it clear that Amin is being sued both individually and in his capacity as trustee of the Nabhan family trusts.[2]

---

[1] Each of the Nabhan trusts qualifies as a ``Massachusetts trust'' or a ``nominee trust.'' ``Massachusetts trusts'' or ``nominee trusts'' are forms of business organizations in which property is conveyed to trustees and managed for the benefit of beneficiaries. *See, e.g., Hecht v. Malley*, 265 U.S. 144 (1924); *Johnson v. Holiday Inns, Inc.*, 595 F.2d 890, 893 (1st Cir. 1979) (nominee trust is ``an entity created for the purpose of holding legal title to property''). Unlike in a ``true trust, the trustees of a nominee trust have no power, as such, to act in respect of the trust property, but may only act at the direction of ... the beneficiaries." *See Morrison v. Lennett*, 415 Mass. at 860 (*citing* Birnbaum, *The Nominee Trust in Massachusetts Real Estate Practice*, 60 Mass.L.Q. 364, 365 (1976)).

[2] Notably, Amin is either a co-trustee or the only trustee of all of the Nabhan family trusts. As such, every trustee of every trust at issue in this case is named as a party.

3

Moreover, there is no doubt that Amin has understood since the beginning of this lawsuit that the claims against him included allegations that he breached his fiduciary duty as trustee of the Nabhan family trusts.[3]  For example, Amin responded to Adib's deposition subpoena of the Adele Realty Trust and testified on behalf of the trust in his capacity as trustee. Similarly, Amin signed and certified as ``trustee'' of Adele Realty Trust that the documents produced by the trust were true, accurate and complete.  Further, it was clear from the Joint Pre-Trial Memorandum filed by the parties on November 14, 2005 that Adib's claims against Amin concerned his breach of fiduciary duty as a director of Carefree <u>and</u> as a trustee of the Nabhan family trusts.

Because the pleadings specify that Amin is being sued in his capacity as a trustee, the Court has the authority to direct Amin to award Adib the equitable and legal relief that Adib seeks. However, if the Court believes that Defendant needs to provide greater specificity about the capacity in which Amin is being sued and/or which trusts are at issue, it is well within the Court's discretion to allow Adib to amend his counterclaims to

---

[3]  Plaintiffs' contention that all of the beneficiaries of the Nabhan family trusts, including Mary Nabhan and Faye Nabhan, must be parties to this litigation is completely without merit.  Normally a suit against a trustee for breach of fiduciary duty is brought by a beneficiary or another trustee.  If there are several beneficiaries to a trust, any one of them can maintain a suit against a trustee.  There is no need for all of the beneficiaries to be named as parties. *See, e.g.*, Rest. 2d. Trusts § 200.

provide greater specificity about those issues even after the close of evidence to conform to the evidence.[4]

In this case, the capacity in which Amin is being sued and/or identifying each of the Nabhan family trusts at issue, has already been accomplished in the Pre-Trial Memorandum and the pleadings surrounding the plaintiff's Motion in Limine to Exclude the Testimony of John Peterson.  All necessary parties are already a part of the action.  Similarly, each of the beneficiaries of the trusts (all of whom are Nahban family members and/or parties) have been on notice of Adib's counterclaims for many years.

### III. PROPERTIES AT ISSUE

#### i.    Carefree Park Corporation

Carefree was formed in 1971 as a C Corporation.  Initially, shares in Carefree were owned in equal one-fourth parts by Amin, Adib, Louis Nabhan and George Nabhan.[5]  Since 1995, Carefree has been owned in equal one-third parts by Amin, Jamile and Adib.  Up until November 18, 2003 (one month after this lawsuit was filed), Amin, Jamile and Adib were each directors of Carefree.[6]

---

[4] Fed.R.Civ.P. 15(b) states, in relevant part:

> ``When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. <u>Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time</u>, even after judgment; but failure so to amend does not affect the result of the trial of these issues (emphasis added).''

[5] Amin, Jamile and Adib's siblings, Louis Nabhan and George Nabhan, are not parties to this action.

[6] Plaintiffs filed their initial Complaint on October 8, 2003.

5

However, as part of Plaintiffs' ongoing effort to freeze-out Adib, on November 18, 2003, Amin and Jamile voted to remove Adib as a director.

Carefree is the owner of property located at 11 Atlantic Avenue (valued by Adib's real estate expert at $1,050,000) in Salisbury, Massachusetts.  A six-unit residential apartment building, which is also owned by Carefree, sits upon the property.  In addition to the 11 Atlantic Avenue property, Carefree is the owner of the property in Lake Worth, Florida where Fun Depot, Inc. operates.

