UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
2003-CV-12426 RCL

```
_____
                              )
CAREFREE PARK CORPORATION,    )
AMIN NABHAN AND JAMILE NABHAN )
                              )
        Plaintiffs,           )
                              )
v.                            )
                              )
ADIB NABHAN                   )
                              )
        Defendant.            )
_____)
```

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A DIRECTED VERDIT**

Defendant, Adib Nabhan, ("Defendant" or "Adib") submits this opposition to Plaintiffs Carefree Park Corporation, Amin Nabhan ("Amin") and Jamile Nabhan's ("Jamile" and collectively "Plaintffs") Motion for a Directed Verdict ("Motion"). Plaintiffs have moved for a directed verdict on each of Defendant's remaining counterclaims and, in so doing, have grossly mischaracterized and oversimplified the factual evidence presented at trial. Plaintiffs' Motion should be denied summarily by the Court because ample evidence has been presented on which the jury could properly render a verdict for Adib on each of his counterclaims.

**I.  Plaintiffs' Motion Fails to Meet the Standard for a Directed Verdict**

Under Federal Rule of Civil Procedure 50(a), the trial judge may only direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *See, e.g.,*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Brady v. Southern R. Co.*, 320 U.S. 476, 479-480 (1943); *Potterton v. Porter*, 810 F.2d 333, 334 (1st Cir. 1987). If reasonable minds could differ as to the import of the evidence, a verdict should not be directed. *See, e.g., Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1949). Adib has presented substantial evidence proving each of his claims for breach of fiduciary duty, unjust enrichment and, although the jury is not being charged as such, for quantum meruit.

## II. Breach of Fiduciary Duty Claims Against Amin and Jamile

Plaintiffs erroneously contend that Adib cannot obtain damages for his breach of fiduciary duty claims against Amin and Jamile and, further, that Adib's claims are derivative in nature. *See* Plaintiffs' Motion at 1-3. Contrary to Plaintiffs' contention, Adib has presented ample evidence that, while Amin and Jamile were co-equal shareholders in the close corporation, the Plaintiffs committed egregious breaches of fiduciary duty owed to Adib, individually, by *inter alia*: (1) misappropriating Carefree's money for their own benefit; (2) failing to pay Adib any distributions or salary; (3) freezing him out as a corporate director; (4) obtaining a new mortgage of $250,000 to the derogation of Adib's interests; (5) using Carefree Park's money to pay the mortgage on Jamile's home; and (6) using Carefree Park's money to pay $1,800 per month toward the mortgage on Amin's home. A verdict as to Adib's breach of fiduciary duty claim should not be directed because a jury could, based upon the

2

evidence presented at trial, justifiably award damages in Adib's favor.

Moreover, and despite Plaintiffs' assertion to the contrary, Adib's claims are not derivative in nature. Adib is a minority shareholder in a close corporation who has been removed as a director and frozen-out of Carefree Park entirely. In Massachusetts, it has been acknowledged that with close corporations, "[t]he two concepts [direct and derivative actions] tend to merge … when a shareholder's alleged self-aggrandizement, if true, hurts both the corporation and the interests of the other stockholders." *See, e.g. Dynan v. Fritz*, 400 Mass. 230, 243 n. 17 (1987). For this reason, allegations of breach of fiduciary duty against shareholders in a close corporation are treated as direct claims.[1] As such, Adib's claims are not derivative in nature, have been correctly pled as direct claims, and a directed verdict is unwarranted.

---

[1] For example, in *Horton v. Benjamin*, No. 92-06697 (Mass. Super. – Middlesex Nov. 26, 1997) (Neel, J.), reprinted at 7 Mass. L. Rep. 700, 1997 Mass. Super. LEXIS 85, minority shareholders brought a direct action against majority stockholders, alleging breach of fiduciary duty. The defendants asserted that the action could only be brought as a derivative claim. The Court disagreed, observing that the allegations contained both derivative and direct elements, and noted that "'the rule of corporate recovery for wrongs to the corporation may not be inflexible,' where 'direct relief to the complaining shareholder was permitted in order 'more justly [to] apportion the burden of recovery among the wrongdoers.'" *Id.* at * 64 (citation omitted); *see also Sugarman v. Sugarman*, 797 F.2d 3, 14 (1st Cir. 1986) (claim for corporate "freeze-out" of minority shareholders sounds in tort for breach of fiduciary duty based upon personal injury for purposes of calculating interest); *Donohue v. Rodd, Electrotype Co. of New England, Inc.*, 367 Mass. 578, 579 n. 4 (1975) (treating an action by a minority shareholder against the majority as direct claims); *Tracy v. Curtis*, 10 Mass. App. Ct. 10, 25-26 (1980) (finding error where plaintiff minority shareholders were forced by trial court to elect between direct and derivative actions prior to trial).

### III. Breach of Fiduciary Duty Against Amin As Trustee

Plaintiffs make the baseless contention that Adib has not presented evidence that Amin stole and misappropriated money from the Adele Realty Trust as well as the other Nabhan realty trusts.[2] See Plaintiffs' Motion at 1-3. Plaintiffs ignore the great weight of the evidence to the contrary. For example, Adib presented evidence that Amin misappropriated $168,800 from the money paid by Harvey's Casino Resorts for the option on the parking lot and used the money for his own benefit. The jury could rightly find that Adib, as co-beneficiary of the trust, is entitled to half of the Harvey's money ($84,000). In addition, Amin and Jamile's accountant testified that Amin and Jamile each declared proceeds from the parking lot which is owned, in part, by the Adele Realty Trust, on their 2000-2004 tax returns. Unlike his brother and sister, Adib has never received distributions of parking lot proceeds. Given that evidence, the jury could award Adib or the trust damages for Amin's breaches of his fiduciary duty.

