UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CAREFREE PARK CORPORATION, AMIN
NABHAN and JAMILE NABHAN,

          Plaintiffs,

v.                                                                                      Civil Action No. 2003-CV-12426 RCL

ADIB NABHAN,

          Defendant.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A NEW TRIAL ON THE ISSUE OF WHETHER PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs Carefree Park Corporation ("Carefree Park"), Amin Nabhan ("Amin") and Jamile Nabhan ("Jamile") (collectively, "Plaintiffs") submit this memorandum in support of their motion for a new trial on the single issue of whether their claims for breach of fiduciary duty against defendant Adib Nabhan ("Adib") are barred by the applicable statute of limitations. A new trial is warranted because: 1) the Court improperly instructed the jury at the original trial of this matter that knowledge of Adib's breach on the part of the Plaintiffs' accountant was sufficient to start the statute of limitations running; and 2) even if the jury instruction had been correct, the evidence presented at trial with regard to the statute of limitations was wholly insufficient to support the jury's verdict. Plaintiffs are, therefore, entitled to a new trial on the limitations issue as a matter both of fact and of law.

**I.**     **THE COURT'S INSTRUCTION REGARDING AGENCY AND THE JURY'S VERDICT.**

Plaintiffs brought this action alleging, inter alia, that Adib had breached his fiduciary

BOS1580955.1

duty as a director and shareholder of Carefree Park by misappropriating a corporate opportunity belonging to Carefree Park, namely the Fun Depot business in Florida, and by taking excessive compensation from the Fun Depot business in the form of salary and Subchapter S distributions. Adib interposed the statute of limitations as a defense. In its instructions to the jury, the Court correctly stated that:

> In a claim for a breach of a fiduciary duty, the statute of limitations does not begin to run until both the fiduciary has breached his duty and the corporation actually knows about this breach. In other words, the corporation has three years from the day it first finds out about the wrongdoing to file a suit. If you determine that Adib breached a fiduciary duty to Carefree Park, and that the corporation actually knew of this wrongdoing before October 3, 2000, then the plaintiffs' claim is barred by the statute of limitations.

The Court went on to state, however, that:

> Corporations can only operate through agents. An agent is someone who acts on behalf of the corporation. Under the circumstances I will explain momentarily, knowledge acquired by an agent of the corporation is knowledge acquired by the corporation itself. The defendant claims, among other things, that Michael LeClerc, Carefree Park's accountant, was an authorized agent of Carefree Park and that he knew before October 3, 2000, that Adib had incorporated Fun Depot as a Subchapter-S corporation of which he was the only shareholder. If you find that Mr. LeClerc was an agent of Carefree Park Corporation, that it was within the scope of the authority granted to him by Carefree Park and important to the work he was authorized to do for Carefree Park that he understand the ownership and tax status of Fun Depot; and that he knew before October 3, 2000, that Fun Depot was incorporated by Adib as a Subchapter-S corporation of which Adib was the sole shareholder, Carefree Park is deemed to have that knowledge.

In response to the questions on the Verdict Form, the jury found, first, that Adib had breached his fiduciary duty by improperly taking for himself the corporate opportunity represented by Fun Depot and had, in addition, taken $350,000 in excessive compensation. It went on to find, however, that Adib was not liable to the Plaintiffs because the Plaintiffs' claim was barred by the statute of limitations.

Because the Court had instructed the jury that it could not find a breach of fiduciary duty if Adib's taking of the corporate opportunity was fully disclosed, it necessarily follows that the jury did not believe Adib's testimony that he and Amin and Jamile had agreed in 1996 that Adib would be the sole shareholder of Fun Depot. As a result, the only possible basis for the jury's verdict on the statute of limitations, was its apparent conclusion that Michael LeClerc ("Leclerc"), acting as an agent of Carefree Park, learned prior to October 2000 that Adib had taken the Fun Depot business for himself and that the other prerequisites for charging the Plaintiffs with that knowledge were satisfied. As is explained below, that conclusion and the jury's verdict were not supported by sufficient evidence and rested on incorrect legal principles. Accordingly, given the jury's other findings, Plaintiffs are entitled either to judgment as a matter of law or to a new trial before a properly instructed jury on the sole issue of whether their claims are barred by the disclosures purportedly made to LeClerc.

