A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAREFREE PARK CORP., ET AL
          Plaintiff(s)

                    v.                          CIVIL ACTION NO. 03-12426-RCL

ADIB NABHAN
          Defendant(s)

## JUDGMENT IN A CIVIL CASE

LINDSAY, D.J.

X    **Jury Verdict.** This action came before the court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☐    **Decision by the Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

### IT IS ORDERED AND ADJUDGED

Judgment for the defendant, Adib Nabhan as to all counts of the First Amended Complaint. Judgment for the defendant/plaintiff-in-counterclaim Adib Nabhan on Counts I and IV of the counterclaim against the plaintiff/defendant-in-counterclaim Amin Nabhan. Amin Nabhan is to pay Carefree Park Corp. damages in the amount of $12,095.13. Judgment for the defendant/plaintiff-in-counterclaim Adib Nabhan on Count VIII of the counterclaim against the plaintiff/defendant-in-counterclaim Carefree Park Corp. Carefree Park Corp. is to pay Adib Nabhan damages in the amount of $7,392.00. Judgment for the plaintiff/defendant-in-counterclaim Jamile Nabhan on all counts of the Counterclaim.

                                        Sarah A. Thornton, Clerk

Dated:___3/23/06_____          __/s/ Lisa M. Hourihan_____
                                        ( By ) Deputy Clerk

NOTE: The post judgment interest rate effective this date is _____%.

(judgciv frm - 10/96)                              [jgm ]

B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | ) |
| | ) |
| CAREFREE PARK CORPORATION, | ) |
| AMIN NABHAN and JAMILE NABHAN | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v . | )    CIVIL ACTION |
| | )    NO. 2003-CV-12426-RCL |
| | ) |
| ADIB NABHAN, | ) |
| Defendant | ) |
| | ) |
| _____ | ) |

VERDICT FORM

**THE PLAINTIFFS' CLAIMS**

1.   Did Adib Nabhan breach a fiduciary duty to Carefree Park by improperly taking for
himself a corporate opportunity, namely the Fun Depot arcade business?

YES ___✓___ NO _____

*If you answer "Yes" to question number 1, please go on to question number 2.  If you answer
"No" to question number 1, then go on to the defendant's claims, beginning with question
number 5.*

2.   Did Adib Nabhan breach a fiduciary duty to Carefree Park by taking excessive
compensation for himself from Fun Depot, Inc.?

YES ___✓___ NO _____

*If you answer "Yes" to question number 2, please go on to question number 3.  If you answer
"No" to question number 3, then go on to question number 4.*

*THIS FORM CONTINUES ON THE NEXT PAGE.*

3.  What amount of damages, if any, do you find that Adib Nabhan owes to Carefree Park for the excessive compensation he received?

Three hundred - Fifty thousand    $ 350,000.
(write amount in words)            dollars    (write amount in figures)

*Please go on to question number 4.*

4.  Are the plaintiffs' claims against Adib Nabhan barred by the three year statute of limitations?

YES __✓__ NO _____

*Please go on to the defendant's claims, beginning with question number 5.*

**THE DEFENDANT'S CLAIMS**

5.  Did Amin Nabhan breach a fiduciary duty to Carefree Park by improperly taking money from Carefree Park for his personal benefit?

YES __✓__ NO _____

*If you answered "Yes" to question number 5, please go on to question number 6. If you answered "No" to question number 5, then go on to question number 7.*

6.  What amount of damages, if any, do you find that Amin Nabhan owes to Carefree Park for the money he improperly took?

Twelve thousand — Ninety Five dollars and thirteen cents    $ 12,095.13
(write amount in words)                                      (write amount in figures)

*Please go on to question number 7.*

7.  Did Jamile Nabhan breach a fiduciary duty to Carefree Park by improperly taking money from Carefree Park for her personal benefit?

YES _____ NO __✓__

*If you answered "Yes" to question number 7, please go on to question number 8. If you answered "No" to question number 7, then go on to question number 9.*

*THIS FORM CONTINUES ON THE NEXT PAGE.*

8.   What amount of damages, if any, do you find that Jamile Nabhan owes to Carefree Park
     for the money she improperly took?