### ii.   Fun Depot, Inc.

In 1984, Carefree acquired a parcel of real estate in Lake Worth, Florida (``Lake Worth property'').  In 1988, when the Lake Worth property faced imminent foreclosure, Adib moved to Florida to manage it.  At the point that Adib moved to Florida, Amin and Jamile remained in Massachusetts to manage Carefree and the other Massachusetts properties.

In 1988, when Adib first moved to Florida, only a vacant warehouse existed on the Lake Worth property.  Soon after his arrival, Adib began operating a small arcade and game room on a portion of the vacant warehouse and named it Fun Depot.  The remainder of the warehouse on the Lake Worth property was eventually developed by Adib and then leased to commercial tenants.

On February 14, 1996, with Amin's full knowledge and consent, Adib incorporated Fun Depot as a Sub-Chapter S corporation as Fun Depot, Inc. (``Fun Depot''). Prior to incorporating Fun Depot, Amin and Adib had a detailed discussion in which it was agreed upon that Adib would be Fun Depot's sole shareholder. Notably, despite the fact that, in 1996, seven years before filing the Complaint in this action, Amin was put on notice that Adib had formed and incorporated Fun Depot and that he was the sole owner thereof, Carefree took no action prior to the filing of its Complaint on October 8, 2003, long after the applicable three-year statute of limitations governing claims for breach fiduciary duty and conversion had elapsed. Carefree's claims for breach of fiduciary duty and conversion are barred by the three-year statute of limitations and Plaintiffs' Complaint was untimely filed.

In 1997, construction of a 14,000 square foot building was completed. Thereafter, in 2000, construction of an additional 16,000 square foot addition was also completed. Fun Depot, Inc. entirely paid for the 2000 addition and contributed $124,000 towards the construction of the building in 1997. While Carefree owned the Lake Worth property, and in fact collected rent from Adib for Fun Depot, the profits and expenses relating to the game room, arcade, go-carts and batting cages were reported to Fun Depot.

Since the time that Adib moved to Florida in 1988, he has managed the Lake Worth property by collecting rent and operating income from tenants (rent which he handed over to Carefree),

7

negotiating with tenants and prospective tenants, overseeing payment of operating expenses, physically maintaining the property and overseeing repairs and build-outs.  By contrast, neither Amin nor Jamile have provided Adib with any assistance operating or managing Fun Depot.

### iii. Adele Realty Trust

The Adele Realty Trust was created in 1991.  Amin and Adib are the sole co-beneficiaries and co-trustees of Adele Realty Trust.  Adele Realty Trust owns several properties in Massachusetts including:  (1) 6 Ocean Front South (valued by Adib's real estate expert at $750,000); (2) 20 Ocean Front South (valued by Adib's real estate expert at 3,000,000); (3) 14 Central Avenue;[7] and (4) 18 Central Avenue (the combined properties at 14-28 Central Avenue have been valued by Adib's real estate expert at $4,500,000).  A game room called Carefree Arcade, which is owned and operated by Carousel Lounge, Inc., is located on the property at 6 Ocean Front South.

### iv.  Habib Nabhan Nominee Trust and the Mary Nabhan Nominee Trust

The Habib Nabhan Nominee Trust (``Habib Nabhan Trust'') and the Mary Nabhan Nominee Trust (``Mary Nabhan Trust'') were both

---

[7] Throughout this litigation, Amin has consistently represented that Adele Realty Trust owns the land at 14 Central Avenue.  For example, Amin stated that Adele Realty Trust owns 14 Central Avenue in his interrogatory responses and testified as such at his deposition.  Further, in March of 1999, Amin signed an Amended Option and Agreement of Sale with Harvey's Casino Resorts wherein he represented to Harvey's that Adele Realty Trust owned 14 Central Avenue.  Recently, however, Amin has suggested that ownership of 14 Central Avenue passed to him through intestate succession from his biological aunt, Adele Nabhan.  Amin is not only wrong about this fact (Adele had a will and several members of the Nabhan family, including Adib, were beneficiaries), but he is judicially estopped from arguing that Adele Realty Trust does not own 14 Central Avenue.

created on October 3, 1995. The co-trustees of the Habib Nabhan Trust are Amin and Adib. The Habib Nabhan Trust owns the properties located at 19 Central Avenue where Jamile lives (valued by Adib's real estate expert at $450,000) and 28 Central Avenue. The beneficiaries of the Habib Nabhan Trust (through the Habib Nabhan Revocable Trust) are Amin (25%), Jamile (25%), Adib (25%) and Faye Nabhan (25%).