---

[2] Plaintiffs' contention that Adib's claims for breach of fiduciary duty against Amin must be asserted on behalf of the trust itself is completely baseless. See Plaintiffs' Motion at 3. It is well-settled that a beneficiary of a trust can sue for breach of fiduciary duty. Moreover, Adib and Amin are the only co-beneficiaries of the trust. While it is unnecessary that every beneficiary be a party in an action for breach of fiduciary, in any event it would be impossible in this case as the two co-trustees and co-beneficiaries are adversarial to one another.

### IV. Quantum Unjust and Meriut[3] Enrichment Against Carefree Park

Plaintiffs contend that Adib has not presented evidence to support his claims for unjust enrichment. *See* Plaintiffs' Motion at 3-5. Plaintiffs' contention misses the mark for at least two reasons. First, Plaintiffs, once again, fail to realize that Adib's claims for unjust enrichment sound in <u>equity</u> and not in law. Secondly, Adib has presented substantial evidence showing that Carefree Park will be unjustly enriched if: (1) Adib is not reimbursed for the services that he has performed without any compensation for Carefree Park's benefit; (2) the money that he has personally invested in Carefree Park is not reimbursed to him; and (3) he does not receive reimbursement for the value of the improvements made by Fun Depot, Inc., to the Lake Worth property.

Unjust enrichment is an equitable claim. Under the doctrine of unjust enrichment, Adib is seeking restitution of the benefits conferred upon Carefree Park because retention of those benefits would be unconscionable. *See, e.g., Micromuse, Inc. et al. v. Micromuse, PLC, et al.*, 304 F.Supp.2d 202, 209 n. 8 (D.Mass. 2004)(citing the standard for unjust enrichment). The jury has been presented with evidence of the services that Adib provided

---

[3] Plaintiffs' Motion addresses Adib's claim for "quantum meriut" despite the fact the Court is not charging the jury with quantum meriut. *See* Plaintiffs' Motion at 3-4. The Court is, in fact, charging the jury with a claim for unjust enrichment for the services Adib performed for Carefree Park as well as the personal funds he expended and the improvements that he made to the building on the Lake Worth, Florida property.

5

to Carefree Park (without ever receiving compensation for them), including collecting rent and operating income, negotiating with tenants and prospective tenants, overseeing payment of operating expenses, physically maintaining the property and overseeing repairs and build-outs. As such, the jury could award damages in the amount that Carefree Park would be unjustly enriched if Adib were not to receive restitution from it. In fact, the Court's jury instruction on this point correctly instructs as follows:

> "If you find that Adib did provide these services without receiving compensation, and that under all of the circumstances it would be unjust for Carefree Park to retain the benefit of these services without compensating him, <u>then Adib is entitled to damages in the amount by which Carefree Park has been unjustly enriched by receiving the benefit of his services without compensation</u> (emphasis added)."

See Jury Instructions, p. 20.

Furthermore, Adib has provided concrete evidence of the amounts of money that he personally expended in building and improving the building on the Lake Worth property. For example, evidence has been presented to the jury that shows that approximately $300,000 of Adib's personal funds were used to purchase the property and pay the mortgage and the expenses on the property until Carefree Park was able to do so itself. Evidence has also shown that Fun Depot contributed over $1,000,000 of the arcade's revenue to Carefree Park. Additionally, evidence was presented that Adib used over $600,000 of Fun Depot's income to build additions and improve the building on Carefree Park's

6

property and maintain the property itself. With this evidence in mind, a juror could rightly decide that Carefree would be unjustly enriched if Adib were not reimbursed for the money that he expended for Carefree Park's benefit.

Lastly, Plaintiffs' Motion continues to misstate Adib's position concerning restitution for the improvements that he made to the Lake Worth property. Plaintiffs argue, and Adib does not contest, that based on the law of fixtures (in Landlord and Tenant) the landowner <u>owns</u> permanent improvements, such as buildings, which tenants affix to real estate. However, Plaintiffs' reliance upon the law of fixtures in support of their position that Adib should not obtain <u>equitable</u> relief for his unjust enrichment claim is entirely erroneous. Adib is not asking that the jury find that he <u>owns</u> the building on the Lake Worth property. Adib is merely requesting restitution for the improvements that he made to the building. The law is clear that Adib can obtain the funds that he expended in improving and enriching the property. *See, e.g., Dellagrotta v. Dellagrotta*, 874 A.2d 101, 114 (R.I. 2005) (awarding defendant the amount of the costs of her improvement as damages for her unjust enrichment counterclaim); 49 Am.Jur. 2d, Landlord & Tenant § 904. As such, a request for a directed verdict on Adib's unjust enrichment claim is wholly unjustified.

## V. CONCLUSION

For all of the foregoing reasons stated above, the Plaintiffs' Motion for a Directed Verdict should be denied.

> ADIB NABHAN
>
> By his attorneys,
>
> /s/ Ian Crawford
> Ian Crawford (BBO#544475)
> Todd & Weld LLP
> 28 State Street
> Boston, MA  02109
> (617) 720-2626
> icrawford@toddweld.com
>
> Doyle C. Valley, Esquire
> Morrison Mahoney LLP
> 250 Summer Street
> Boston, MA  02210
> (617) 737-8846
> dvalley@morrisonmahoney.com

DATED:  March 2, 2006

CERTIFICATE OF SERVICE

I, Ian Crawford, hereby certify that this document has been filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Date:  March 2, 2006			/s/ Ian Crawford