## II.    THE JURY INSTRUCTION WAS WRONG AS A MATTER OF LAW.

Massachusetts law, which applies here, imposes an onerous burden on fiduciaries seeking to avail themselves of the statute of limitations as a defense to the breach of their duties. "Breach of fiduciary duty is a cause of action in tort that is governed by G.L. c. 260, § 2A, which provides for a three-year period of limitation." *Lattuca v. Robsham*, 442 Mass. 205, 213 (2004). The running of the statute is governed by the repudiation of trust doctrine, which "applies to the conduct of corporate officers and directors who stand in a fiduciary relationship toward the corporation." *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 518 (1997). The Massachusetts Supreme Judicial Court has consistently held that, pursuant to the repudiation of trust doctrine, "a cause of action does not accrue until the trustee repudiates the trust *and* the beneficiary has actual knowledge of that repudiation." *Id.* (emphasis in original) "[A] cause of action for breach of fiduciary duty does not accrue until the beneficiary has actual knowledge of

3

the fiduciary's breach. <u>Constructive knowledge is insufficient</u>." *Lattuca*, 442 Mass. at 213 (emphasis added).

The actual knowledge standard is a high one. In *Doe v. Harbor Schools, Inc.*, 63 Mass. App. Ct. 337 (2005), *rev'd on other grounds*, *Doe v. Harbor Schools, Inc.*, 446 Mass. 245 (2006), the Massachusetts Appeals Court stated that, "Even in the face of apparent harm . . . the beneficiary is entitled to rely on the fiduciary's obligation to act in her best interests <u>until the beneficiary actually knows that the fiduciary has violated his obligations</u> or the fiduciary expressly and unequivocally communicates to the beneficiary his repudiation or abandonment of those obligations." *Doe*, 63 Mass. App. Ct. at 350 (emphasis added). On review, the Supreme Judicial Court agreed with the Appeals Court that an actual knowledge standard applies, although it found that the knowledge required is only knowledge of the facts giving rise to the injury and not knowledge that the injury has caused legal harm. *Doe*, 446 Mass. at 248. Consistent with its extensive prior jurisprudence on the subject, the Supreme Judicial Court noted that, "Only when the beneficiary's harm at the fiduciary's hands has 'come home' to the beneficiary . . . does the limitation clock begin to run." *Id.* at 255, *citing Akin v. Warner*, 318 Mass. 669, 675 (1945).

In the corporate context, the requirement that the breach of fiduciary duty must have "come home" to the plaintiff means that "no half-hearted disclosure or partial discovery" will satisfy the corporate fiduciary's obligation to make full disclosure. *Durfee v. Durfee & Canning, Inc.*, 323 Mass. 187, 203 (1948). "As a matter of law, sotto voce indications do not fulfill a fiduciary's duty of full disclosure of self-dealing." *Geller v. Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 126 (1997).

It is well-established in Massachusetts that the knowledge that is imputed to a principal based on disclosures made to an agent is, as a matter of law, constructive knowledge. "'When an

4

agent acquires knowledge in the scope of [his] employment, the principal is . . . is held to have constructive knowledge of that information.'" *Sunrise Properties, Inc. v. Bacon, Wilson et. al*, 425 Mass. 63, 66 (1997), quoting *DeVaux v. American Home Assur. Co.*, 387 Mass. 814, 818 (1983). Because it is constructive knowledge and not actual knowledge, it is not the kind of knowledge that is required to trigger the running of the statute of limitations. It is true that, as the Court instructed the jury, corporations can only act through agents. *Sunrise Properties*, 425 Mass. at 66. Not every agent of a corporation is empowered to act on behalf of the corporation in every circumstance, however, and with regard to the running of the statue of limitations in a situation involving a breach of fiduciary duty, <u>only the actual knowledge of agents with the power to bring suit on behalf of the corporation may fairly be imputed to the corporation itself.</u> See *Harris v. Mcintyre*, 2000 Mass. Super. LEXIS 181 (Suffolk Superior Court June 27, 2000) (in determining when the statute of limitations begins to run, "the knowledge that matters for a Trust is the knowledge of those who may act on behalf of the Trust").