     _____          $ _____
     (write amount in words)                      (write amount in figures)

*Please go on to question number 9.*

9.   Did Amin Nabhan breach a fiduciary duty to Adib Nabhan by improperly taking money
     from the Adele Realty trust for his personal benefit?

     YES ___✓___  NO _____

*If you answered "Yes" to question number 9, please go on to question number 10.  If you
answered "No" to question number 9, then go on to question number 11.*

10.  What amount of damages, if any, do you find that Amin Nabhan owes to the Adele Realty
     Trust for the money he improperly took?

     _- Zero -_____                          $ __0__
     (write amount in words)                      (write amount in figures)

*Please go on to question number 11.*

11.  Was Carefree Park unjustly enriched by services that Adib provided on its behalf?

     YES ___✓___  NO _____

*If you answered "Yes" to question number 11, please go on to question number 12.  If you
answered "No" to question number 11, then go on to question number 13.*

12.  What amount of damages, if any, do you find that Carefree Park owes Adib to
     compensate for this unjust enrichment?

Seven thousand three hundred and ninety two   $ _7,392_
                         (write amount in words)    dollars   (write amount in figures)

*Please go on to question number 13.*

*THIS FORM CONTINUES ON THE NEXT PAGE.*

13.    Was Carefree Park unjustly enriched by personal investments that Adib made on its behalf?

        YES ___✓___ NO _____

*If you answered "Yes" to question number 13, please go on to question number 14. If you answered "No" to question number 13, then stop here.*

14.    What amount of damages, if any, do you find that Carefree Park owes to Adib for this unjust enrichment?

        ____~Zero~____                    $ ___0___
        (write amount in words)              (write amount in figures)

                    _____
                    Foreperson of the Jury

DATED:

        March 8, 2006

C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAREFREE PARK CORPORATION,<br>AMIN NABHAN and JAMILE NABHAN<br>Plaintiffs,<br><br>v .<br><br>ADIB NABHAN,<br>Defendant | )<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION<br>)    NO. 2003-CV-12426-RCL<br>)<br>)<br>)<br>) |

## JURY INSTRUCTIONS

MEMBERS OF THE JURY:

You have heard the evidence and the arguments in this case. It is now my duty to instruct you on the law that you must follow and apply. When I have finished, you will begin your deliberations.

To help you understand and remember these instructions, I will divide them into three main parts: first, opening general instructions intended to guide you throughout your deliberations; second, instructions about the matters you will be asked to decide and about the law you must apply in deciding those matters; third, some additional general instructions about procedures during your deliberations.

When you go to the jury room to deliberate you will have, in written form, the instructions I am now giving to you orally. But even though you will have them in the jury room with you, you should nevertheless listen very carefully to all of the instructions as I give them to you now.

Part I

General Instructions

All of my instructions are about the law you must apply. I do not mean any of my instructions to be understood by you as a comment by me on the facts or on the evidence in this case. It is your function to determine the facts. In order to know which facts are important, however, you need to know what rules of law apply.

You must follow all of the rules of law as I explain them to you. You should not single out one instruction alone as stating the law. You must consider the instructions as a whole and apply them as a whole to the evidence. The order in which the instructions are given has no significance and is no indication of their relative importance.

The lawyers may have commented during the trial both on the evidence and on the rules of law. But if what they have said about the evidence differs from your memory, let your collective memory control. And if what they have said about the law seems to you to have a different meaning in any way from my instructions on the law, you must be guided only by my instructions.

Even if you disagree with one or more of the rules of law I tell you about, or you do not understand the reasons for some of the rules, you are bound to follow them.

As I have said, you are the judges of the facts, and you must find the facts fairly and impartially on the basis of the evidence presented at the trial. You are not to be swayed by bias, prejudice, antagonism or sympathy toward any party

2

The evidence in the case consists of the sworn testimony of the witnesses (including some testimony by deposition), all exhibits received in evidence, and all facts that may have been admitted or stipulated. Let me say something more about stipulations. When the attorneys for opposing parties stipulate or agree as to the existence of a fact, there is no need for evidence from any party on that point. You must accept the stipulation as evidence, and you may take the fact as proved.

Statements and arguments of counsel are not evidence, unless they are made as an admission or stipulation of fact. There may have been instances during the trial when a lawyer asked a question that contained a statement of fact. You may not consider this question as evidence of that fact unless the witness agreed to or adopted the lawyer's statement.