Up until 2005, Amin and Adib were also co-trustees of the Mary Nabhan Trust. The Mary Nabhan Trust owns properties located at 22 and 24 Central Avenue. The beneficiary of the Mary Nabhan Trust is the Mary Nabhan Revocable Trust. In 2005, Amin convinced his mother to remove Adib as a beneficiary and trustee of the Mary Nabhan Trust leaving Amin, Jamile and Faye Nabhan as the beneficiaries.[8]

## IV. SUMMARY OF ANTICIPATED EVIDENCE CONCERNING PLAINTIFFS' BREACH OF FIDUCIARY DUTY

### i. Rental Income From The Property Located At 11 Atlantic Avenue Was Misappropriated and Converted By Amin and Jamile

There is a six-unit residential building located on the property on 11 Atlantic Avenue. The building, as well as the land on which it sits, is owned by Carefree.

Between 1995-2003, the residential building at 11 Atlantic Avenue remained fully occupied. However, the rental income reported in Carefree's tax returns does not account for even partial occupancy over those years. Moreover, Adib has not

---

[8] Notably, Amin's removal of Adib as a trustee and beneficiary of the Mary Nabhan Trust is further evidence of his effort to freeze-out Adib.

received any distribution of money from Amin or Jamile for the rents collected from the building. Instead, Amin and Jamile have used all of the assets from the rental income to benefit themselves without making any distributions to Adib. Further, because Adib was removed as a director of Carefree in 2001, Amin and Jamile have wrongfully deprived Adib of any meaningful participation in the management of the company.

### ii. Carefree Made Payments On Loans For Property That It Does Not Own

Over the past several years (and without Adib's knowledge or consent), Carefree has made payments on loans for properties that it does not own. These payments solely benefited Amin and Jamile.

For example, Carefree paid loans as well as the mortgage on Jamile's residence (19 Central Avenue), despite the fact that it is owned by the Habib Nabhan Trust (of which Adib is a beneficiary). Similarly, Amin used Carefree's money to pay loans on his <u>personal</u> residence. Amin has also deposited approximately $200,000 of Carefree's funds into his personal savings account.

### iii. Amin Has Not Distributed The Proceeds From The Parking Lot At 14-28 Central Avenue

The parcels of land that comprise the parking lot at 14-28 Central Avenue are owned by the Adele Realty Trust (14 and 18 Central Avenue), the Habib Nabhan Trust (28 Central Avenue), and the Mary Nabhan Trust (22 and 24 Central Avenue). Adele Realty Trust owns the largest percentage of the property.

Despite the fact that the parking lot is highly successful, Adib has never received a distribution of his share of the proceeds nor has he been provided with an accounting of those cash proceeds. Amin, however, has shared the parking lot proceeds with Jamile (who is not a trustee or beneficiary of the Adele Realty Trust) and has deposited the rest of the money into his personal bank account. In addition, Amin has mismanaged the assets of Adele Realty Trust by failing to seek rent from the tenants of other property the Trust owns at 20 Ocean Front and 6 Ocean Front.

### iv. Harvey's Casino And Resorts' Payment

On March 19, 1999, the Adele Realty Trust received a $168,000 check from Harvey's Casino and Resorts (``Harvey's'') as payment for Harvey's option to purchase the land owned by Adele Realty Trust at 6 Ocean Front South and 20 Ocean Front South. Adib did not receive any distribution from the $168,000 received from Harvey's. Instead, with the money received from Harvey's, without Adib's knowledge or consent, Amin paid property taxes on properties not owned by the Adele Realty Trust; invested $35,362 (losing most of the money in the stock market and pocketing the portion not lost); and used the remainder amount of $26,362 to pay for his son's college tuition.

### v. Amin and Jamile Took Actions Designed To Freeze Out Adib

Despite the fact that Adib is a one-third owner and formerly a director of Carefree, Plaintiffs have refused Adib access to basic information about the company, including failing to provide

any financial statements after 2002.  Moreover, Plaintiffs froze-out Adib from all decision making in Carefree and then eventually voted to remove him as a director in 2003.  Similarly, Amin froze-out Adib when he convinced their mother, Mary Nabhan, to remove Adib as a trustee and beneficiary of the Mary Nabhan Trust.  Plaintiffs have also failed to distribute to Adib any of the profits from Carefree, Adele Realty Trust, or any of the other Massachusetts properties that Adib has an interest in.  Instead, Plaintiffs inappropriately retained all monies available for distribution and kept it for themselves.