    In *Sunrise Properties*, a case that the Court relied upon here, the court found that the knowledge of a lawyer who was a partner and the manager of his law firm and who was aware of a possible malpractice claim against the firm should be imputed to the firm because, as the court noted, "if [the lawyer] was not the correct person to be notified by Sunrise regarding the circumstances of the malpractice allegations, then it is difficult to conceive who should have been notified. *Sunrise*, 425 Mass. at 67. Moreover, when it ultimately became necessary to notify [the insurer] that a claim had been asserted against Bacon Wilson, it was [the lawyer] who performed that task." *Id*. The agent's knowledge in *Sunrise* was only imputed to the principal because that same agent had the power and the responsibility to act on behalf of the corporation with respect to the matter at hand. The Court's instruction here erroneously omitted any

reference to whether the agent in question was empowered or required to act on behalf of the corporation and was fatally deficient for that reason.

Under the heightened standard applicable here, the self-dealing corporate fiduciary's duty of full disclosure is most emphatically not satisfied by casual and incomplete disclosures made to a purported agent of the corporation where that agent has no authority to act on the disclosure on behalf of the corporation and where -- as here -- there is no assurance that the agent will pass on the information to those who do have the power to act. In *Puritan Medical Center, Inc. v. Cashman*, 413 Mass. 167 (1992), seven doctors practicing together in a close corporation brought suit against an eighth member of the group who was the owner of the building in which they practiced and who had been systematically writing himself rent checks in excess of the amount agreed upon in the lease over a period of ten years. The evidence at trial showed that the defendant had kept most of the financial information to himself, but had provided information to the corporation's accountants, who prepared compilations of the information periodically. The accountants never provided information concerning the lease or the rent to the other directors, lease and rent issues were never discussed at directors' meetings and the only financial data sent to the other doctors related to their own income, not to the practice's expenses. *Id.* at 174. The court rejected the defendant's argument that the statute of limitations barred the action brought by the corporation, finding that the statute was tolled by his failure as a fiduciary to make full disclosure concerning the rent. *Id.* at 175. Noting the high standards imposed on shareholders in a close corporation, the Court stated that where a "fiduciary relationship exists between a plaintiff and defendant . . . mere failure to reveal information may be sufficient to constitute fraudulent conduct." *Id.* at 17. Thus, **even though the defendant had made information available to the corporation's accountants**, the Court found that the statute was tolled because the defendant, "in breach of his 'strict good faith' fiduciary duty as a shareholder in a close

6

corporation . . . did not disclose the amount of the rent to the other shareholders." *Id.* (internal citations omitted).

In *Latucca*, the court found that a fiduciary's duty of full disclosure to those to whom the duty is owed is so strict that a beneficiary of a trust could bring an action against a trustee despite the fact that a co-trustee, who was also her husband, had some knowledge of the defendant's wrongdoing which might have prompted him to launch an investigation. The Court stated that for statute of limitations purposes, "[w]e focus on what the plaintiff beneficiary actually knew, not what the trustee actually or constructively knew." *Latucca*, 442 Mass. at 213. Similarly here, the focus should be on what those with the responsibility to act on behalf of the Plaintiffs, including the plaintiff corporation, actually knew, rather than on what an accountant who had only limited authority to act on behalf of the corporation might have been able to figure out if he had pursued the clues provided to him by Adib Nabhan's accountants.

The cases cited by the Court and by Adib in his request for a jury instruction concerning agency are not to the contrary. None of them is instructive because none of them involves a fiduciary relationship and therefore none of them is relevant to the question of whether a disclosure by the agent of the fiduciary to the agent of a person to whom a duty is owed starts the running of the statute of limitations for a breach of that duty. *See, e.g., Newhall v. Posner*, 2004 U.S. Dist. LEXIS 3257 (District of Massachusetts March 4, 2004) (knowledge acquired by plaintiff's accountant sufficient to start statute of limitations running in malpractice action against another accountant); *In re Porter*, 16 B.R. 229 (Bankr. D. Mass. 1981) (knowledge of creditor's agent of filing of bankruptcy petition will be imputed to creditor for purposes of notices required under bankruptcy law) The high standards that govern the disclosure obligations of fiduciaries in Massachusetts cannot be satisfied by reliance on the garden variety agency principles stated in the cited cases.