Anything you may have seen or heard outside the courtroom is not evidence, and you must disregard it entirely.

After considering the evidence, you will find the facts as you decide the evidence has proved them.

From the facts proved, you may draw reasonable inferences about additional facts. An inference is a deduction or conclusion. An inference is an additional finding that your experience, reason, and common sense lead you to draw from facts that you find are proved by the evidence.

In our everyday affairs, we draw inferences all the time. Let me give you an illustration, unrelated to any of the evidence in this case. Say you observe, in the area where you live, a severe storm with very high winds. After the storm, you go out and you find in a vacant lot some

3

tree limbs on the ground. You may infer -- you may draw an inference -- that the wind from the storm caused the limbs to fall.

Sometimes, however, it may be difficult to decide whether an inference can be drawn from certain facts or to decide what inference is appropriate. Let me return to my fallen tree limb example. Let's say that before the storm, you observed a large group of muscular twelve-year-olds pulling and swinging on the tree limbs in the vacant lot. Given your observation of both the storm and the twelve-year-olds, you may have trouble deciding whether to infer that the wind from the storm caused the limbs to fall or to infer that they were broken from the trees by the twelve-year-olds. You may conclude that you simply do not have a sufficient basis to decide what inference to draw.

It is for you, as judges of the facts in this case, to decide whether the evidence before you is sufficient for you to draw an inference from it. If you find that it is, you must decide, using your common sense and your general knowledge and experience in the affairs of life, what inference reasonably may be drawn.

I want now to explain two more phrases often used in discussions about evidence received in a trial: direct evidence and circumstantial evidence.

The testimony of a witness about what he or she saw, heard, or otherwise perceived first-hand with the senses is direct evidence.

Circumstantial evidence is proof of some facts on the basis of which you may infer the existence or nonexistence of an additional fact or facts. You should use your common sense and common experience in deciding whether proof of one set of facts is sufficient also, as circumstantial evidence, to prove another fact in dispute.

4

I gave you one illustration of circumstantial evidence a few minutes ago, as I was explaining the meaning of inference. That is, testimony that a witness observed a windy storm and then observed some fallen tree limbs is circumstantial evidence that the wind from the storm caused the limbs to fall.

Direct and circumstantial evidence have equal standing in the law. That is, with respect to what weight shall be given to evidence before you, the law makes no distinction between direct and circumstantial evidence. Also, no greater degree of certainty is required of circumstantial evidence than of direct evidence. You are to consider all the evidence in the case and give each item of evidence the weight you believe it deserves.

At times during the trial you heard one of the lawyers object to a question asked by the other lawyer, and to answers by witnesses. It is a proper function of lawyers to object. In objecting, a lawyer is requesting that I make a decision on a question of law. Do not draw from such objections, or from my rulings on the objections, any inferences about the facts. The objections and my rulings related only to legal questions that I had to determine. They should not influence your thinking about the facts.

When I sustained an objection to a question, the witness was not allowed to answer it after my ruling. Do not attempt to guess what answer might have been given had I allowed the question to be answered. And if you heard an answer to the question before my ruling, you are to disregard it.

Indeed, you should not consider any question to which I sustained an objection or any answer or other statement that I excluded, or struck, or in some other way told you not to consider.

5

Also, if I received evidence, but told you it was received for a limited purpose, or if in the instructions I am now giving, I tell you that some of the evidence is to be considered only for a limited purpose, you are bound by that limitation.

An important part of your job as jurors will be deciding whether you believe what each person had to say, and how important that testimony was. In making that decision I suggest that you ask yourself a few questions. Did the person seem honest? Did he or she have some reason not to tell the truth? Did he or she have something to gain or lose in the outcome of this case? Did the witness seem to have a good memory? Did the witness have the opportunity to observe and was the witness able to observe accurately the things he or she testified about? Did he or she understand the questions and answer them directly? Did the witness's testimony differ from the testimony of other witnesses or from testimony that the same witness gave earlier? Was the witness's testimony on cross-examination different from the testimony given on direct examination? These are some, but of course not all, of the kinds of things that will help you decide how much weight to give to what each witness said.