## V.  EQUITABLE LEGAL REMEDIES AVAILABLE FOR BREACH OF FIDUCIARY DUTY

Many of the legal issues at trial will center around the duty of shareholders in a closely-held corporation and trust of ``utmost good faith and loyalty'' to each other.  *See, e.g.*, *Medical Air Technology Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 19-20 (1st Cir. 2002); *Donahue v. Rodd Electrotype Co. of N.E., Inc.*, 367 Mass. 578, 593 (1975).  The duties announced in *Donahue* include that the controlling group may not, consistent with its duty to the minority shareholder, utilize its control of the corporation to obtain special advantages and disproportionate benefits from its share ownership.  *Id*.  That is just what Amin and Jamile did by misappropriating and converting funds owed to Adib through his interests in Carefree, the Adele Realty Trust, the Habib Nabhan Trust and the Mary Nabhan Trust.  Moreover, the actions taken by Amin and Jamile were purposefully designed to freeze-out Adib and effectively frustrate his purposes in the

corporate venture and denying him an equal return on his investment. *See Wilkes v. Springside Nursing Home, Inc.*, 370 Mass. 842, 850 (1976).

The Court has the power to grant equitable relief when there has been a violation of fiduciary duty and rescission may be ordered to avoid unjust enrichment of the fiduciary at the expense of a beneficiary. *See, e.g., Broomfield v. Kosow*, 349 Mass. 749, 758, (1965); *Jose v. Lyman*, 316 Mass. 271, 278, 55 N.E.2d 433 (1944). A court may also reform an agreement to correct wrongdoing. *See, e.g., Elias Bros. Restaurants v. Acorn Enters., Inc.*, 831 F.Supp. 920, 927 (D. Mass. 1993).

An appropriate measure of damages for improperly freezing out a minority shareholder is the minority shareholder's proportionate share of the total fair value of the business. *Keating v. Keating*, 17 Mass. Law. Rptr. 241, 251, *available in* 2003 Mass. Super. LEXIS 472 (Oct. 3, 2003 Chernoff, J.); *see also Demoulas v. Demoulas*, 428 Mass. 555, 580 (1998). A Court ordered buy-out is <u>not</u> the same as a Court ordered partition of the properties. Adib's request for a Court ordered buy-out anticipates that the Massachusetts properties will be valued (which Adib's expert has already done) and that Adib will be paid <u>in dollars</u> the value of the percentage of his interests in the Massachusetts properties.

In a large public corporation, the oppressed minority can sell her stock in order to extricate some of her invested capital. This market is not available for shares in a close corporation. The minority shareholders may be trapped in a

13

disadvantaged situation.  *See, e.g., Orsi v. Sunshine Art Studios, Inc.*, 874 F.Supp. 471, 475 *(*D. Mass. 1995) *(citing Donahue*, 367 Mass. at 592); *In re Seagroatt Floral Co.*, 576 N.Y.S.2d 831 (1991) (recognizing that an ordered buy-out of stock at fair value is an appropriate remedy in a closely held corporation for the oppressive acts of the majority, when there is no ready market for the corporation's shares).  Thus, the only fair and practical remedy for Adib in this breach of fiduciary duty case is a Court-ordered buy-out of Adib's interests in Carefree Park and the Trusts at the fair market value as determined by the independent valuation.  *See Keating*, 2003 Mass. Super. at *51-54.

                              ADIB NABHAN

                              By his attorneys,

                              /s/ Ian Crawford
                              Ian Crawford (BBO#544475)
                              Todd & Weld LLP
                              28 State Street
                              Boston, MA  02109
                              (617) 720-2626
                              icrawford@toddweld.com

                              Doyle C. Valley, Esquire
                              Morrison Mahoney LLP
                              250 Summer Street
                              Boston, MA  02210
                              (617) 737-8846
                              dvalley@morrisonmahoney.com

DATED:  February 21, 2006

CERTIFICATE OF SERVICE

    I, Doyle C. Valley, hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.  I further certify that a copy of this document was hand-served upon plaintiffs' counsel this day.

Date:  February 21, 2006       /s/ Doyle C. Valley_____