The Court's instruction here improperly permitted the jury to find that knowledge transmitted to Carefree Park's accountant in the course of his preparation of tax returns and financial statements, knowledge that was never transmitted to Amin or Jamile or any officer or director of Carefree Park, should nevertheless be imputed to Carefree Park for the very different purpose of determining when the statute of limitations on Adib's breaches of fiduciary duty began to run. The jury relied upon that instruction as its sole basis for finding that Adib was not liable to the Plaintiffs. At a minimum, Plaintiffs are entitled as a matter of law to a new trial on the limitations issue before a properly instructed jury.[1]

### III.   THE JURY'S VERDICT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

Not only did the Court here fail to instruct the jury properly concerning the application of agency principles to this action, but the jury failed even to apply the Court's instructions as given. The Court instructed the jury that it could only find that Leclerc's knowledge concerning the ownership of Fun Depot should be imputed to the Plaintiffs if it found that it "was within the scope of the authority granted to him by Carefree Park and was important to the work he was authorized to do for Carefree Park that he understand the ownership and tax status of Fun Depot." Understanding the ownership and tax status of Fun Depot was not within the scope of Leclerc's duties as the staff accountant who prepared Carefree Park's taxes and financial statements. "Conduct of an agent is within the scope of employment if it is of the kind he is employed to perform." *Wang Lab., Inc. v. Business Incentives, Inc.*, 398 Mass. 854, 859 (1986). "The scope of employment test asks the question: is this the kind of thing that in a general way employees of this kind do in employment of this kind." *Kansallis v. Fern*, 421 Mass. 659, 666 (1996). It is clear here that Leclerc's responsibilities extended only to acquiring the

---

[1] For the reasons set forth in Plaintiffs' Memorandum In Support Of Their Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial, submitted herewith, the Court should actually enter judgment in favor of Plaintiffs in lieu of ordering a new trial.

basic understanding of Carefree Park's financial affairs, as opposed to those of Fun Depot, necessary to perform his accounting functions on behalf of Carefree Park. He did not have the authority, responsibility or professional competence to advise the corporation concerning its legal rights or to bind the corporation in any way. His testimony made that clear. Indeed, even with all of the facts concerning Fun Depot's ownership and tax status at his disposal, Leclerc had no reason to know or believe that a violation of fiduciary duty had occurred, let alone any reason to advise Amin or Carefree Park as to what their legal response to such a breach should be.[2] The constructive notice allegedly given to Leclerc, therefore, was not remotely adequate to satisfy the requirement that the facts giving rise to a claim for breach of fiduciary must have "come home" to the party injured by the breach, in this case Carefree Park.

It is also perfectly clear from Leclerc's testimony that an understanding of Fun Depot's ownership and tax status was not only not important to but totally irrelevant to his work. In the course of preparing Carefree Park's tax returns and financial statements as a staff attorney at his accounting firm, Leclerc was authorized to receive information from Fun Depot's accountant concerning payments made by Fun Depot to Carefree Park. Transcript of Testimony of Michael Leclerc, p. 6 ("Transcript"). In order to perform that limited function, it simply did not matter to Leclerc who owned Fun Depot or what Fun Depot's tax status was, any more than it was important to understand the ownership or tax status of any other payor to Carefree Park. Indeed, although Fun Depot was incorporated by Adib in 1996, Leclerc did not learn anything about its ownership or tax status until September 1999. Transcript, pp. 41-42. There is no evidence that his work on behalf of Carefree Park was affected in any way by his lack of knowledge prior to September 1999 or by his acquisition of the knowledge thereafter. Leclerc did not pass the

---

[2] This point should not be lost on the Court. There was simply no evidence to suggest that Mr. Leclerc would have any reason to think that there was anything amiss with Adib's ownership of Fun Depot. For all Mr. Leclerc knew, Amin and Jamile could have agreed to that.

9

knowledge he acquired on to Amin or Carefree Park and did not believe that it was his responsibility to do so. Transcript, p. 42. Under those circumstances, the jury cannot reasonably have found that the understanding Leclerc acquired was important to his work, or that that necessary precondition for charging Carefree Park with knowledge of that understanding was satisfied, so as to trigger the running of the limitations period. Plaintiffs are therefore entitled as a matter of fact to a new trial on the limitations issue

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a new trial on the issue of whether their claims against Adib are barred by the applicable statute of limitations should be allowed.

CAREFREE PARK CORPORATION,
AMIN NABHAN and JAMILE NABHAN,

By their attorneys,

Dated: March 31, 2006

/s/ Robert L. Kirby, Jr.
Robert L. Kirby, Jr. (BBO #550538)
Gordon M. Jones, III (BBO # 549016)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
(617) 345-1000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first class mail or electronically on March 31, 2006.

/s/ Robert L. Kirby, Jr.
Robert L. Kirby, Jr.