You may also consider any demonstrated bias, prejudice or hostility of a witness in deciding what weight to give to the testimony of the witness.

The mere number of witnesses or length of the testimony or number of exhibits has no bearing on what weight you give to evidence, or on whether you find that the burden of proof has been met. Weight does not mean the amount of evidence. Weight means your judgment about the credibility and importance of the evidence.

You may consider inconsistencies or differences as you weigh evidence, but you do not have to discredit testimony merely because there are inconsistencies or differences in the

testimony of a witness, or between the testimony of different witnesses. People sometimes forget things, and even a truthful witness may be nervous and contradict himself or herself. Innocent mis-recollection, like failure of recollection is a common experience. It is also true that two or more persons witnessing an incident or a transaction may see or hear it differently. In weighing the effect of any inconsistency or difference, consider whether it concerns a matter of importance or an unimportant detail, and whether it results from innocent error or intentional falsehood.

You are not required to accept testimony, even if it is uncontradicted. You may decide, because of the witness's bearing and demeanor, or because of inherent improbability, or for other reasons sufficient to you, that testimony is not worthy of belief.

You may accept all of a witness's testimony or you may reject it all, or you may accept parts and reject other parts.

During the trial you heard the testimony of witnesses who answered some questions put to them as persons having specialized knowledge or skill. Such a witness is often referred to as an "expert witness." The mere fact that a witness is allowed to testify as an "expert" does not indicate that you must believe that testimony. The credibility of each witness, including experts, is for you to determine.

The law allows a person having specialized knowledge to state an opinion in court about matters in that person's particular field. The fact that such a witness has expressed an opinion does not mean, however, that you must accept that opinion. It is for you to decide whether the opinions expressed were mere speculations or guesses, which you should disregard, or were instead based on sound reasons, judgment, and facts.

If you find that part or all of the opinion testimony was based on stated or unstated assumptions, and you further find that those assumptions are contrary to what you find on the evidence before you, then you will disregard any part of the opinion testimony that was based on assumptions contrary to your fact findings.

Also, your decision whether to rely on opinion testimony will depend on your judgment about whether the witness's training and experience are sufficient for him or her to give the opinion that you heard.

It is up to you, bearing all these considerations in mind, to decide whether you believe and choose to rely on the testimony of a witness having specialized knowledge. You may accept all of it, part of it, or none of it, as you find appropriate.

During the trial, a witness was sometimes asked to give testimony about a statement made by that witness before trial. The before-trial statements to which I refer include statements made in documents and during depositions. A before-trial statement is brought to your attention to help you decide whether you believe and credit the testimony at trial of the witness who made the statement before trial. If you find that a witness gave a false statement concerning any material matter, before trial, you may take that into account in deciding whether to distrust the testimony at trial. You may credit the testimony of that witness at trial, or give it no credit, or only such credit as you think it deserves. Also, if a witness said something about a matter earlier, even though truthfully, and you decide that the witness's testimony at trial is in conflict with the earlier statement, then you may consider whether there is reason for you to doubt or discredit the testimony the witness has given at trial.

8

With respect to a statement about a matter made before trial, except as I tell you otherwise in these instructions, or have told you in instructions during the trial, you cannot treat that statement in this case for any other purpose than to determine how it bears, if at all, on the credibility of the witness.

There is one exception to the instruction I have just given regarding the manner in which you are to treat before-trial statements, and that concerns the before-trial statements of parties. If one of the parties, by a before-trial statement, act or omission admitted some fact, then as against that party you may consider the earlier statement, act or omission *both* for the purpose of judging the credibility of that person as a witness *and* as evidence of the truth of the fact so admitted.

On each issue submitted to you in this case, one party or the other has the burden of proof to establish that party's claim or defense by a preponderance of the evidence. To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds the belief that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. The burden of proof has not been carried if, after you have considered all the evidence, you find that you must speculate, guess, or imagine that one or more of the necessary facts is true.

So when I tell you in these instructions that one party or the other must prove something, that means that the party must prove that contention by a preponderance of the evidence. That is, the party must prove that the contention is more likely true than not true. This rule does not, of course, require proof to an absolute certainty; proof to an absolute certainty is seldom possible in any case. Nor is proof beyond reasonable doubt or by clear and convincing evidence required; a burden of proof by a more stringent standard applies in criminal cases and in other special circumstances, but in civil cases generally, and in particular as to all the issues in this case, the standard for defining the burden of proof is the "preponderance of the evidence" standard.

PART II

Specific Claims and Defenses

Now I want to turn to the principles of law that govern the specific claims and defenses made in this case.

The plaintiffs in this case, Carefree Park Corporation, Amin Nabhan and Jamile Nabhan, have one claim against the defendant, Adib Nabhan. Because all of the individual parties to this case have the same surname, I am going to take the liberty of referring to them by their first names in order to distinguish among them. In addition, I may refer to Carefree Park Corporation simply as "Carefree Park"; to the plaintiffs, Amin Nabhan, Jamile Nabhan and Carefree Park Corporation together simply as "the plaintiffs"; and to the defendant, Adib Nabhan, simply as "the defendant."

The plaintiffs claim that Adib breached a fiduciary duty that he owed to the plaintiffs both by taking for himself a corporate opportunity, the Fun Depot arcade business, that should have belonged to Carefree Park, and by taking funds in the form of excess salary and profits, from Fun Depot, Inc., to the detriment of Carefree Park.

Adib has asserted four counterclaims against Amin and Jamile. First, he claims that both Amin and Jamile breached their fiduciary duties as directors and shareholders of Carefree Park by taking, for their personal use, funds that belonged to Carefree Park. Second, Adib claims that Amin breached a separate fiduciary duty as trustee of the Adele Realty trust by taking funds that belonged to the trust and using those funds for his own personal benefit, to the detriment of the trust and its beneficiaries. Adib additionally claims that Carefree Park has failed to compensate him for work he has done and funds he has invested to benefit Carefree Park.

11

<u>Fiduciary Duty</u>:

Each side in this case claims that the other side breached certain fiduciary duties. As I explained at the beginning of this case, a fiduciary is a person who owes another person or entity duties of good-faith, trust, confidence and candor with respect to a particular undertaking or relationship. A fiduciary is someone who must exercise a high standard of care in managing another's money or property and must act primarily for the benefit of the person to whom the duty is owed. The fiduciary may not take selfish advantage of his position of trust or deal in such a way as to benefit himself or prejudice the other, except in the exercise of utmost good faith and full knowledge and consent of the other.

It is undisputed that Carefree Park is a close corporation. As I explained to you at the beginning of the case, a close corporation is a corporation characterized by a small number of stockholders, stock that is not readily traded in the market, and substantial stockholder participation in the management, direction and operations of the corporation. In a close corporation, both the directors and the shareholders of the corporation stand in a fiduciary relationship to the corporation. They owe to the corporation both a duty of care and a paramount duty of loyalty. They are bound to act with absolute fidelity and place their duties to the corporation above every other financial or business obligation.

---

[1]   *See* BLACK'S LAW DICTIONARY, 6th ed, at 625.

[2]  *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 528-29 (1997).

[3]*See Demoulas,* 424 Mass. at 528 n.34.

The trustee of a trust likewise has a fiduciary duty to the beneficiaries of the trust to manage the assets and income of the trust for the benefit of all the beneficiaries. The trustee may not take advantage of his or her position of trust to benefit himself or herself at the expense of the trust and its beneficiaries.

## The Plaintiffs' Claims

### Diversion of a Corporate Opportunity

The plaintiffs allege that Adib breached his fiduciary duties as a director and shareholder of Carefree Park by taking for himself a corporate opportunity that belonged to Carefree Park. Specifically, the plaintiffs claim that the arcade business in Florida known as Fun Depot was a corporate opportunity for Carefree Park, and that in February 1996, Adib took this corporate opportunity from Carefree Park and diverted it to his personal benefit. The concept of a "corporate opportunity" is rooted in the principle that directors and shareholders of a close corporation are bound by their duty of loyalty to the corporation to subordinate their self-interests to the well-being of the corporation. Thus a director or shareholder of a corporation is prohibited from taking, for his or her personal benefit, an opportunity or advantage that belongs to the corporation unless the corporation approves the transaction after full disclosure of all material facts concerning the transaction.

---

[4]    *Id*. at 529-31.

The parties do not dispute that, in February, 1996 Adib was a director and shareholder of Carefree Park, who owed a fiduciary duty to the corporation  To determine whether Fun Depot was a business opportunity that belonged to Carefree Park in February 1996, you must determine whether it was fundamentally fair, under all the circumstances, for Adib to take advantage of the business opportunity presented by Fun Depot for his personal profit, or whether the interests of Carefree Park justly called for protection. As the corporate director and shareholder who allegedly diverted to himself a corporate opportunity, Adib bears the burden of establishing by a preponderance of the evidence that his actions were fundamentally fair under all the circumstances. In making the determination whether Adib's actions were fundamentally fair under all the circumstances, you should rely on ethical standards of what is fair and equitable under the particular facts that you find from the evidence, including any evidence concerning whether Fun Depot was engaged in the same kind of business as Carefree Park; whether Carefree Park would have benefitted from the opportunity presented by Fun Depot, the extent to which Carefree Park, on the one hand and Adib, on the other invested in and otherwise contributed to the operations of Fun Depot; and whether Carefree Park had the resources to take advantage of the opportunity presented in 1996 by Fun Depot.

As an alternative to the considerations I have just mentioned, you may consider whether Adib acted in the light of full disclosure to Carefree Park of the business opportunity presented

---

[5]  *Id*

[6]  *Id.*

[7]  These considerations are taken from the trial court's instructions approved in *Wartski v. Bedford*, 926 F.2d 11, 18 (1st Cir.  1991)

14

by Fun Depot. If a corporate director or shareholder offers a business opportunity to the corporation and the corporation rejects the opportunity, then the director or shareholder may pursue the opportunity on his own and for his personal benefit. If the other directors or shareholders agree that a director or shareholder may take the corporate opportunity, then the director or shareholder taking the opportunity has not breached any duty to the corporation.

Self-Dealing

The plaintiffs also allege that Adib engaged in what is called "self-dealing" by improperly taking funds that belonged to Carefree Park in the form of excessive salary and improper Subchapter-S distributions from Fun Depot. Only if you determine that Adib *did* breach his fiduciary duty to Carefree Park by improperly diverting the corporate opportunity of Fun Depot to himself, should you consider the plaintiffs' claim that Adib wrongfully took money from Fun Depot in the form of excessive salary and improper Subchapter-S distributions.

As I instructed you during the trial, a Subchapter-S corporation is a type of corporation which is allowed by the IRS to enjoy the benefits of incorporation, but to be taxed as if it were a partnership. In a Subchapter-S corporation, the company is taxed through its shareholders rather than through the corporation itself. The shareholders of the corporation pay personal income tax on the income earned by the corporation.

---

[8] The substance of this entire paragraph is taken from *Demoulas*, 424 Mass. at 530-31.

Just as with a corporate opportunity, a director or shareholder of a corporation may not engage in self-dealing by taking funds of the corporation for himself, to the detriment of the corporation, unless the other directors or shareholders agree. If the director or shareholder did not receive approval from the other directors for the transaction in question, he or she must establish that the transaction was fundamentally fair to the corporation. When a director or shareholder engages in a transaction that is unfair to the corporation without the approval of the other directors, he or she violates his or her fiduciary duty to the corporation, and whatever gain or advantage that the wrongdoing director or shareholder acquired from the transaction must be returned to the corporation.

If Adib received excessive compensation from Fun Depot and Fun Depot belongs to Carefree Park, then Adib must repay to Carefree Park that part of his compensation that is in excess of what is reasonable.

Statute of Limitations

Adib claims as one of his defenses that the events giving rise to the plaintiffs' claim took place more than three years prior to October 3, 2003, the date on which the plaintiffs initially filed this lawsuit. As such, Adib claims that the suit is barred by the three-year statute of limitations that applies to the plaintiffs' claim that he breached his fiduciary duties to Carefree Park.

---

[9] *See Winchell v. Plywood Corp.*, 324 Mass 171, 177 (1949).

16

In a claim for a breach of a fiduciary duty, the statute of limitations does not begin to run until both the fiduciary has breached his duty and the corporation actually knows about this breach. In other words, the corporation has three years from the day it first finds out about the wrongdoing to file a suit. If you determine that Adib breached a fiduciary duty to Carefree Park, and that the corporation actually knew of this wrongdoing before October 3, 2000, then the plaintiffs' claim is barred by the statute of limitations.

Corporations can only operate through agents. An agent is someone who acts on behalf of the corporation. Under the circumstances I will explain momentarily, knowledge acquired by an agent of the corporation is knowledge acquired by the corporation itself. The defendant claims, among other things, that Michael LeClerc, Carefree Park's accountant, was an authorized agent of Carefree Park and that he knew before October 3, 2000, that Adib had incorporated Fun Depot as a Subchapter-S corporation of which he was the only shareholder. If you find that Mr. LeClerc was an agent of Carefree Park Corporation; that it was within the scope of the authority granted to him by Carefree Park and important to the work he was authorized to do for Carefree Park that he understand the ownership and tax status of Fun Depot; and that he knew before October 3, 2000 that Fun Depot was incorporated by Adib as a Subchapter-S corporation of which Adib was the sole shareholder, Carefree Park is deemed to have that knowledge.

---

[10] *Demoulas*, 424 Mass. at 518

[11]    These two sentences are taken from RCL Instructions in *Brighton v. Trigild,* C.A. No. 99-11789-RCL.

[12]    *See Sunrise Properties, Inc., v. Bacon, Wilson, et al,* 425 Mass. 63, 66 (1997); *Newhall v. Posner,* 2004 WL 413275 (D. Mass. 2004); *see also,* RESTATEMENT (2ND) OF AGENCY, Section 272 (1957); *In Re: Porter,* 16 BR 229, 233 (Bankr. D. Mass. 1981).

**Defendant's Counterclaims**

Self-Dealing – Carefree Park

Adib claims that the Amin and Jamile engaged in "self-dealing" with respect to Carefree

Park by misappropriating and mismanaging assets belonging to Carefree Park and by making

payments on loans for properties that Carefree Park does not own, for the benefit of Amin and

Jamile. As directors and shareholders of Carefree Park, Amin and Jamile owe a fiduciary duty

Carefree Park. They therefore have a duty to act with the utmost good faith and loyalty when

conducting the corporate affairs of Carefree Park. As fiduciaries, they may not engage in self-

dealing by taking funds from the corporation for their own benefit, to the detriment of the

corporation, unless the other directors or shareholders agree. If Amin or Jamile, as the case may

be, did not receive approval from the other directors of Carefree Park for the transactions in

question he or she, as the case may be, must establish that the transactions in question were

fundamentally fair to the corporation. If, on the other hand, Amin or Jamile engaged in

transactions that were unfair to the corporation without the approval of the other directors or

shareholders, then they breached their fiduciary duties, and the gain or advantage they acquired

from the transactions must be returned to the corporation.

Self-Dealing – Adele Realty Trust

Adib also alleges that Amin, as co-trustee of the Adele Realty Trust, violated his

fiduciary duty and engaged in self-dealing with respect to assets of the trust. Specifically, Adib

claims that Amin, as co-trustee of the Adele Realty Trust, misappropriated and used funds

belonging to the trust for his own benefit.

18

Like directors or shareholders of a close corporation, trustees have fiduciary duties to the beneficiaries of the trusts whose assets they manage and control. This means that a trustee, in administering the trust, must exercise good faith and act solely in the interests of the beneficiaries of the trust. The trustee may not engage in self-dealing by taking funds or other assets from the trust for his or her own benefit and to the detriment of the beneficiaries, unless the beneficiaries agree to the transaction in question. If a trustee takes funds or other assets from the trust for his or her own benefit and to the detriment of the beneficiaries, without the approval of the beneficiaries, then the trustee has breached the fiduciary duty owed by the trustee and must return the funds to the trust.

Unjust Enrichment

A person who has been unjustly enriched at the expense of another is required to repay the injured party. To prevail on a claim of unjust enrichment, it is not enough for the injured party to show that the other party has benefitted from the provision of these services. The party seeking compensation must prove that, under all the circumstances surrounding the transaction, it would be unjust for the other party to keep the benefit of these goods or services without compensating the party who provided them.

Unjust Enrichment - Services

---

[13] This instruction is adapted from language in *Boston Safe Deposit & Trust Co. v. Lewis,* 317 Mass 137, 140-41

[14] This instruction is adapted from *Keller v O'Brien*, 425 Mass. 774, 778 (1997).

19

Adib claims that he has performed services for the benefit of Carefree Park by managing its Lake Worth property, including collecting rent and operating income, negotiating with tenants and prospective tenants, overseeing payment of operating expenses, physically maintaining the property and overseeing repairs and build-outs. Adib alleges that he has not been compensated for this work performed for Carefree Park. If you find that Adib did provide these services without receiving compensation, and that under all the circumstances it would be unjust for Carefree Park to retain the benefit of these services without compensating him, then Adib is entitled to damages in the amount by which Carefree Park has been unjustly enriched by receiving the benefit of his services without compensation.

<u>Unjust Enrichment - Investment</u>

Adib also alleges that he used his own personal funds to make improvements on land belonging to Carefree Park, and that he not been compensated for this investment. If you find that Adib invested his own personal funds for improvements to property of Carefree Park and that, under all the circumstances it would be unjust for Carefree Park to retain the benefit of these improvements, then Adib is entitled to damages in the amount by which Carefree Park has been unjustly enriched by his investment.

20

PART III

Procedure During Deliberations

I have just described to you the various concepts with which you are going to have to deal in deciding this case. To assist you in reaching a verdict, you will have with you in the jury room something called a "verdict form" -- basically a questionnaire on which you are to indicate your answers to questions raised by the issues in this case. This verdict form will constitute the written notice of the decision that you reach. When you have reached your verdict, you will have your foreperson fill in, date, and sign the verdict form to state the verdict upon which you agree. Then you will return with your verdict to the courtroom.

You will also have in the jury room all the exhibits that have been admitted into evidence. As I have said, you will also have, in written form, my instructions to you.

Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to every question that is answered. All aspects of your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.

In the course of your deliberations do not hesitate to re-examine your own views and to change your opinion if you are convinced it is erroneous, but do not surrender your honest conviction as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

21

When you go to the jury room, your first task should be the selection of one of your members as the jury foreperson. The foreperson will preside over your deliberations, and will see that each juror is present during all of your deliberations, and that all jurors, the foreperson included, are given full and equal opportunity to participate in the deliberations.

The foreperson will also be your spokesperson here in court to return the verdict after the verdict has been reached. If it becomes necessary during your deliberations to communicate with me, the foreperson may send a note to me by the court security officer. The court security officer will bring your note to me and I will take it up with the lawyers and as soon thereafter as I can, respond to you.

On matters concerning meals, scheduling, accommodations or convenience, you are free to communicate with the court security officer either orally or in writing. You are not to communicate with anyone but me about the case, and then only in writing.

You are not to reveal to anyone how the jury is divided until ultimately you are brought back into court to deliver your verdict. In other words, you are not to give me or anyone else your numbers, or the breakdown of the jurors in considering the case.

You are to resolve factual issues in this case based upon the exhibits which you will have in the jury room with you and your recollection of the testimony of witnesses as bearing on those issues. You have been permitted to take notes during the course of this trial. These notes, of course, are not evidence. You may use them during your deliberations to help you to recall what the testimony was. However, do not overemphasize the significance of a written note made by you or by another juror. If a note does help to refresh your recollection it has then been useful, but it is your recollection, not the note, that is important. If your memory differs from your notes

22

or from the notes of another juror, you have an absolute right to rely solely on your own recollection.

You may deliberate today until 5:00 p.m. If you have not reached a verdict by that time, I will return you to the courtroom and recess you for the day. You should then begin deliberations again tomorrow at 9:00 a.m. and continue until 5:00 p.m., with a break for lunch. You should follow that procedure until you have reached a verdict. When you have reached your verdict, please notify the court security officer. Thereafter you will be escorted into court. Once you are in the courtroom, Ms. Hourihan will ask you to remain standing and will inquire as to whether you have reached a unanimous verdict. She will then get your verdict form and give it to me, and I will make sure that it is in order. Ms. Hourihan will then announce the verdict to those assembled in the courtroom and for the record.

Now I will ask the lawyers to come to the sidebar to give them a chance to comment on my instructions or request that I add anything I have omitted or clarify any point which they feel requires such clarification.

DATED: March 3, 2006